UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

UNITED STATES           )
                                 )
       v.                )  Crim. No. 1:07-cr-00149-RCL
                                 )
FARZAD DARUI,           )
                                 )
     Defendant.         )

**DEFENDANT FARZAD DARUI'S REPLY BRIEF IN SUPPORT
OF MOTION TO DISMISS COUNTS ONE THROUGH FIVE**

The government's boilerplate response to Farzad Darui's Motion to Dismiss does not address the specific issues raised in the motion. In this case, certain facts have legal consequences. By characterizing these "matters [as] bound up with the factual proof," (Opp. Mot., p. 6) the government wants to obfuscate the lack of legal sufficiency of the charges and continues to refuse to provide the basis for Darui to defend himself. Or, the government's position is that if it throws enough dirt out there, the jury will convict the defendant of something.

**A.**    ***The mail fraud counts should be dismissed because there is no convergence of the deceived and injured as Khouj, not The Islamic Center, was the legal owner of the Special Account.***

Since *McNally v. United States*, 483 U.S. 350 (1987), the Ninth and Tenth Circuits have developed precedent that the mail and wire fraud statutes "require the jury to find that the victim of the scheme was *itself* defrauded of money or property." *United States v. Shelton*, 848 F.2d 1485, 1495 (10th Cir. 1988) (emphasis in original); "[T]he intent must be to obtain money or property from the one who is deceived." *United States*

*v. Lew*, 875 F.2d 219, 221 (9th Cir. 1989).[1]  In reaching these holdings, the Circuits

followed the reasoning of *McNally,* stating:

> [T]he Court made it clear that the intent must be to obtain money or
> property from the one who is deceived: the words 'to defraud' commonly
> refer to wronging one in his property rights by dishonest methods or
> schemes, and usually signify the deprivation of something of value by
> trick, deceit, chicane or overreaching.

*Lew*, 875 F.2d at 221 (quoting *McNally*, 483 U.S. at 358 (internal quotation omitted)).

Although *dicta,* the Second Circuit has opined on convergence: "If a scheme to

defraud must involve the deceptive obtaining of property, the conclusion seems logical

that the deceived party must lose some money or property." *United States v. Evans*, 844

F.2d 36, 39 (2d Cir. 1988).

The government ignores this issue by merely asserting it has properly identified

the Center as the owner of the Special Account,[2] the only account that could possibly be

construed to be involved in Counts One through Five.  However, it is clearly documented

that only Abdullah Khouj's name and social security number were registered with this

account (Mot. to Dismiss, App. 18, 19), unlike all five accounts owned by the Center,

which use the Center's Tax Identification Number: XX-XXX5928.  No other person was

a signatory to the Special Account. (Mot. to Dismiss, App. 19).  Additionally, Khouj

annually filed W-8BEN forms documenting his status as the "Beneficial Owner" of the

Special Account.  (Mot. to Dismiss, App. 18).

---

[1] Although the DC Circuit has not addressed the issue of convergence, it was raised
before a district court.  In a civil RICO action brought by the U.S. Department of Justice,
*United States v. Philip Morris, Inc.*, 116 F.Supp.2d 131, 153 (D.D.C. 2000), the trial
court focused instead on whether an injury actually occurred and so did not rule on the
issue.  *Id.*

[2] "[T]he indictment specifically identifies the bank account defendant claims the Director
owns as an account that the Center owned and maintained."  (Opp. Mot., p.13).

The Special Account received money from the Saudi Embassy or from Ambassador Bandar, not from the Islamic Center.  Khouj used the Special Account to pay certain bills for the Center and for his personal use, including upkeep for a car and expenses for his additional "wives."  The situation is analogous to John Doe having a bank account from which he pays the mortgage for his elderly mother, who has provided her son no funds whatsoever for that account.  If Jane Smith also receives money (assuming *arguendo* fraudulently)[3]  from the same account from which Doe pays his mother's mortgage, the government could not claim his elderly mother as a victim of a fraud prosecution against Smith just because the mother received benefit from the same account.

Under these facts, the alleged victim—The Islamic Center—did not own the property alleged to be defrauded, Khouj's Special Account.  Therefore, there is no convergence.

The government argues that defendant should wait until after trial to raise this issue as it is a matter of proof.  (Opp. Mot., p. 14).  Where there is no evidence to support an element required for conviction, a person should not have to endure the torment and expense of trial.  If the government cannot refute defendant's overwhelming evidence that the Special Account belongs to Khouj, the five counts should be dismissed.

---

[3] Darui has always asserted there was no fraud involved as he was willingly repaid by Khouj for the debt of housing and feeding his "wives."

**B.** ***Without specificity as to what checks are at issue, the mail fraud charges can be duplicitous because, as alleged, each count could contain more than one mailing as part of the scheme.***

The government claims it has adequately informed Darui of the charges by providing sufficient discovery.  Reams of paper do not necessarily provide notice of the case or debunk duplicitous charges.

The government has charged Darui with at least two schemes.  In one, the government alleges Darui stole from the Center by altering payee lines on checks intended for vendors.[4]  In another scheme, the government alleges Darui stole from employees of the Center by cashing their checks and depositing them into his personal bank accounts.[5]  In describing the first scheme, the government alleges additional mailings were part of the scheme, specifically that it included Darui's placing regular vendor checks in the mail.[6]

Defendant does not challenge legal precedent that one mailing can contain one or more schemes.  However, the way the indictment is written, there could be duplicity, or could not, as the government does not provide any information about which checks are at issue.  Is it a vendor check, which contains more than one mailing?  Or is it the employee check, which does not?

By describing two general schemes, one of which includes more than one mailing, and indicting for approximately 100 checks in each count, the government attempts to

---

[4] "[Darui] gained control of funds belonging to the Center by altering the payee line of checks that had been endorsed by the Director . . . ."  (Indictment at ¶ 14).

[5] "[Darui] obtained checks payable to employees or contractors of the Center and, without authority from the named payee on the checks, negotiated and deposited the checks directly into either the Zaal checking account or into the Blue Line checking account." (Indictment at ¶ 17).

[6] "[Darui] wrote checks on various Islamic Center bank accounts that were made payable to the respective vendors and creditors . . . . When payment of the various invoices was approved, the Director would sign the checks . . . .  [Darui] mailed the checks, via the United States Postal Service, to the appropriate vendor or creditor." (Indictment at ¶ 13).

conceal any duplicity.  By identifying the specific checks at issue, the government could allay the duplicitous challenge.

**C.**     ***As a matter of law, the mailings described in Counts One through Five could only have furthered a scheme to steal from the "Special Account," not any other account unrelated to those mailings.  Therefore, if the mail fraud counts are not dismissed, the only evidence admissible for mail fraud must be related to the Special Account.***

The government's theory is that Darui defrauded The Islamic Center by altering checks made out to certain vendors and furthered this scheme by using a Post Office Box to keep the owner of the account from discovering this scheme.  Therefore, only an account that utilized this Post Office Box could be at issue.  The government fails to address this argument but merely responds that "checks [were] . . . written on <u>various</u> accounts maintained at Bank of America on behalf of the Center."  (Opp. Mot., p. 4) (emphasis added).

There is no evidence, and the indictment does not allege, that the mails were used to further any scheme for any of the five Islamic Center accounts.  The mailing address for all five Islamic Center's accounts[7] is unrelated to the Special Account's mailing address.  Indeed, the Special Account is not even owned by the Islamic Center.  Even if the government proved its allegation that Darui surreptitiously changed the Special Account's mailing address to a Post Office Box (an allegation Darui vigorously denies), this act would in no way further any scheme to defraud the Islamic Center's accounts.

The question for this Court is "whether the allegations in the indictment [are] sufficient to permit a jury to find that the mails were used 'for the purpose of executing' the fraudulent scheme."  *United States v. Sampson*, 371 U.S. 75, 76 (1962).

Defendant embraces the *United States v. Castor*, 558 F.2d 379, 384-85 (7th Cir. 1977) language cited by the government.  (Opp. Mot., p. 9).

---

[7] 2551 Massachusetts Ave., NW, Washington, DC  20008.

Defendant does not contend that, in the indictment, the government is "required to prove the details of [the] scheme," (Opp. Mot., p. 9) but rather that the government has no conceivable evidence to be presented at trial "showing that the designated mailings were for the purposes of executing the scheme" with respect to any account besides the Special Account. *Castor*, 558 F.2d at 384.

The government relies on a string-citation of case law explaining the elements of mail fraud, concluding with a general assertion that "the indictment details how defendant caused the mail to be used in furtherance of the scheme." (Opp. Mot., p. 10) On the contrary, the indictment neither charges nor explains how Darui used the mails in furtherance of any scheme to defraud anyone but the owner of the Special Account.

This issue must not await trial because the lack of evidence of any mailing related to the Center's accounts "convincingly appears on the face of the indictment that as a matter of law there need be no necessity for such delay." *Castor,* 558 F.2d at 384-85 (citation omitted).

## CONCLUSION

For the reasons stated above and those that may be stated at any hearing on this motion, the Court should dismiss Counts One through Five of the indictment.

FARZAD DARUI

By:_____/s/ Victoria Toensing_____
    Victoria Toensing  (DC Bar # 304980)
    Joseph diGenova
    Brady Toensing
    diGENOVA & TOENSING, LLP
    1776 K Street, N.W., Suite 737
    Washington, D.C. 20006
    (202) 289-7701
    (202) 289-7706 (fax)

Counsel for Defendant

By: _____/s/ Aaron S. Book_____
Aaron S. Book (DC Bar # 490815)
Steven T. Webster (admitted *pro hac vice*)
WEBSTER BOOK LLP
1 North King Street
Leesburg, Virginia 20176
703-779-8229
703-991-9178 (fax)
Counsel for Defendant

## CERTIFICATE OF SERVICE

I certify that on September 4, 2007, a true copy of the foregoing was served electronically on the following:

Ronald Wesley Sharpe
U.S. ATTORNEY'S OFFICE
555 Fourth Street, NW
Washington, DC 20530

_____/s/ Victoria Toensing_____
Victoria Toensing