UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

UNITED STATES )
)
v. ) Crim. No. 1:07-cr-00149-RCL
)
FARZAD DARUI, )
)
Defendant. )

**DEFENDANT'S RESPONSE IN OPPOSITION TO GOVERNMENT'S MOTION TO "SCRUTINIZE"; DEFENDANT'S REQUEST TO COMPEL SUBPOENA COMPLIANCE AND FOR SANCTIONS; AND DEFENDANT'S REQUEST FOR HEARING ON WHETHER THE GOVERNMENT IS ABUSING GRAND JURY**

PRELIMINARY STATEMENT

The government requests this Court to halt subpoenas (and their productions) so it may review defendant's attempt to obtain evidence supporting his defense and contradicting the false statements of the government's principal witness, Abdullah M. Khouj. The government makes this request belatedly— after it received financial and other evidence that reveals Khouj not only violated an order of this Court but also 18 U.S.C. § 1001.[1] Prior to receipt of this evidence, the government asserted it had no dog in this fight. Now it wants to short-circuit Darui's defense.

Darui has been neither on a fishing expedition nor sought evidence for mere impeachment. In an unusual approach to a criminal matter, Darui set out his defense early in this case and has never wavered from that detailed, factual outline. Every subpoena request is for specific evidence Darui knows exists (or existed) to support his

[1] Curiously, the government only interviewed Khouj and never required its principal witness to testify before the grand jury.

factual defense. In deciding this Motion, the Court must consider that the subpoenas targeted by Khouj—and now the government—produced strong evidence, some conclusive, supporting Darui's defense as outlined in the Factual Background of the Case. *See* Motion to Dismiss, pp. 5-15, filed August 15, 2007.

Because Darui is being forced to trial in a case where the principal witness has lied, not just once but repeatedly, and he has also withheld evidence contrary to this Court's Order, Darui is concerned about revealing more of his evidentiary defense than is necessary to address this Motion.[2] However, the government's Motion supporting the Motion to Quash the subpoena of a third party leaves Darui no choice but to provide this Court, and thus to reveal to the government, certain evidence he would have reserved for trial.

***1. Khouj has concealed documents reflecting his uses of Post Office Boxes for checking accounts.***

It has always been Darui's position that he opened the Post Office Box for the Special Account at Khouj's request and because Khouj told him he did not want the Saudis to discover he was paying Darui for the housing of his "wives." Khouj routinely used Post Office Boxes for his banking. By contrast, the government has pointed to use of the Post Office Box as Darui's attempt to conceal his payments, even though it was opened over two years after the alleged scheme began. Therefore, evidence that Khouj,

[2] Darui has also been threatened with a superseding indictment if he does not agree to plead guilty to this indictment. Therefore, the government must be conducting a grand jury investigation utilizing subpoenas. Defense is aware the government is seeking evidence against Darui as FBI agents recently entered the travel agency Darui and his wife own and interrogated employees asking whether Darui had ever discussed his case with them. He had not. The government wants to continue its investigation but wants to prevent defense from conducting any meaningful investigation prior to trial.

not Darui, regularly used Post Office Boxes for checking accounts supports Darui and was one of several bases for such subpoenas.

Darui is well aware that Khouj regularly used Post Office Boxes for his financial accounts. Darui also knows of some, but not all, banks in the D.C. area where Khouj had accounts. One day Darui drove Khouj to his Wachovia Branch and accidentally overheard Khouj's conversation with bank personnel about his funds. He thereby learned that Khouj had money in an amount far exceeding what he could have accumulated from his claimed take home pay of approximately $2,500 a month. Until that day, Khouj had always claimed he had little money to spare. Darui than demanded repayment.

The returns provided documentary evidence that Khouj did not produce all documents covered by this Court's December 18, 2007, Order to comply with Darui's request #11, which reads: "Any document reflecting use of a Post Office Box between July 1, 1984 through December 31, 2006."

 Khouj's response was a copy of one envelope front from the Saudi Embassy with a 1995 postmark. It was addressed to "Dr. Abdullah Khouj, P.O. Box 39219, Washington, D.C. 20016." (App. A).[3]

The subpoenaed returns expose Khouj's refusal to comply with the Order. Documents from all four of Khouj's bank accounts, all during the relevant time period, reveal that Khouj utilized, and still utilizes, Post Office Boxes.[4] Bank of America,

---

[3] Defense counsel erred in its January 22, 2008, Opposition to Khouj's Motion to Quash by overlooking the lone document submitted.

[4] It appears from the financial documents that Khouj has at least one other bank account. In that regard Darui requests the Court to reconsider its denial of subpoena request #8 for Khouj: "All personal bank statements and cancelled checks for all checking, savings, and investment accounts between January 1, 2000 and December 31, 2006."

BB&T, First Union (later Wachovia), and SunTrust all list Post Office Box #39219 as Khouj's mailing address. (App. B).

The BB&T account was opened July 25, 1991.[5]  It was extant as of December 2007. (App. D).[6]  The November 2007 monthly statement, as with previous monthly statements, was mailed to Khouj's Post Office Box #39219 within two weeks of this Court's Order. (App. E).  It is difficult to believe that the account's existence could have slipped Khouj's mind.

Nor could Khouj have forgotten the SunTrust account, which also sent a monthly bank statement to Khouj's Post Office Box #39219 in November 2007. (App. F).[7]  No records of the four accounts were provided by Khouj in response to the Court's Order.

Khouj did not turn over these documents presumably because he knew they would show his broad use of Post Office Boxes and conflict with his statements to the government.  Khouj had made much over the fact that he did not notice—incredibly, for over four years—that he was not receiving his Special Account's monthly statements because, unknown to him, they were being sent to a Post Office Box.

---

[5] The BB&T account was opened with yet another P.O. Box, # 7625. (App. C).  Darui does not assert the absence of this document was a violation of the Order as it is usually retained only by the financial institution.  However, the fact that it is evidence supporting Darui's defense that it was Khouj, not Darui, who used Post Office Boxes illustrates the relevance and admissibility for the subpoenas' requests.

[6] No documents were received reflecting a balance in this account until January 2003.

[7] In 2007, Khouj had the Wachovia monthly account statements, which had a United States Post Office Box through 2006, changed to a Saudi Arabia address.

***2. The subpoenaed documents reveal that Khouj has made false statements to government agents.***

In one of eight FBI interviews conducted over a 14-month period, each following the government's discovery of evidence that contradicted prior interviews,[8] Khouj claimed as follows:

> At or around [the end of 2002], FARZAD DARUI informed KHOUJ that the insurance bills for the Center had tripled. As a result, KHOUJ decided to begin depositing his monthly paycheck from the Embassy (i.e., approximately $2,563) into the Center's Special Account in hopes of gradually increasing the account to a more functional balance. From the beginning of 2003 through 2004, KHOUJ signed his paychecks upon receipt and provided them to DARUI to be deposited into the Special Account.
>
> * * *
>
> KHOUJ reviewed several Bank of America statements for the Special Account. Upon review of those statements he had access to in 2003 and 2004, KHOUJ located what appeared to be deposits of his paychecks in some, but not all months. *** KHOUJ then requested copies of his cleared paychecks . . . . KHOUJ noticed that two out of approximately seven paychecks for which the Embassy provided copies were deposited into DARUI's bank account at Wachovia. *** KHOUJ provided the interviewing agent with the attached copies of check numbers 0389 and 0849 . . . . KHOUJ fears that DARUI may have deposited several more of KHOUJ's paychecks into DARUI's own accounts.

FBI interview with Abdullah M. Khouj March 16, 2007 (with Fatima Goodwin present). (App. G, p. 1).

Only because Darui has the subpoenaed Khouj's bank account records can he conclusively refute via documents this blatantly false allegation by Khouj that Darui took his checks. Moreover, Khouj's bank statements establish he did not donate to the Islamic Center <u>his</u> salary of the Saudi monthly $2,563 check.

Surprisingly, the government's reaction is not to recoil that its witness was untruthful, but to say that evidence of such lies is inadmissible because it merely shows

Khouj "had more than enough personal assets to pay the defendant a lump sum of over $400,000."

LEGAL ARGUMENT

***1. The government has no standing to challenge a subpoena issued to a third party absent a claim of privilege or proprietary interest in the matter subpoenaed.***

Absent a claim of privilege or ownership in the relevant property, a party lacks standing to challenge a subpoena to a third party. *Langford v. Chrysler Motors Corp.*, 513 F.2d 1121, 1126 (2d Cir. 1975); *Ponsford v. United States*, 771 F.2d 1305, 1308 (9th Cir. 1985); *United States v. Nachamie*, 91 F. Supp. 2d 552, 558 (S.D.N.Y. 2000).

The government has made no claim of privilege or interest in property belonging to Khouj, nor can it. Therefore, its attempt to insert itself in this matter between the defendant and a third party has no basis in law.

***2. Rule 17(c) permits pre-trial subpoenas if the material sought is relevant, admissible, and specific.***

Rule 17(c) allows pre-trial subpoenas. Case law has interpreted it to preclude pre-trial subpoenas only if the subpoena is a fishing expedition for irrelevant, inadmissible material, or if it is oppressive. *United States v. Haldeman*, 559 F.2d 31, 75 (D.C. Cir. 1976). To compel production of documents under Rule 17(c) the party seeking production "must clear three hurdles: (1) relevancy; (2) admissibility; and (3) specificity." *United States v. Nixon*, 418 U.S. 683, 700 (1974).

Relevancy requires the Court to assess whether the documents sought have "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." *United*

---

[8] See, e.g. Darui's Opposition to Khouj Motion to Quash filed January 22, 2008, pp.7-8.

*States v. Libby*, 432 F.Supp.2d 26, 31 (2006), citing Fed. R. Evid. 401. Under the Federal Rules of Evidence, "documents sought pursuant to a Rule 17(c) subpoena can be deemed admissible for a variety of purposes, including impeachment." *Libby*, 432 F.Supp. at 31, citing *Nixon*, 418 U.S. at 701.

In *United States v. LaRouche Campaign*, 841 F.2d 1176 (1st Cir. 1988), the Court held that it was proper to disclose impeachment evidence prior to trial under a 17(c) subpoena because the "putative key witness, whose general testimony is already known, is scheduled to testify . . . . " *Id.* at 1180.

The specificity requirement is satisfied if there is a "'sufficient likelihood,'" demonstrated through rational inferences, that the documents being sought contain relevant and admissible evidence." *Libby*, 432 F.Supp. at 31, citing *Nixon*, 418 U.S. at 700.

Although Darui's challenged subpoenas satisfy the *Nixon* test, it should be noted there is precendent to apply a lower standard for a criminal defendant's subpoena to a third party, specifically that it be "(1) reasonable, construed using the general discovery notion of 'material to the defense'; and (2) not unduly oppressive for the producing party to respond." *Nachamie*, 91 F.Supp.2d at 563. In reaching this standard, the *Nachamie* court discussed the history of Rule 17(c), including the *Nixon* court's interpretation of it in the context of the government's attempting to obtain evidence after the indictment has been returned when it could no longer utilize grand jury subpoenas. The court reasoned:

> A real question remains as to whether it makes sense to require a defendant's use of Rule 17(c) to obtain material from a non-party to meet [the *Nixon*] standard. Unlike the Government, the defendant has not had an earlier opportunity to obtain material by means of a grand jury subpoena. Because the Rule states only that a court may quash a subpoena 'if compliance would be unreasonable or oppressive,' the judicial gloss

> that the material sought must be evidentiary-defined as relevant, admissible and specific may be inappropriate in the context of a defense subpoena of documents from third parties.

*Nachamie*, 91 F.Supp.2d at 563.

Whatever standard the Court applies, it should take into account the following factors:

- Because the checks at issue are all copies and there is no visible sign of alteration, Khouj is the government's sole witness to allege that the checks were altered by Darui;
- Khouj has made extensive statements in this matter, e.g., an affidavit in a civil case, the arrest warrant, and at least eight interviews with government agents;
- Without subpoenaed evidence, Khouj's statements were shown to be false, such as the fact that Khouj had never heard of Blue Line Travel, when in fact there are numerous checks signed by him to Blue Line Travel;[9]
- With only minimal access to documentary evidence produced by 17(c) subpoenas,[10] Darui has located additional evidence supporting his defense and conclusively contradicting false statements by Khouj; and
- Darui has specific and personal knowledge of all the facts that contradict Khouj's extensive and false statements.

Darui's defense is simple, yet factually detailed. Khouj is not telling the truth. Disproving his numerous false statements requires a time-consuming, in-depth investigation, mostly following the money because this case is about money. If Darui had waited until trial and Khouj's testimony to subpoena the bank records, how long would this Court have recessed trial so that the banks had time to comply and Darui had reasonable time to digest the documents? It has taken approximately six weeks to obtain and study these bank records.

---

[9] Darui has additional evidence refuting this statement by Khouj.

[10] The Court denied most of Darui's requests to Khouj and The Islamic Center for documents under Rule 17(c).

Darui is constitutionally entitled to evidence that reflects Khouj's personal use of Post Office Boxes, especially after Khouj was ordered to provide it by this Court. Darui is constitutionally entitled to evidence that conclusively refutes Khouj's false allegation that Darui deposited his paychecks into his (Darui's) Wachovia account. And Darui is constitutionally entitled to seek other evidence that refutes the false statements throughout Khouj's (as well as at least one other witness's) interviews.

By filing his Motion to Quash, Khouj, of course, wants to conceal his violations of this Court's Order and U.S. law. It is disappointing that the government joins him.

In so doing, it appears to defense counsel that the government has ignored its duty to follow the canons of prosecutorial and professional ethics. (*See* App. H, which provides applicable DC Bar and ABA professional rules). Rather than investigating its witness for violating a judicial Order, and investigating him for false statements, the government seeks the Court's protection and asks that Darui and his counsel be scrutinized. For the Court to grant the government's Motion would not only be a denial of justice but would also violate Darui's constitutional right to a fair trial.

***3. This Court should conduct a hearing to determine whether the government is abusing the grand jury process.***

Because the government has turned a blind eye to Khouj's misconduct, defense counsel are concerned other fundamental rules are being violated. The government's threat to supersede if Darui does not plead guilty appears to be pretext for the government to misuse the grand jury by continuing an investigation after it realizes its principal witness has run amok. It is improper for the prosecution to use the grand jury for discovery purposes, e.g., for the sole or dominating purpose of preparing an already pending indictment for trial. *See In re Grand Jury Subpoena Duces Tecum Dated Jan. 2,*

*1985* (Simels), 767 F.2d 26, 29-30 (2d Cir. 1985); *U.S. v Dardi*, 330 F.2d 316 (2d Cir.

1964); *U.S. v. Long*, 697 F.Supp. 651, 658 (S.D.N.Y. 1988).

Darui asks the Court for the following relief:

- Deny the government's request to "scrutinize" defense counsel and their subpoenas, whatever that means;

- Compel Khouj to comply fully with this Court's December 18, 2007 order, which is Darui's subpoena request #11;

- Order Khouj to provide documents requested in Darui's subpoena to Khouj, #8;

- Provide appropriate sanctions for Khouj's violation of the December 18, 2007 Order; and

- Conduct a hearing to determine whether the government is abusing the grand jury by utilizing it ostensibly for a superseding indictment when in fact it is using the grand jury to continue its investigation of this case.

In the alternative to Darui's first request for relief, defense suggests the following:

If the Court is concerned about the bases for Darui's subpoenas, review *in camera, ex parte* the bases for the subpoenas. Because the government has no standing to interfere with third party subpoenas it has no role in such review.

FARZAD DARUI


By: /s/ Victoria Toensing
Victoria Toensing (DC Bar #304980)
Joseph diGenova
Brady Toensing
diGENOVA & TOENSING, LLP
1776 K Street, N.W., Suite 737
Washington, D.C. 20006
(202) 289-7701
(202) 289-7706 (fax)
Counsel for Defendant


By: /s/ Aaron S. Book
Aaron S. Book (DC Bar # 490815)
Steven T. Webster (admitted *pro hac vice*)
WEBSTER BOOK LLP
1 North King Street
Leesburg, Virginia 20176
703-779-8229
703-991-9178 (fax)
Counsel for Defendant

CERTIFICATE OF SERVICE

I hereby certify that on January 29, 2008, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will then send a notification of such filing (NEF) to the following:

Ronald Sharpe, Esq.
Assistant United States Attorney
United States Attorney's Office
555 4th Street, NW
Washington, DC 20530

/s/ Victoria Toensing
Victoria Toensing

# APPENDIX A

سفارة المملكة العربية السعودية
في واشنطن

ROYAL EMBASSY OF SAUDI ARABIA
OFFICE OF THE AMBASSADOR
601 NEW HAMPSHIRE AVENUE, N.W.
WASHINGTON, DC 20037

Dr. Abdullah Khouj
P.O. Box 39219
Washington, DC 20016

KHOUJ00001

# APPENDIX B

Page 1 of 4
Statement Period
11-23-06 through 12-21-06
Number of checks enclosed: 0
B 15 0 A P 15 0132765

Account Number: [redacted]

Bank of America, N.A.
P.O. Box 25118
Tampa, FL 33622-5118

22295 001 SCM999 I1 0

ABDULLAH M KHOUJ
PO BOX 39219
2551 MASSACHUSETTS AVENUE NW
WASHINGTON DC 20016-9219

Our free Online Banking service allows you to check balances, track account activity, pay bills and more.
With Online Banking you can also view up to 18 months of this statement
online and even turn off delivery of your paper statement.
Enroll at www.bankofamerica.com.

**Customer Service Information**
**www.bankofamerica.com**

For additional information or service, you may call:
1.800.432.1000 Priority Telephone Banking
1.800.288.4408 TDD/TTY Users Only
1.800.688.6086 En Español

Or you may write to:
Bank of America, N.A.
P.O. Box 25118
Tampa, FL 33622-5118

## Your Bank of America Advantage Summary

| Account Name | Account Number | Qualifying Balance* | Type of Balance | Date | Total |
|---|---|---|---|---|---|
| Deposit Accounts | | | | | |
| Interest Checking | [redacted] | [redacted] | Average | 12-20 | |
| Fixed Term CD | [redacted] | [redacted] | Principal** | 12-20 | |
| Fixed Term CD | [redacted] | [redacted] | Principal** | 12-20 | |
| Fixed Term CD | [redacted] | [redacted] | Principal** | 12-20 | |
| Fixed Term CD | [redacted] | [redacted] | Principal** | 12-20 | |
| Fixed Term CD | [redacted] | [redacted] | Principal** | 12-20 | |
| Total Deposit Account Balance | | | | | [redacted] |

Thank you for banking with us. With the balances in your accounts, there is no monthly maintenance fee for Advantage.

* Balances in your linked accounts that are used to avoid a monthly maintenance fee are listed here. These balances reflect the average or principal balance in your account - for your actual ending account balances, please see the "Your Account at a Glance" section on your statement for each of your accounts.
** Detailed information about this account is not included in this statement.

STATEMENT DATE
12-14-06

BB&T - VIRGINIA

469-16-01-00 13063 0 C 001 09 50 02
ABDULLAH M KHOUJ
PO BOX 39219
WASHINGTON DC 20016-9219

BB&T HEALTH SAVINGS ACCOUNTS OFFER A CONVENIENT, TAX-ADVANTAGED WAY TO PAY FOR QUALIFIED MEDICAL EXPENSES. VISIT BBT.COM TO LEARN MORE. CERTAIN RESTRICTIONS APPLY. PLEASE CONSULT A TAX ADVISOR.

INVESTORS DEPOSIT ACCOUNT — ACCOUNT NUMBER

-ACCOUNT SUMMARY-

PREVIOUS BALANCE AS OF 11-15-06
0 DEPOSITS/CREDITS
INTEREST PAID
0 CHECKS PAID
0 WITHDRAWALS/DEBITS
SERVICE CHARGE
NEW BALANCE AS OF 12-14-06

- DEPOSITS/OTHER CREDITS-

| DATE | AMOUNT | DESCRIPTION | REFERENCE NUMBER |
|---|---|---|---|
| 12-14 | | INTEREST PAYMENT | 10589895 |

- DAILY BALANCE SUMMARY -

| DATE | BALANCE | DATE | BALANCE | DATE | BALANCE |
|---|---|---|---|---|---|
| 12-14 | | | | | |

- INTEREST SUMMARY-

| EFFECTIVE DATE | OLD INTEREST RATE | NEW INTEREST RATE |
|---|---|---|
| 12-08 | 3.49% | 3.39% |

INTEREST RATE 3.39%
ANNUAL PERCENTAGE YIELD EARNED 3.53%
INTEREST PAID THIS STATEMENT PERIOD
2006 INTEREST PAID YEAR-TO-DATE

FOR ASSISTANCE, CALL (703) 241-3555 OR FOR BB&T PHONE24, CALL (800)BANKBBT (1-800-226-5228).



WACHOVIA

Crown Classic Banking

01 [redacted] 072 30 0 3 SAFEKEPT Replacement Statement

ABDULLAH M KHOUJ
P O BOX 39219
WASHINGTON DC 20016 9219

PB

11/07/2006 thru 12/06/2006

Crown Classic Banking

Account number: [redacted]
Account owner(s): ABDULLAH M KHOUJ

Account Summary

| | | |
|---|---|---|
| Opening balance 11/07 | [redacted] | |
| Deposits and other credits | [redacted] | + |
| Interest paid | [redacted] | + |
| Checks | [redacted] | - |
| Automated Checks | [redacted] | - |
| Other withdrawals and service fees | [redacted] | - |
| Closing balance 12/06 | [redacted] | |

Deposits and Other Credits

| Date | Amount | Description |
|---|---|---|
| 12/04 | [redacted] | DEPOSIT |
| 12/06 | [redacted] | INTEREST FROM 11/07/2006 THROUGH 12/06/2006 |
| Total | [redacted] | |

Interest

| | |
|---|---|
| Number of days this statement period | 30 |
| Annual percentage yield earned | 0.10 % |
| Average interest balance | [redacted] |
| Interest earned this statement period | [redacted] |
| Interest paid this statement period | [redacted] |
| Interest paid this year | [redacted] |

Interest Rate Summary

| Dates | Rate % | Dates | Rate % | Dates | Rate % |
|---|---|---|---|---|---|
| 11/07 - 12/05 | 0.10 | 12/06 - 12/06 | 0.05 | | |

Checks

| Number | Amount | Date | Number | Amount | Date | Number | Amount | Date |
|---|---|---|---|---|---|---|---|---|
| 1053 | [redacted] | 12/06 | 1057* | [redacted] | 12/05 | | | |
| 1054 | [redacted] | 12/06 | Total | [redacted] | | | | |

*Indicates a break in check number sequence (checks could be listed under Automated Checks)



WACHOVIA

High Performance Money Market

01 [redacted] 072 30 0 6 SAFEKEPT Replacement Statement

ABDULLAH M KHOUJ
P O BOX 39219
WASHINGTON DC 20016 9219

PB

11/10/2006 thru 12/11/2006

High Performance Money Market

Account number: [redacted]
Account owner(s): ABDULLAH M KHOUJ

Account Summary

| | |
|---|---|
| Opening balance 11/10 | [redacted] |
| Interest paid | [redacted] + |
| Closing balance 12/11 | [redacted] |

Deposits and Other Credits

| Date | Amount | Description |
|---|---|---|
| 12/11 | [redacted] | INTEREST FROM 11/10/2006 THROUGH 12/11/2006 |
| Total | [redacted] | |

Interest

| | |
|---|---|
| Number of days this statement period | 32 |
| Annual percentage yield earned | 3.67 % |
| Average interest balance | [redacted] |
| Interest earned this statement period | [redacted] |
| Interest paid this statement period | [redacted] |
| Interest paid this year | [redacted] |

Interest Rate Summary

| Dates | Rate % | Dates | Rate % | Dates | Rate % |
|---|---|---|---|---|---|
| 11/10 - 12/11 | 3.60 | | | | |

Other Withdrawals and Service Fees

| Date | Amount | Description | | |
|---|---|---|---|---|
| 11/13 | 0.00 | INQUIRY | 1000 W BROAD STREET | 8018-009188 |
| 12/11 | 0.00 | INQUIRY | 1000 W BROAD STREET | 8018-006802 |
| Total | $0.00 | | | |

Daily Balance Summary

| Dates | Amount | Dates | Amount | Dates | Amount |
|---|---|---|---|---|---|
| 11/13 | [redacted] | 12/11 | [redacted] | | |

SUNTRUST BANK
P O BOX 622227
ORLANDO FL 32862-2227

63/B07/0175/0/ 72
[redacted]
12/14/2006

SUNTRUST

ACCOUNT STATEMENT

ABDULLAH M KHOUJ
PO BOX 39219
WASHINGTON DC 20016-9219

QUESTIONS? PLEASE CALL
1-800-786-8787

PLEASE NOTE THAT EFFECTIVE FEBRUARY 1, 2007, THE DEPOSITED ITEM RETURNED FEE WILL BE $10 FOR EACH DOMESTIC ITEM.

ACCOUNT SUMMARY

| ACCOUNT TYPE | ACCOUNT NUMBER | STATEMENT PERIOD |
|---|---|---|
| SUNTRUST MARKET INDEX ACCOUNT | [redacted] | 11/15/2006 - 12/14/2006 |

| DESCRIPTION | AMOUNT | DESCRIPTION | AMOUNT |
|---|---|---|---|
| BEGINNING BALANCE | [redacted] | AVERAGE BALANCE | [redacted] |
| DEPOSITS/CREDITS | [redacted] | AVERAGE COLLECTED BALANCE | [redacted] |
| CHECKS | $.00 | NUMBER OF DAYS IN STATEMENT PERIOD | 30 |
| WITHDRAWALS/DEBITS | $.00 | ANNUAL PERCENTAGE YIELD EARNED | 4.73% |
| ENDING BALANCE | [redacted] | INTEREST PAID YEAR TO DATE | [redacted] |

DEPOSITS/CREDITS

| DATE | AMOUNT | DESCRIPTION |
|---|---|---|
| 12/14 | [redacted] | INTEREST PAID THIS STATEMENT THRU 12/14 |

DEPOSITS/CREDITS: 1 TOTAL ITEMS DEPOSITED: 0

BALANCE ACTIVITY HISTORY

| DATE | BALANCE | COLLECTED BALANCE | DATE | BALANCE | COLLECTED BALANCE |
|---|---|---|---|---|---|
| 11/15 | [redacted] | [redacted] | 12/14 | [redacted] | [redacted] |

MEMBER FDIC

FD-DISC-2086

# APPENDIX C

Customer Initials

BRANCH

Demand X

Savings

JOINT ACCOUNT

Auth. Code #

| BANK | ACCOUNT NUMBER | OFFICE | TYPE CODE | SHORT NAME | OPENED BY |
|---|---|---|---|---|---|
| 01 | [redacted] | 050 | 055 | Khouj | en |

| SERVICE CHARGE CODE | TAX ID | TAX ID NUMBER | CYCLE | OFFICER CODE | DATE OPENED |
|---|---|---|---|---|---|
| | | 888888888 | | | 7-25-91 |

| DATE OF BIRTH | EMPLOYER | IDENTIFICATION |
|---|---|---|
| [redacted] | Saudi Embassy | State Dept Lic. |

| NAME(S) (First, Middle, Last) | |
|---|---|
| 1 | Abdullah H. Khouj |
| 2 | |
| 3 | |

HOME PHONE: 703 [redacted]

| ADDRESS | |
|---|---|
| 4 | P.O. Boxe 7265 |
| 5 | McLean VA |
| 6 ZIP CODE | 22106 |

BUSINESS PHONE: 202 [redacted]

FIRST LISTED OWNER Under penalties of perjury, I certify (1) that the number shown on this form is my correct taxpayer identification number (2) that I am not subject to backup withholding either because I have not been notified that I am subject to backup withholding as a result of failure to report all interest or dividends, or the Internal Revenue Service has notified me that I am no longer subject to backup withholding. Please strike out the language in item (2) if you have been notified that you are subject to backup withholding and have not received notice from the Internal Revenue Service advising you that backup withholding has been terminated

ALL OWNERS By signing below, I agree to the ownership option selected above. I acknowledge receipt of and agreement to the terms of the depositor agreement governing this account

Signature(s) (1) [signature] (2)

# APPENDIX D

STATEMENT DATE
12-14-07

BB&T - VIRGINIA

468-16-01-00 13063 0 C 001 09 50 03

ABDULLAH M KHOUJ
PO BOX 39219
WASHINGTON DC 20016-9219

FINDING THE PERFECT GIFT JUST GOT EASIER WITH THE BB&T GIFT CARD! IT CAN BE USED ANYWHERE VISA DEBIT IS ACCEPTED. VISIT YOUR LOCAL BB&T FINANCIAL CENTER TO GET YOURS TODAY!

INVESTORS DEPOSIT ACCOUNT ACCOUNT NUMBER

- - ACCOUNT SUMMARY - -

PREVIOUS BALANCE AS OF 11-15-07
0 DEPOSITS/CREDITS
INTEREST PAID
0 CHECKS PAID
0 WITHDRAWALS/DEBITS
SERVICE CHARGE
NEW BALANCE AS OF 12-14-07

- - DEPOSITS/OTHER CREDITS - -

| DATE | AMOUNT | DESCRIPTION | REFERENCE NUMBER |
|---|---|---|---|
| 12-14 | | INTEREST PAYMENT | 18299248 |

- - DAILY BALANCE SUMMARY - -

| DATE | BALANCE | DATE | BALANCE | DATE | BALANCE |
|---|---|---|---|---|---|
| 12-14 | | | | | |

- - INTEREST SUMMARY - -

| EFFECTIVE DATE | OLD INTEREST RATE | NEW INTEREST RATE |
|---|---|---|
| 12-13 | 2.76% | 2.57% |

| | |
|---|---|
| INTEREST RATE | 2.57% |
| ANNUAL PERCENTAGE YIELD EARNED | 2.78% |
| INTEREST PAID THIS STATEMENT PERIOD | |
| 2007 INTEREST PAID YEAR-TO-DATE | |

FOR ASSISTANCE, CALL (703) 241-3555 OR FOR BB&T PHONE24, CALL (800)BANKBBT (1-800-226-5228).

# APPENDIX E

BB&T - VIRGINIA

STATEMENT DATE
11-15-07

468-16-01-00 13063 0 C 001 09 50 03

ABDULLAH M KHOUJ
PO BOX 39219
WASHINGTON DC 20016-9219

THE 2007 PRIMARY MORTGAGE SERVICER STUDY RANKED BB&T "HIGHEST IN CUSTOMER SATISFACTION AMONG MORTGAGE SERVICING COMPANIES." FOR J.D. POWER AND ASSOCIATES AWARD INFORMATION, GO TO JDPOWER.COM.

INVESTORS DEPOSIT ACCOUNT — ACCOUNT NUMBER [redacted]

ACCOUNT SUMMARY

PREVIOUS BALANCE AS OF 10-17-07
0 DEPOSITS/CREDITS
INTEREST PAID
0 CHECKS PAID
0 WITHDRAWALS/DEBITS
SERVICE CHARGE
NEW BALANCE AS OF 11-15-07

DEPOSITS/OTHER CREDITS

| DATE | AMOUNT | DESCRIPTION | REFERENCE NUMBER |
|---|---|---|---|
| 11-15 | [redacted] | INTEREST PAYMENT | 18257765 |

DAILY BALANCE SUMMARY

| DATE | BALANCE | DATE | BALANCE | DATE | BALANCE |
|---|---|---|---|---|---|
| 11-15 | [redacted] | | | | |

INTEREST SUMMARY

| EFFECTIVE DATE | OLD INTEREST RATE | NEW INTEREST RATE |
|---|---|---|
| 11-01 | 2.96% | 2.76% |

INTEREST RATE 2.76%
ANNUAL PERCENTAGE YIELD EARNED 2.90%
INTEREST PAID THIS STATEMENT PERIOD
2007 INTEREST PAID YEAR-TO-DATE

FOR ASSISTANCE, CALL (703) 241-3555 OR FOR BB&T PHONE24, CALL (800)BANKBBT (1-800-226-5228).

# APPENDIX F

SUNTRUST BANK
P O BOX 622227
ORLANDO FL 32862-2227

PAGE 1 OF 1
[redacted]
11/15/2007

SUNTRUST

ACCOUNT
STATEMENT

QUESTIONS? PLEASE CALL
1-800-786-8787

ABDULLAH M KHOUJ
PO BOX 39219
WASHINGTON DC 20016-9219

THANK YOU FOR BANKING WITH SUNTRUST. TO LEARN MORE ABOUT HOW SUNTRUST CAN MEET YOUR FINANCIAL SERVICES NEEDS, PLEASE VISIT OUR WEB SITE AT WWW.SUNTRUST.COM

ACCOUNT SUMMARY

| ACCOUNT TYPE | ACCOUNT NUMBER | STATEMENT PERIOD |
|---|---|---|
| SUNTRUST MARKET INDEX ACCOUNT | [redacted] | 10/17/2007 - 11/15/2007 |

| DESCRIPTION | AMOUNT | DESCRIPTION | AMOUNT |
|---|---|---|---|
| BEGINNING BALANCE | [redacted] | AVERAGE BALANCE | [redacted] |
| DEPOSITS/CREDITS | [redacted] | AVERAGE COLLECTED BALANCE | [redacted] |
| CHECKS | [redacted] | NUMBER OF DAYS IN STATEMENT PERIOD | 30 |
| WITHDRAWALS/DEBITS | [redacted] | ANNUAL PERCENTAGE YIELD EARNED | 4.44% |
| ENDING BALANCE | [redacted] | INTEREST PAID YEAR TO DATE | [redacted] |

DEPOSITS/CREDITS

| DATE | AMOUNT | DESCRIPTION |
|---|---|---|
| 11/15 | 1,126.05 | INTEREST PAID THIS STATEMENT THRU 11/15 |

DEPOSITS/CREDITS: 1 TOTAL ITEMS DEPOSITED: 0

BALANCE ACTIVITY HISTORY

| DATE | BALANCE | COLLECTED BALANCE | DATE | BALANCE | COLLECTED BALANCE |
|---|---|---|---|---|---|
| 10/17 | [redacted] | [redacted] | 11/15 | [redacted] | [redacted] |

MEMBER FDIC

FD-DISC-2097

# APPENDIX G

FEDERAL BUREAU OF INVESTIGATION

Date of transcription 03/16/2007

ABDULLAH MUHAMMAD KHOUJ, Ph.D., date of birth [redacted], social security account number [redacted], was interviewed at THE ISLAMIC CENTER (the Center), 2551 Massachusetts Avenue, Northwest, Washington, D.C. 20008. Also present during the interview was FATIMA GOODWIN, the Center's Secretary. After being advised of the identity of the interviewing agent and the nature of the interview, KHOUJ provided the following information:

In a board of directors meeting at the end of 2002, KHOUJ became concerned upon learning that the Center was operating at a deficit. The Center was spending more than the funding it received from the ROYAL EMBASSY OF SAUDI ARABIA (the Embassy). At or around this same time, FARZAD DARUI informed KHOUJ that the insurance bills for the Center had tripled. As a result, KHOUJ decided to begin depositing his monthly paycheck from the Embassy (i.e., approximately $2,563) into the Center's Special Account in hopes of gradually increasing the account to a more functional balance. From the beginning of 2003 through 2004, KHOUJ signed his paychecks upon receipt and provided them to DARUI to be deposited into the Special Account. At the end of 2004, DARUI informed KHOUJ that the insurance bills had decreased. DARUI stated that the insurance company had mistakenly classified the Center as an embassy. The bills had decreased upon the Center's reclassification as a non-profit organization. Accordingly, KHOUJ stopped sacrificing his personal salary for the benefit of the Center after 2004.

In recent weeks, KHOUJ began to worry about whether DARUI ever deposited KHOUJ's paychecks into the Special Account. KHOUJ reviewed several Bank of America statements for the Special Account. Upon review of those statements he had access to in 2003 and 2004, KHOUJ located what appeared to be deposits of his paychecks in some, but not all, months. KHOUJ then requested copies of his cleared paychecks from the Embassy's bank records. KHOUJ noticed that two out of approximately seven paychecks for which the Embassy provided copies were deposited into DARUI's bank account at Wachovia. At the conclusion of the interview, KHOUJ provided the interviewing agent with the attached copies of check numbers 0389 and 0849 drawn on the Embassy's HSBC Bank USA account number 013392395. KHOUJ fears that DARUI may have deposited several more of KHOUJ's paychecks into DARUI's own accounts. KHOUJ

Investigation on 03/14/2007 at Washington, D.C.

File # 196D-WF-234808 - 77 Date dictated N/A

by SA Michael J. McGillicuddy

This document contains neither recommendations nor conclusions of the FBI. It is the property of the FBI and is loaned to your agency; it and its contents are not to be distributed outside your agency.

# APPENDIX H

**<u>District of Columbia Rules of Professional Conduct</u>** (revised effective February 1, 2007)

**Rule 3.3 – Candor to Tribunal** (in pertinent part):

> (a) A lawyer shall not knowingly: (1) Make a false statement of fact or law to a tribunal or fail to correct a false statement of material fact or law previously made to the tribunal by the lawyer . . .; (4) Offer evidence that the lawyer knows to be false.

**Rule 3.4 – Fairness to Opposing Party and Counsel** (in pertinent part):

> A lawyer shall not: . . . (b) Falsify evidence, counsel or assist a witness to testify falsely.

**Rule 3.8 – Special Responsibilities of a Prosecutor** (in pertinent part):

> The prosecutor in a criminal case shall not: . . . (d) Intentionally avoid pursuit of evidence or information because it may damage the prosecution's case or aid the defense; (e) Intentionally fail to disclose to the defense . . . any evidence or information that the prosecutor knows or reasonably should know tends to negate the guilt of the accused or to mitigate the offense.

**<u>ABA Criminal Justice Section Standards, Prosecution Function</u>**, Third Edition

**Standard 3-3.6 – Quality and Scope of Evidence Before Grand Jury** (in pertinent part):

> (b) No prosecutor should knowingly fail to disclose to the grand jury evidence which tends to negate guilt or mitigate the offense.

**Standard 3-5.6 – Presentation of Evidence** (in pertinent part):

> (a) A prosecutor should not knowingly offer false evidence, whether by documents, tangible evidence, or the testimony of witnesses, or fail to seek withdrawal thereof upon discovery of its falsity.