UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA : | |
| : | |
| v. : | Crim. No. 07-149 (RCL) |
| : | |
| FARZAD DARUI : | |
| : | |
| Defendant : | |
| : | |

GOVERNMENT'S REPLY TO DEFENDANT'S OPPOSITION TO
GOVERNMENT'S MOTION TO SCRUTINIZE DEFENSE TRIAL SUBPOENAS

The United States of America, through its attorney, the United States Attorney for the District of Columbia, respectfully replies to the Defendant's Opposition to Government's Motion to Scrutinize Defense Trial Subpoenas.

I.      The United States Has Standing

Contrary to the defendant's claims, the government has standing to file its motion. Rule 17(c) prohibits the "oppressive" use of subpoenas, and trial courts have routinely recognized that the United States has standing to protect its witnesses. See, e.g., United States v. Smith, 245 F.R.D. 605, 611 (N.D. Ohio 2007) (United States has standing to challenge subpoenas issued for records related to its witness); United States v. Nektalov, 2004 WL 1574721 at *2 (S.D.N.Y. July, 14, 2004) (same). Similarly, the United States has standing to refute trial subpoenas directed at entities that possess information related to its witnesses. See Nektalov, 2004 WL 1574721 at *2; United States v. Orena, 883 F. Supp. 849, 869 (E.D.N.Y. 1995) (government can object to a subpoena issued to the accountant of a witness). Here, there has been no mystery that Dr. Khouj will be a trial witness. Because the government has already produced Jencks materials to the defense (to facilitate their preparedness for the since-passed January trial date), it

has significant concerns that the defense will subject all potential witnesses to the same abusive treatment it has provided Dr. Khouj.[1]  Even if the government had no standing, it would still be obligated to alert the Court to a party's improper use of trial subpoenas,[2] and this Court would have its own duty to investigate.  See United States v. Williams, 2007 WL 2287819 (E.D. La. Aug. 8, 2007) ("[t]he government's standing to object has no effect on the court's obligations under Rule 17" (quoting United States v. Modi, 2002 WL 188327 at *2 (W.D. Va. Feb. 6, 2002));United States v. Leaver, 358 F. Supp.2d 273, 275 n.5 (S.D.N.Y. 2005) ("it is the Court's responsibility to ensure that the subpoena is for a proper purpose and complies with the requirements of Rule 17(c)" (quoting United States v. Weissman, 2002 WL 31875410 at *1 (S.D.N.Y. Dec. 26, 2002)).

## II.     The Defense Subpoenas are Plainly Overbroad and Irrelevant

Tellingly, the Defense has not, and cannot, defend the breadth of its subpoenas to Dr. Khouj's banks.  While the defense suggests now, after the fact,[3] that it subpoenaed the banking information solely to show the use of P.O. Box addresses, and to see if Dr. Khouj wrote or deposited specific checks, its true intent is belied by the subpoenas' scope and substance.  The

---

[1] In addition, some of the persons identified in the Jencks materials as potential witness are foreign diplomats.  It cannot be seriously questioned that the United States has a substantial interest in protecting foreign diplomats in Washington, D.C. from oppressive subpoenas that may violate consular treaties.  See Article 44, Vienna Convention on Consular Relations (1963).

[2] As discussed in the Government's Motion, at least one of the defense's subpoenas was also facially deficient.

[3] Most of the defense's arguments are based upon pure post-hoc analysis.  Specifically, the defense makes much of several of Dr. Khouj's 302 reports to defend its "need" to issue the subpoenas, but the defense issued the bank subpoenas *before* the government turned over these reports.  Dr. Khouj's 302 reports were turned over on December 27, 2007, but the bank subpoenas were issued as early as December 5, 2007.  It is clear the defense's fishing expedition set sail long before it came up with a reason for the trip.

subpoenas requested *all* of Dr. Khouj's banking records (including checks and suspicious activity reports) from 1999 to 2007 without limitation. Not surprisingly, the subpoenas did not request the specific information the defense now claims it needed in the first place, but they did compel the production of bank records in years irrelevant to this case (1999 and 2007). Nixon does not permit this type of discovery.[4]

Of particular concern to the government is the defense's now asserted belief that the Court, in its October 3, 2007 Order, authorized the early return for *all* subpoenas the defendant issued to *any* third party, even if that party had not been previously identified. See Def. Farzad Darui's Brief in Opp. To Mot. Of Abdullah Khouj to Quash the Subps. Served by Darui on Three Entities at 3 ("In the Order there were no restrictions on the individuals or entities that Darui was allowed to subpoena, and the Court specifically permitted that the subpoenas were returnable "prior to the trial date set in this matter"). This unfettered view of the Court's Order means that Darui believes he can invoke the power of the Court to subpoena any entity, from the Internal Revenue Service to hospitals and doctors, without limitation. Such an expansive view of the subpoena power is ripe for abuse, and clearly wrong. The defendant's erroneous reading of this Court's Order must be corrected as soon as possible, and the government requests the Court to immediately stay the service and production of any subpoenas issued by the defense to protect the legitimate privacy interests of potential trial witnesses.

The fact that the defense's overarching theory on which it bases its subpoenas is not

---

[4] The defense suggests that the Nixon standard is wrong, and that the correct standard is stated in United States v. Niachamie, 91 F. Supp.2d 552, 563 (S.D.N.Y. 2000). The Niachamie case is wrong on the law, *dicta* in any case, and has not even been followed in New York. See United States v. Drakopoulus, 2003 WL 21143080 at *1, n.1 (E.D.N.Y. Jan. 13, 2003) (rejecting Niachamie standard as dicta). The defense subpoenas fail this lesser standard in any case.

exculpatory is even more troubling. The defendant is alleged to have stolen over $400,000 from the Islamic Center. Darui's asserted "defense" is that he did not steal from the Center, but rather, he defrauded the Saudi government at Dr. Khouj's request. Either way, Darui committed a knowing and intentional fraud. The government, of course, is convinced the defendant's theory is false, and it will present extensive evidence at trial, including expert testimony and documentary evidence, that proves that the checks the defendant deposited into his accounts were in fact altered after they were first created and presented to Dr. Khouj for his signature. In short, the defense is issuing subpoenas without a reasonable basis, and this practice must stop.[5]

### III.    CONCLUSION

For the foregoing reasons, the government believes that the all defense issued trial subpoenas should be examined to see if they properly comply with Rule 17.

Respectfully submitted,

UNITED STATES ATTORNEY

By:     _____/s/_____
Tejpal S. Chawla, D.C. Bar No. 464012
Ronald W. Sharpe, D.C. Bar. No. 434575
Assistant United States Attorneys
555 4th Street, NW
Washington, D.C. 20530
(202) 353-2442 (Chawla)
(202) 353-9460 (Sharpe)

---

[5] The defense alleges, without any proof, that the government may be abusing the power of the grand jury. Rule 6(e) prohibits the government from openly rebutting this outlandish accusation, but the government assures the Court it has not abused the grand jury. Should the Court desire, the government is prepared to rebut this allegation *ex parte*, and under seal.