UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| v. | ) Crim. No. 1:07-cr-00149-RCL |
| | ) |
| FARZAD DARUI, | ) |
| | ) |
| Defendant. | ) |

**DEFENDANT'S MOTION FOR SITE VISIT OF ISLAMIC CENTER,
FOR A COPY OF DARUI'S SEIZED PASSPORT, FOR RETURN
OF TYPEWRITER, AND FOR KHOUJ'S TAX RETURN FOR THE
<u>YEAR KHOUJ ALLEGED IT WAS "ALTERED"</u>**

Defendant Farzad Darui, by counsel, pursuant to Federal Rule of Criminal Procedure 16(a)(1)(E), requests the Court to order the following:

1. a brief site visit of The Islamic Center ("The Center");

2. production of a copy of Darui's passport;

3. return of a typewriter seized from Darui's business; and

4. Abdullah M. Khouj's tax return for the tax year that he accused Darui of "altering."

WHEREFORE, Defendant Farzad Darui moves this Court to grant the relief requested.

FARZAD DARUI

By Counsel

By: /S/ Victoria Toensing

   Victoria Toensing
   Joseph diGenova
   Brady Toensing
   diGenova & Toensing, LLP
   1776 K Street, N.W., Suite 737
   Washington, D.C. 20006
   (202) 289-7701
   (202) 289-7706
   *Counsel for Defendant Farzad Darui*

   By: /S/ Aaron S. Book
   Aaron S. Book (DC Bar No. 490815)
   Steven T. Webster (admitted *pro hac vice*)
   Webster Book LLP
   1 North King Street
   Leesburg, Virginia 20176
   703-779-8229
   703-991-9178 (fax)
   abook@websterbook.com

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| v. | ) Crim. No. 1:07-cr-00149-RCL |
| | ) |
| FARZAD DARUI, | ) |
| | ) |
| Defendant. | ) |

**DEFENDANT'S MEMORANDUM TO SUPPORT MOTION FOR SITE VISIT OF ISLAMIC CENTER, FOR A COPY OF DARUI'S SEIZED PASSPORT, FOR RETURN OF TYPEWRITER, AND FOR KHOUJ'S TAX RETURN FOR THE YEAR KHOUJ ALLEGED IT WAS "ALTERED"**

Defendant Farzad Darui, by counsel, pursuant to Federal Rule of Criminal Procedure 16(a)(1)(E), requests the Court to order the following:

1. a brief site visit of The Islamic Center ("The Center");

2. production of a copy of Darui's passport;

3. return of a typewriter seized from Darui's business; and

4. Abdullah M. Khouj's tax return that he accused Darui of "altering."

Darui's counsel has discussed each of these matters with the government and/or counsel for The Center in an attempt to reach resolution and has been denied.[1]

*1.    A site visit will assist Darui and his counsel in the preparation of Darui's defense.*

Darui requests that he and his counsel be permitted to conduct a site visit of The Center. The ability to inspect buildings or places that are materially related to criminal proceedings is specifically provided for in Federal Rule of Criminal Procedure 16(a)(1)(E), which states as follows:

---

[1] The Court should note that other issues have been resolved between defense counsel and the government.

> Upon a defendant's request, the government must permit the defendant to inspect and to copy or photograph books, papers, documents, data, photographs, tangible objects, buildings or places, or copies or portions of any of these items, if the item is within the government's possession, custody, or control and:
>
> (i) the item is material to preparing the defense;
>
> (ii) the government intends to use the item in its case-in-chief at trial; or
>
> (iii) the item was obtained from or belongs to the defendant.

Almost all the criminal conduct alleged in the Indictment, and related events and occurrences recounted by witnesses, occurred at The Islamic Center. For example, Darui is alleged to have altered the checks at issue using a typewriter located in his office at The Center; Darui is blamed for the missing original Bank of America monthly statements and original cancelled checks for Khouj's "Special Account";[2] Khouj allegedly "discovered" that Darui was using a post office box for the Bank of America statements by observing a computer screen located in Darui's office; and, the government claims that Darui was the only individual with access to his office during the relevant time period.

The only way to verify or negate these accusations and other facts important to Darui's defense is by conducting a brief, in-person inspection of The Center.

As of August 2006, Darui has been prohibited from entering The Center. Likewise, his attorneys have never entered The Center, much less viewed Darui's or Khouj's offices. Counsel was provided photographs of The Center by the government, but they are too small to provide useful information. When Darui sought permission from the government to conduct a site visit, the government did not object but directed that Darui obtain permission from The Center—through its counsel—for such a visit. Counsel for The Center declined Darui's counsel's request.

---

[2] "In an effort to conceal his activities, DARUI removed from the Islamic Center, without authorization, material evidence, that being records, invoices, and copies of checks copies belonging to the Islamic Center, and placed them in his corporate files at Blue Line Travel. In a similar effort, in August 2006, DARUI also concealed, destroyed, or had destroyed, original returned checks belonging to the Islamic Center, that were direct evidence of the checks he used in his scheme to defraud." (January 2, 2008, letter from government to defense counsel, Statement of the Offense, p.4).

2

Rule 16 specifies that a defendant is entitled to inspect "buildings or places" that are involved in the alleged criminal conduct. As described above, the government claims The Center is where almost all the alleged criminal conduct and factually-related events took place. Furthermore, after the government searched Darui's office in September 2006, the government "sealed off" that office and prevented (with the exception of one or two supervised entries) anyone from entering his former office.[3] As such, the government is exercising "control" over this part of The Center for the purpose of this criminal proceeding.

The layout of Darui's office and its relation to other areas of The Center, along with its proximity to Khouj's office, is material to Darui's defense. Without an inspection, it is impossible for Darui's counsel to visualize where each alleged event took place. It is unfair to Darui for the government's witnesses to provide detailed testimony regarding the ingress and egress to Darui's office and the physical location of items, and not be allowed to view this same layout.

Darui's counsel must inspect The Center and the relevant offices to prepare Darui's defense properly. As such, counsel requests they be permitted to conduct a site visit of The Center, particularly Darui's and Khouj's offices, and be permitted to take pictures and/or video as the government has done. Counsel requests that Darui be present during the site visit so he can

---

[3] Following are excerpts from interviews with Khouj and Fatoumata Goodwin regarding recognition of the governments's control of Darui's office: "DARUI's office at the Center has remained locked since the FBI searched the office on September 28, 2006, with minor exceptions. GOODWIN has entered the office on one or two occasions to retrieve items necessary for the Center's operation." (FBI Interview with Abdullah M. Khouj, June 6, 2007, p. 4); "After DARUI's termination, the Center changed the locks to the front door of DARUI's former office and kept the Office locked. The only key resides in the office of the Center's Director, ABDULLAH MUHAMMAD KHOUJ, Ph.D. . . . Darui's former office has only been unlocked and accessed on three occasions since agents from the Federal Bureau of Investigation (FBI) searched the office in September 2006. . . . [On each occasion, Goodwin entered the office with another employee of the Center present] . . . . GOODWIN does not think that DR. KHOUJ or any other employee of the Center entered DARUI's former office at any other time since the FBI search." (FBI Interview with Fatoumata D. Goodwin, April 20, 2007, p. 2).

3

describe what counsel is viewing to add context. Counsel is willing to confine the inspection to no more than two hours, and to conduct the site visit at a time that will cause the least inconvenience to visitors and staff.

Counsel further requests that they be permitted to conduct the inspection without a government or Center escort. However, if the Court permits a representative from The Center or the government to be present, Darui requests they be ordered to stay a sufficient distance from Darui and his counsel in order to preserve the attorney-client privilege that attaches to their communications, and that the person not be a member of the prosecution team.

### 2.     *Darui requests a copy of his passport.*

The government seized Darui's passport during the search of his residence. The passport is held by District of Columbia Pretrial Services Agency, which has informed counsel that it cannot allow Darui to copy or inspect the passport without a Court order. Under Rule 16, Darui must be permitted to copy his passport because it was "obtained from [Darui and] belongs to [Darui]." He needs to view dates in his passport to aid his defense. The government has declined to produce a copy of Darui's passport.

### 3.     *Darui requests the return of the typewriter seized by the government.*

The government seized an IBM electric typewriter during its search of Blue Line Travel and Zaal, Inc. offices. Darui understands that this typewriter, which does not have his fingerprints and was never in The Center, is not alleged to have been utilized in the scheme set forth in the indictment and will not be used as evidence at trial. As such, the government has no legitimate reason to retain the typewriter, which is expensive and necessary to business operations. Darui requests this typewriter be returned. He has repeatedly asked the government for this typewriter, starting on January 30, 2008. It has not responded.

*4.    Because Khouj made a false accusation that Darui "altered" his tax return, Darui is entitled to see that particular return.*

In his eighth interview with the FBI, Khouj falsely states he "recalls giving Darui his tax paperwork to file and thinks that Darui may have altered the form to suggest Dr. Khouj was still a diplomat." (FBI Interview with Abdullah M. Khouj, October 30, 2007, p.2). Because of this allegation, counsel has requested Khouj's tax return for whatever year he is describing.[4]

In refusing to produce this tax return, the government describes Khouj's accusation as "purely speculative" and asserts it is "immaterial to this prosecution . . . ." Further, the government requests defense counsel (if they want this material) to file a motion "as soon as possible to avoid unnecessary trial delay" because it takes a long time to get IRS records. (February 22, 2008, letter from government to defense counsel). Counsel is doing so.

Each time the government denies a request by Darui for specific evidence because of a false allegation by Khouj, the government responds that such specific accusation is not material or relevant.[5] The government cannot pick and choose which false allegation it will answer to on behalf of its principal witness. Khouj has made numerous accusations that the government must have considered not only truthful but also material or they would not have been recorded in the 302s. The fact that Khouj has made so many false statements that can be specifically disproved

---

[4] In a written denial of this request, the government mistakenly characterized counsel's request as wanting tax returns and other tax documents "from 2000 to 2006." (February 22, 2008, letter from government to defense counsel).

[5] Another example: In a 302 of a January 16, 2007, interview, the interviewing agent described Khouj stating he "gave Darui a check once a month for $600 to help [Estrada] with her rent." The 302 states that Khouj "displayed for the interviewing agent two checks drawn from a First Union account dated in 1999 and 2001, made payable to Darui." Yet the government now claims it does not have "any copies of the two checks . . . ." (February 22, 2008, letter from government to defense counsel). This investigative failure is amazing in view of the fact that the agent claims he saw the two checks and they were sufficiently significant for him to describe in his report of the interview. It is also amazing that the government sat silently during the November 19 2007 hearing when Khouj's counsel told the Court there were no bank accounts for Khouj other than the Bank of America Special Account, when it was specifically aware of the First Union account.

5

(via documents) is relevant to his veracity when the allegation becomes a less probative "he said, he said" situation.

## CONCLUSION

WHEREFORE, Defendant Farzad Darui moves this Court to grant the relief requested.

>
> FARZAD DARUI
> By Counsel
>
> By:    /S/ Victoria Toensing
>
> Victoria Toensing
> Joseph diGenova
> Brady Toensing
> diGenova & Toensing, LLP
> 1776 K Street, N.W., Suite 737
> Washington, D.C. 20006
> (202) 289-7701
> (202) 289-7706
> *Counsel for Defendant Farzad Darui*
>
> By: /S/ Aaron S. Book
> Aaron S. Book (DC Bar No. 490815)
> Steven T. Webster (admitted *pro hac vice*)
> Webster Book LLP
> 1 North King Street
> Leesburg, Virginia 20176
> 703-779-8229
> 703-991-9178 (fax)
> abook@websterbook.com

## CERTIFICATE OF SERVICE

      I hereby certify that on February 27, 2008, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will then send a notification of such filing (NEF) to the following:

Ronald W. Sharpe, Esquire
Tejpal S. Chawla, Esquire
Assistant United States Attorney
United States Attorney's Office
555 4th Street, NW
Washington, DC 20530


      /S/ Aaron S. Book
Aaron S. Book

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| v. | ) Crim. No. 1:07-cr-00149-RCL |
| | ) |
| FARZAD DARUI, | ) |
| | ) |
| Defendant. | ) |

**ORDER RE:**
**DEFENDANT'S MOTION FOR SITE VISIT OF ISLAMIC CENTER,**
**FOR A COPY OF DARUI'S SEIZED PASSPORT, FOR RETURN OF**
**TYPEWRITER, AND FOR KHOUJ'S TAX RETURN FOR THE**
**YEAR KHOUJ ALLEGED IT WAS "ALTERED"**

THIS CAUSE came to be heard on Defendant's Motion for a site visit and Defendant's Memorandum of Law in Support thereof, and good cause having been shown, it is

this _____ day of _____ 2008, hereby

**ORDERED** that Darui's Motion is granted.

_____
Royce C. Lamberth, U.S. District Judge

.