**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| UNITED STATES OF AMERICA : | |
| : | |
| v. : | Crim. No. 07-149 (RCL) |
| : | |
| FARZAD DARUI : | |
| : | |
| Defendant : | |
| _____: | |

**GOVERNMENT'S OPPOSITION AND RESPONSE TO DEFENDANT'S**
**MOTION FOR SITE VISIT OF ISLAMIC CENTER, FOR A COPY OF DARUI'S**
**SEIZED PASSPORT, FOR RETURN OF TYPEWRITER, AND FOR KHOUJ'S**
**TAX RETURN FOR THE YEAR KHOUJ ALLEGED IT WAS "ALTERED"**

The United States of America, through its attorney, the United States Attorney for the District of Columbia, respectfully replies to the Defendant's Motion for Site Visit of Islamic Center, for a Copy of Darui's Seized Passport, For Return of Typewriter, and for Khouj's Tax Return for the Year Khouj Alleged it Was "Altered" (hereinafter "Defense Motion"). As is more fully discussed below, the government opposes the defendant's requests, and asks this Court to deny the defendant's motion.

**I.      Request for a Site Visit to the Islamic Center**

The defense's request to visit the Islamic Center is beyond any recognized discovery rule. See Fed. R. Crim. Proc. 16(a)(1)(E) (defense discovery limited to "buildings or places . . . within the government's possession, custody, or control"). As this Court is aware, the government does not own, control, operate, or supervise any part of the Islamic Center, which is an internationally recognized religious center whose Board of Directors includes numerous foreign ambassadors who represent their respective countries in the United States. Contrary to the defendant's claims, the government also does not control the Islamic Center's use of Darui's office space, it has not

1

ordered its closure, and it has certainly has not entered into an agreement or contract with the Islamic Center about the Center's use of this space.  Insofar as any legitimate entry into the Islamic Center rests solely with the Islamic Center, the government defers this matter to the Court and the Islamic Center.[1]

### II.    Darui's Passport

The government sees no reason why the defendant needs a copy of his passport.  The defendant was ordered to relinquish his passport due to flight concerns, and the government believes that the defendant's possession of a copy of his passport could also enable him to flee.[2]  To the extent that counsel needs to "view dates on his passport to aid his defense," see Defense Mot. at 4, there is no reason why the defense cannot simply inspect the defendant's passport to ascertain any of the dates it wishes without copying the passport.  If such dates are material to the defense, the government assures the court that it will stipulate to the existence of all dates in the passport.

### III.    Return of Typewriter Seized by the Government

The typewriter at issue was seized from the defendant's office by the Government pursuant to a properly issued search warrant.  The typewriter has evidentiary value, as it appears to be same brand and make of typewriter located in the defendant's former office at the Islamic

---

[1] The government acknowledges that some or all of Darui's criminal conduct occurred in his office, but rejects the claim that this office space is particularly unique, or that the numerous layout drawings and photographs provided by the government to the defense are inadequate in any way.  To date, the defense has also not requested larger photographs or more detailed layout drawings of the Islamic Center from the government.

[2] For example, persons from the U.S. can presently enter Mexico and Canada without a passport, and could possibly obtain replacement passports from the Embassy with a naturalization certificate and a photocopy of an original passport.  The defendant has family in Mexico, and also has substantial assets.

Center (which was also seized by the government). Either of these typewriters could have been used to alter the checks at issue in this case. The government has not decided whether it will introduce the typewriter at trial, but has offered to possibly return the typewriter to the defendant if the parties can agree upon a suitable stipulation. The parties have discussed this matter, and the defense stated it would draft a stipulation for the government's review; to date, the government has not received any draft stipulation from the defense. If the parties cannot agree upon a suitable stipulation, the government will not relinquish its right to possess, and introduce, this admissible, tangible piece of evidence against the defendant.

### IV.    Dr. Khouj's Tax Returns

Lastly, the defense requests the Court to order the government to produce a copy of Dr. Khouj's tax return in order to rebut a speculative opinion offered by Dr. Khouj. Specifically, the defense wishes to review Dr. Khouj's tax return in the hope of rebutting Dr. Khouj's personal opinion that in one instance, after Dr. Khouj gave the defendant his tax returns for the defendant to file for him, Dr. Khouj "thinks that Darui may have altered the [tax] form to suggest Dr. Khouj was still a diplomat." Def Mot. at 5 (quoting FBI Interview with Dr. Khouj, October 30, 2007). The defense has not claimed it is entitled to these records under Rule 16, and this Court should reject this request.[3]

First, the statement by Dr. Khouj about his tax return is a purely speculative opinion that

---

[3] The tax records at issue are not "within possession of the government" under Rule 16 because neither government counsel or the prosecuting agencies in this case (the Federal Bureau of Investigation) are in possession of Dr. Khouj's tax returns. See U.S. v. Brooks, 966 F2d 1500, 1503 (D.C. Cir. 1992) (recognizing scope of prosecutor's search for material in the government's possession is limited to "files maintained by branches of the government closely aligned with the prosecution"); see also Kyle v. Whitley, 514 U.S. 419 (1995) (prosecutor's *Brady* duty extends to "others acting on the government's behalf in the case"). As such, the defendant's discovery request must satisfy the Nixon requirements of which this Court is well aware.

is obviously inadmissible and factually irrelevant to this case. Specifically, Dr. Khouj's statement about an apparent error on his tax return is his personal opinion, and inadmissible. See FRE 701. It is also true that whether or not Dr. Khouj's tax return was in fact altered, and for that matter altered by the defendant, is irrelevant to whether the defendant committed the crimes against the Islamic Center as alleged in the Indictment.[4] Because Dr. Khouj's opinion is inadmissible, it is hard to see how his tax return is admissible or discoverable under Nixon.

Second, even assuming that (a) Dr. Khouj's opinion was actually a factual statement based on personal knowledge; (b) the statement was admissible at trial despite its irrelevance to the case; (c) Dr. Khouj was factually inaccurate; and (d) the tax return could somehow prove that the defendant did not alter it or that Dr. Khouj was incorrect in believing that his tax return contained the error, the return itself would still be inadmissible and beyond discovery under Nixon. The defendant's stated goal in obtaining the tax records is the mere hope of finding documents that *might* disprove Dr. Khouj's claim, and then use the documents to attack Dr. Khouj's veracity.[5] However, FRE 608(b) clearly limits the use of extrinsic evidence in these cases. Similarly, FRE 403 permits this Court to exclude evidence that is confusing and likely to create a mini-trial within a trial. As purely extrinsic evidence of a potentially inaccurate statement, Dr. Khouj's tax records are simply inadmissible even if Dr. Khouj had made a false statement about the alteration of his tax records.

Given the defense's stated intent, and the immateriality and irrelevance of the underlying

---

[4] The government is not seeking to introduce this evidence under FRE 404(b).

[5] The defense has now explicitly stated "[t]he fact that Khouj has made so many false statements that can be specifically disproved (via documents) is relevant to his veracity . . . ." Def. Mot. at 5-6.

opinion, the defendant's request falls far short of the required showing under <u>Nixon</u>. More importantly, this request also should be seen for what it is: another fishing expedition to obtain Dr. Khouj's private documents without a legitimate basis.

## III. CONCLUSION

    For the foregoing reasons, the government believes that the Defense's Motion should be denied.

                         Respectfully submitted,

                         JEFFREY A. TAYLOR

                         UNITED STATES ATTORNEY

By: _____/s/_____
      Tejpal S. Chawla, D.C. Bar No. 464012
      Ronald W. Sharpe, D.C. Bar. No. 434575
      Assistant United States Attorneys
      555 4th Street, NW
      Washington, D.C. 20530
      (202) 353-2442 (Chawla)
      (202) 353-9460 (Sharpe)