UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES | ) |
| | ) |
| v. | ) Crim. No. 1:07-cr-00149-RCL |
| | ) |
| FARZAD DARUI, | ) |
| | ) |
| Defendant. | ) |

**DEFENDANT'S OMNIBUS REPLY TO GOVERNMENT'S AND
ISLAMIC CENTER'S OPPOSITION TO MOTION
FOR SITE VISIT OF ISLAMIC CENTER AND FOR ADDITIONAL RELIEF**

Defendant, by counsel, files this omnibus reply to the government's opposition to motion for site visit of Islamic Center, for a copy of Darui's seized passport, for return of typewriter, and for Khouj's tax return, and to the Islamic Center's opposition to motion for site visit of Islamic Center.

1. *The government has exercised constructive, if not actual, control over Darui's office, and a site visit would not burden The Center.*

According to the government, since federal agents searched the offices of the Islamic Center and seized documents, the government has had a "gentleman's agreement" with The Center to ensure that the offices subject to the search were not disturbed. The existence of this agreement was revealed to counsel for Darui at the outset of this case when concerns were raised as to whether additional evidence at The Center could be tampered with or destroyed. The government assured counsel that because of this "gentleman's agreement" there was no risk of that happening. Counsel took the government at its word; however, the government in its opposition brief seems to be backtracking on its prior representation.

Of course, it is no secret that the Center is working closely with the government in all aspects of its continuing investigation of Darui, and has cooperated fully with the government in "sealing off" the areas of the Center where evidence was seized. Such an agreement

demonstrates that the government is exercising at least constructive control over the offices at The Center, if not actual control.  As such, Darui should be permitted to conduct a brief, unobtrusive inspection of these offices under Rule 16.

Assuming that The Center even has standing to oppose Darui's motion, the fact that it has been working closely with the government militates in favor of permitting inspection.  It is, essentially, working as the agent of the government in prohibiting access to the offices at The Center by third parties.  Certainly, if The Center wished to demolish, remodel, or otherwise disturb the offices that Darui wishes to inspect (and in which the alleged criminal acts took place), it would seek the consent of the government before doing so.  And it is highly doubtful that the government would permit such activity before the conclusion of this matter.

The Center's complaint that an inspection would impose an undue "burden and cost" is hyperbole.  A brief inspection will impose no burden on The Center.  As stated in his motion, Darui and his counsel simply wish to perform an inspection of the location where the alleged crimes were to have taken place because the description and photographs provided by the government are, not surprisingly, inadequate.  There would be no "cost" to The Center in allowing Darui and his counsel an hour inspecting the premises, and the burden, if any, would be minimal as any inspection would be conducted during off-hours at The Center and at The Center's convenience.  Darui does not object to an escort from The Center or the government, he only asks the Court that such escort not be permitted to overhear any privileged communications.

Furthermore, Darui is not obliged to disclose details of how the inspection will be useful to him or used in his defense.  It is sufficient for the purposes of Rule 16 that the premises are in the control of the government.

2.   *Darui is entitled to a copy of his passport.*

Rule 16 specifically requires that Darui be provided with a copy of his passport because it was seized by the government. The government's "fears" that he may somehow flee the country by utilizing a copy of his passport are nonsense, especially given the heightened state of airport security. And there is no chance that he could obtain a replacement passport from another American embassy while under indictment. That being said, Darui would be willing to accept a copy of his passport with the first page (i.e., the page with his photograph, passport number, etc.) redacted. Such a compromise should allay the government's irrational and groundless fear that Darui may flee.

3.   *Darui is entitled to return of his typewriter.*

The government is attempting to force a *quid pro quo* in the form of a stipulation from Darui to secure the return of his typewriter. The government tested only one typewriter—the one used at Darui's office at The Center—and that is the only typewriter it will use at trial. The typewriter Darui seeks was seized from his business. The government has no evidence that the typewriter seized from Darui's business was used to facilitate any criminal activity and admits as much in its opposition. As such, retention of the typewriter is simply to harass Darui and to attempt to extort burdensome stipulations from him.

4.   *Khouj's false accusations of criminal conduct regarding his tax return are a sufficient basis to require its production.*

The government's narrow reading of Rule 16 and its *Brady* obligations is disturbing. Moreover, *Nixon* has no application here.

First, as to Rule 16, the government ignores the plain text of the Rule, which expressly refers to "the *government's* possession, custody, or control." Fed. R. Crim. P. 16(a)(1)(E) (emphasis added). *See also United States v. Safavian*, 233 F.R.D. 12, 14 (2005) (stating that

"[i]n the Court's view, 'the government' includes any and all agencies and departments of the Executive Branch of the government and their subdivisions, not just the Justice Department, the FBI, the GSA-OIG, and other law enforcement agencies.").

Second, the government's citation to *United States v. Brooks* is misleading. In *Brooks*, the D.C. Circuit remanded to the district court to require the U.S. Attorney's office to conduct a search of files within the possession of the Metropolitan Police Department. The defense contended that the files could be exculpatory. In short, *Brooks* had nothing to do with Rule 16.

Third, the government's evidentiary analysis is simply wrong. Although Federal Rule of Evidence 608 may have something to say about offering extrinsic evidence of specific falsehoods, it does not speak to whether or not a matter may be inquired into on cross-examination. *See White v. Coplan*, 399 F.3d 18, 25 (1st Cir. 2005) (noting that "cross-examination and extrinsic proof are two different issues. The ability to ask a witness about discrediting prior events—always assuming a good faith basis for the question—is worth a great deal"). Moreover, at a certain point, even evidentiary restrictions on extrinsic evidence may have to give way to the constitutional command of confrontation. *See, e.g.*, *id.* at 24 (stating that even if exclusionary rules of evidence are "generally defensible, as is New Hampshire's version of Rule 608, it may on particular facts be applied to produce an unconstitutional infringement").

Here, the defense has identified the precise document that is claimed to be within the government's possession, custody, or control, and has cited a specific false accusation by Dr. Khouj regarding this document. That is sufficient under Rule 16 and *Brady* to require production.

                                              FARZAD DARUI
                                              By Counsel

-5-

      /S/ Aaron S. Book
Aaron S. Book (DC Bar No. 490815)
Steven T. Webster (admitted *pro hac vice*)
Webster Book LLP
1 North King Street
Leesburg, Virginia 20176
703-779-8229
703-991-9178 (fax)
abook@websterbook.com

Victoria Toensing
Joseph diGenova
Brady Toensing
diGenova & Toensing, LLP
1776 K Street, N.W., Suite 737
Washington, D.C. 20006
(202) 289-7701
(202) 289-7706
*Counsel for Defendant Farzad Darui*

-6-

## CERTIFICATE OF SERVICE

      I hereby certify that on March 18, 2008, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will then send a notification of such filing (NEF) to the following:

Ronald Sharpe, Esquire
Assistant United States Attorney
United States Attorney's Office
555 4th Street, NW
Washington, DC 20530

Robert P. Watkins, Esquire
Williams & Connolly LLP
725 Twelfth Street NW
Washington, D.C.  20005-5901


      /S/ Aaron S. Book
Aaron S. Book