UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA | ) ) ) | |
| v. | ) ) | Criminal No. 07-cr-0149 (RCL) |
| FARZAD DARUI, | ) ) ) | |
| Defendant. | ) ) | |

**GOVERNMENT'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS
COUNT EIGHT OF THE INDICTMENT FOR LACK OF VENUE**

The United States of America, by and through its counsel, the United States Attorney for the District of Columbia, opposes the Defendant's Motion to Dismiss Count Eight of the Indictment for Lack of Venue (Defense Motion). As discussed herein, there is no legal or factual basis for defendant's motion; therefore, it must be denied.

**A.  Defendant's Motion to Dismiss Count Eight Should Be Denied**

The Defense Motion argues that Count Eight of the superseding indictment which, charges defendant with Money Laundering and Causing an Act to be Done in violation of 18 U.S.C. §§1957 and 2, fails to allege the crime of money laundering that can be charged in the District of Columbia and therefore must be dismissed. In support of his argument, defendant erroneously asserts that venue is improper because there were no "proceeds" of the alleged unlawful activity (SUA) until funds were credited to a bank account in Virginia. Defense Motion at 5. Defendant misapprehends the venue provisions of 18 U.S.C. § 1956 and ignores the fact that defendant transported the stolen proceeds from Washington, D.C., to Virginia. As discussed below, venue is proper in the District of Columbia and defendant's motion should be denied.

1.  Venue for the Money Laundering Count is Proper in this District

Section 1956(i)(B), provides, in relevant part, that a prosecution for an offense under this section or section 1957 may be brought in "any district where a prosecution for the underlying specified unlawful activity could be brought, if the defendant participated in the transfer of the proceeds of the specified unlawful activity from that district to the district where the financial or monetary transaction is conducted." 18 U.S.C. § 1956(i)(B). The background of this statute is instructive.

In United States v. Cabrales, 524 U.S. 1, 10 (1998), the Supreme Court held that a defendant could not be prosecuted for money laundering in Missouri—the district where the SUA took place—when all of the money laundering activity took place in Florida. But, the Court suggested that the situation might be different if the defendant had transported the funds from the district where the underlying crime occurred to the district where the financial or monetary transaction was conducted. The court stated that under such scenario, the money laundering offense might be considered a continuing offense – "money laundering . . . arguably might rank as a 'continuing offense,' triable in more than one place, if the launderer acquired the funds in one district and transported them into another district." 524 U.S. at 10.

Congress codified what the Supreme Court suggested in Cabrales, in Section 1004 of the USA Patriot Act by enacting Section 1956(i), which became effective on October 26, 2001. Section 1956(i), provides that a money laundering prosecution may be brought in any district where prosecution for the SUA could be brought "if the defendant participated in the transfer of the proceeds of the SUA from that district to the district where the financial or monetary transaction" took place. Post – 2001 cases have affirmed convictions based on that provision.

See United States v. Nichols, 416 F.3d 811, 824 (8th Cir. 2005) (court held that a defendant who was charged with committing the SUA in Missouri, and who participated in moving the SUA proceeds from Missouri to California, where the money was laundered, could be charged with money laundering in Missouri); United States v. Shepard, 2004 WL 1752592 (D. Kan. 2004) (distinguishing Cabrales and holding that a defendant who conducted money laundering transactions in Missouri could be prosecuted for money laundering in Kansas because he was also being prosecuted for committing the SUA in Kansas; United States v. Anderson, 2006 WL 1580023, at *3 (D. Minn. 2006) (venue proper in the district where the SUA occurred if defendant charged with the SUA); United States v. Lewis, 2006 WL 1579855, at *13 (D. Minn. 2006) (defendant who commits fraud in Minnesota and participated, either directly or through an aider and abettor, in transporting the fraud proceeds from Minnesota to the place where it was laundered, could be charged with money laundering in Minnesota); United States v. Wittig, 2006 WL 851473, at *16 (D. Kan. 2006) (defendant who transferred fraud proceeds from Kansas, where the fraud occurred, to New York, where the money laundering offense occurred, could be prosecuted for money laundering in Kansas under section 1956(i)(1)(B)).

Defendant cites none of these cases but, baldly asserts that there was no movement of SUA proceeds from Washington, D.C., to Virginia. According to defendant, "there were no 'proceeds' of the alleged unlawful activity until the funds were credited to a bank account in Virginia." Defense Motion at 5. Of course, this analysis ignores that defendant actually altered some of the Islamic Center checks and transported them across state lines. In this case, transportation of the stolen and altered checks, which are negotiable instruments and are SUA proceeds constitute the defendant's participation in the transfer of the proceeds to Virginia,

which justifies venue in this district. This makes intuitive sense and is supported by the case law. In United States v. Akintobi, 159 F.3d 401, 404 (9th Cir. 1998), the court held that stolen and fraudulently obtained checks constitute proceeds of mail theft and bank fraud – they are the equivalent of a fraudulently obtained line of credit. Likewise, in United States v. Hemmingson, 157 F.3d 347, 355 (5th Cir. 1998), the court held that delivery of yet-to-be-cashed check is a transaction involving SUA proceeds. In United States v. Mankarious, 151 F.3d 694, 702-03 (7th Cir. 1998), the court also assumed that a check constitutes proceeds before it is cashed. It should not be surprising that numerous other courts have recognized the distinction between checks and wires in money laundering cases like this. See e.g., United States v. Cefaratti, 221 F.3d 502, 506-08 (3d Cir. 2000) (Government check received as student loan is proceeds; deposit is a section 1957 offense); United States v. Ross, 210 F.3d 916, 920-21 (8th Cir. 2000) (in advance fee scheme, victim's check is SUA proceeds; deposit of check with intent to promote continuation of scheme is money laundering offense); United States v. Sutera, 933 F.2d 641, 648 (8th Cir. 1991) (defendant received gambling proceeds in the form of a check; subsequent deposit of check constituted money laundering); United States v. Montoya, 945 F.2d 1068, 1075 (9th Cir. 1991) (where defendant receives bribe in the form of a check, subsequent deposit of check is a financial transaction for money laundering purposes); United States v. Lomow, 266 F.3d 1013, 1018 (9th Cir. 2001) (following Montoya; same for check representing fraud proceeds); United States v. Kennedy, 64 F.3d 1465, 1478 (10th Cir. 1995) (deposit of checks received from victims was money laundering because the checks were the proceeds of earlier mailings that constituted completed mail fraud offenses); United States v. Silvestri, 409 F.3d 1311, 1335 (11th Cir. 2005) (victim's check became SUA proceeds when received by

codefendant; defendant's subsequent deposit of the check was a money laundering offense); United States v. Brieno, 2001 WL 290618, at *3 (N.D. Ill. 2001) (following Kennedy; cashing check received from victim at liquor store involved proceeds of scheme to defraud charitable organization); United States v. Farrington, 2000 WL 1751996, at *4 (D.V.I. 2000) (check from bank constituting proceeds of fraudulently obtained loan is SUA proceeds; deposit is section 1957 offense); United States v. Parris, 88 F. Supp.2d 555, 561 n.13 (E.D. Va. 2000) (embezzlement was complete when check was written to defendant; endorsing and depositing check was separate transaction); United States v. Ruedlinger, 976 F. Supp. 976, 996-97 (D. Kan. 1997) (following Kennedy; deposit of victims' checks occurred after earlier mailings had already established the mail fraud offense and thus constituted a money laundering offense involving mail fraud proceeds); United States v. Li, 856 F. Supp. 411, 416 (N.D. Ill. 1994) (receipt of check is distinct from separate transaction of depositing check into a bank account), aff'd, 55 F.3d 325 (7th Cir. 1995); United States v. All Funds on Deposit at Dime Savings Bank, 255 F. Supp.2d 56, 63-66 (E.D.N.Y. 2003) (deposit of check representing fraud proceeds can be a section 1957 offense; rejecting argument that a check cannot represent proceeds until it is deposited and has cleared).

In support of defendant's proposition, he relies almost exclusively on United States v. Johnson, 971 F.2d 562 (10th Cir. 1992). But, Johnson differs materially from this case. In Johnson, the defendant fraudulently induced victims to wire transfer funds directly to defendant's account. The court determined that such wire transfers into defendant's account did not constitute money laundering (yet) because victims' funds were not criminally derived (i.e., proceeds) before they were wire-transferred into the crook's account. In other words, the

defendant did not obtain SUA proceeds until the initial wire transfers put them there.  The court acknowledged that if transactions had occurred in two steps, with defendant first obtaining victims' funds, and then transacting with the funds (even by way of a deposit), the second step, assuming the deposit value exceeded $10,000, would qualify as a section 1957 violation.[1]

Darui's scheme is easily distinguishable because defendant here secured SUA proceeds, that is, the Islamic Center checks, before he moved the checks from Washington, D.C., to Virginia where he deposited them into Virginia bank accounts that he controlled.[2]  When defendant gained control of the funds belonging to the Islamic Center that were under the custody and control of Bank of America located in Washington, D.C., the Islamic Center checks were SUA proceeds.  Defendant subsequently transported the stolen funds (SUA proceeds) from Washington, D.C., to Virginia and deposited the checks (drawn on Islamic Center bank accounts located in Washington, D.C., ) into bank accounts located in Virginia.  Moreover, defendant's act of depositing the stolen checks in Virginia bank accounts further caused the Bank of America to transfer funds from the Islamic Center accounts in Washington, D.C., to the Commonwealth of Virginia.  Thus, Johnson is inapplicable because defendant participated in the movement or transfer of the proceeds of the fraud scheme from Washington, D.C., to Virginia.

---

[1] Defendant also cites United States v. Howard, 245 F. Supp.2d 24, 29 (D.D.C. 2003).  In Howard, this Court determined that the jury's failure to distinguish between money laundering and underlying wire fraud in a special verdict required that the money laundering conviction be vacated.  But, in an earlier decision, United States v. Howard, 271 F. Supp.2d 79, 87 (D.D.C. 2002), this Court also recognized that there is no requirement that the underlying SUA be complete before defendant starts laundering proceeds from the early portions of the scheme.

[2] Section 1956(i)(3) provides that, for purposes of the venue provision, a person participates in the transfer of funds from the district in which the SUA offense took place if he or she conducts any part of the transfer of the funds.

Where, as here, defendant participated in the movement of the proceeds of the fraud scheme from Washington, D.C., to Virginia, that being, the transportation of altered and negotiated Islamic Center checks from Washington, D.C., to Virginia, a subsequent money laundering offense involving the use of those proceeds (withdrawal of more than $10,000 in SUA derived property from a Virginia bank account) can be prosecuted in the District of Columbia pursuant to 1956(i)(B).

**B.     Conclusion**

WHEREFORE, for the reasons discussed herein, the government respectfully requests that defendant's Motion to Dismiss Count Eight of the Indictment for Lack of Venue be DENIED.

>                    Respectfully submitted,
>                    JEFFREY A. TAYLOR
>                    UNITED STATES ATTORNEY
>
>
> By:         /s/
>                    Tejpal S. Chawla, D.C. Bar No. 464012
>                    Ronald W. Sharpe, D.C. Bar. No. 434575
>                    Assistant United States Attorneys
>                    555 4th Street, NW
>                    Room 5828
>                    Washington, D.C. 20530
>                    (202) 353-2442 (Chawla)
>                    (202) 353-9460 (Sharpe)