UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES | ) |
| | ) |
| v. | ) Crim. No. 1:07-cr-00149-RCL |
| | ) |
| FARZAD DARUI, | ) |
| | ) |
| Defendant. | ) |

**DEFENDANT FARZAD DARUI'S REPLY TO GOVERNMENT'S OPPOSITION TO DEFENDANT'S BRIEF IN SUPPORT OF MOTION TO DISMISS, OR IN THE ALTERNATIVE, MOTION *IN LIMINE* TO PRECLUDE ANY EVIDENCE OR TESTIMONY FROM ANY REPRESENTATIVE OF THE ROYAL EMBASSY OF SAUDI ARABIA**

Defendant, by counsel, files this reply to the government's Opposition to Defendant's Motion to Dismiss, or in the Alternative, Motion *in Limine* to Preclude Any Evidence or Testimony from Any Representative of the Royal Embassy of Saudi Arabia.

**FACTUAL STATEMENT**

The government misstates not only Farzad Darui's argument for requesting access to certain Saudi Arabia Embassy employees but also the factual bases on which the request is predicated. In his Motion ("Defense Motion"), pp. 2-3, Darui explained the context for his need to subpoena Saudi witnesses and provided examples of specific questions material to his defense because the government has injected the Saudi Embassy into the case. Darui provides two additional bases for materiality here:

1.	The government's evidence that any check was altered is meager. It has not one original check. Unlike typical check alteration evidence, there is no marking of any kind on the allegedly altered checks that even suggests alteration. The government's evidence consists of copies of checks and related documents, such as partially covered "invoices," all obtained from

1

the Saudi Embassy ("Saudi Documents").[1]  The copies of the two "matching" checks (i.e., the purported "original" and "altered" checks) are identical but for the payees: one to a vendor, the other to a Darui entity.  On this evidence, it is just as likely that the altered checks are those that state the vendors' names.

Therefore, the integrity of the documents, most significantly the alleged invoices that support the bases for payments, is material to Darui's defense.  Because the Saudi Documents are not in the same form as when they were provided to the Saudi Embassy, it is important to know all employees who handled the documents before providing them to the government.  It is equally important to know who approved the expenditures and whether such approval was based on these "invoices."

2.  Abdullah M. Khouj, the government's principal witness, has claimed to the government that he was unaware the bank statements were being sent to a Post Office box:

> During his meeting [in August 2006] with the [Bank of America] manager, DR. KHOUJ saw P.O. Box 53188 listed as an address for the Special Account on the manager's computer screen.  This instance was the first time that DR. KHOUJ had knowledge of P.O. Box 53188.  DR. KHOUJ does not know how the Special Account's address was changed to P.O. Box 53188.

FBI interview with Abdullah M. Khouj, September 19, 2007.

Any evidence that Khouj was aware of this Post Office box on the Special Account bank statement, where it had appeared since Khouj requested Darui to open the Post Office box in February 2002, would be material and relevant to Darui's defense.  Twice a year, Khouj sent the Saudi Embassy six months of bank statements along with a cover letter.  Copies of those letters and the testimony of the recipient are material to Darui's defense because they show that they were mailed to the Post Office box.

---

[1] Although the Saudi Documents contain these so-called invoices, there are numerous discrepancies that put their authenticity in question.

2

**LEGAL ARGUMENT**

The government's cases do not address Darui's legal or factual arguments. *See United States v. Korogodsky*, 4 F. Supp. 2d 262, 268 (S.D.N.Y. 1998) (finding no violation of the Confrontation Clause where defendant was unable to subpoena witnesses in Russia without a showing of materiality to his defense, but noting that should the government attempt to introduce evidence in violation of the Confrontation Clause, such evidence would be excluded). *See also United States v. Moussaoui*, 382 F.3d 453, 463 (4th Cir. 2004), *cert. denied*, 544 U.S. 931 (2005) (ordering that the government serve custodians of detained foreign witnesses with subpoenas because failure to serve such witnesses would be a violation of the defendant's Confrontation Clause rights); *United States v. Zabaneh*, 837 F.2d 1249, 1259-60 (5th Cir. 1988) (finding no violation of defendant's Confrontation Clause rights simply because Belizean witnesses subpoenaed by the defense failed to testify); *United States v. Greco*, 298 F.2d 247, 251 (2nd Cir. 1962) ("The fact that [defendant] could not compel the attendance of an unnamed witness for whom he never asked did not deprive him of any constitutional right."); *United States v. Herbert*, 2005 WL 106909 at *2 (S.D.N.Y. Jan. 19, 2005) ("There is no merit in Herbert's argument that the conviction should be overturned on the ground that he was devoid of compulsory process to procure unidentified evidence and witnesses from Belize and Colombia.").

In these cases, defendants either failed to request or were denied requests to compel testimony from witnesses located outside of the court's subpoena power. However, in no case did the government *use* testimony from a similarly situated unavailable witness where the defendant could not command such testimony. In the government's cited cases, the government and the defendant were in the same position with respect to compelling testimony from unavailable witnesses.

It violates fundamental fairness and the Sixth Amendment for Darui to be prevented from procuring Saudi Embassy witnesses and documents necessary for his defense while the government is free to present its evidence through cooperative Saudi Embassy officials.

Cases cited by the government present two options for this situation: exclude the proposed evidence ("If the admission of any of the Government's proposed evidence would violate Korogodsky's rights under the confrontation clause, then the Court will exclude the proposed evidence, not dismiss the Indictment." *Korogodsky*, 4 F. Supp. 2d at 268), or dismiss the indictment (when the identity of a confidential informant is necessary to the defense, "the trial court may require disclosure and, *if the Government withholds the information,* dismiss the action." *Roviaro v. United States*, 353 U.S. 53, 61 (emphasis supplied.)).

The government chose to supersede the first indictment and put at issue the procedures and intent of Saudi Embassy employees. *See* Indictment, ¶ 14. Thus, the government has more control over the evidence at issue here than in a prosecution where it has no choice but to use an existing confidential informant. By redefining its theory of the case, the government has exercised unilateral control over what evidence and witnesses will be presented for a material part of the case. By that same stroke, the government wants to limit Darui to only cross-examination of its selective presentation. This situation is no different than a bank robbery case where the government brings in only the teller who identifies the defendant, but the defendant is not permitted to call all the other bank employees who also witnessed the robbery but identified someone else.

The government should have to choose: no witnesses or evidence from the Saudi Embassy or dismiss the case.

4

FARZAD DARUI

By: /s/ Victoria Toensing
Victoria Toensing (DC Bar #304980)
Joseph diGenova
Brady Toensing
diGENOVA & TOENSING, LLP
1776 K Street, N.W., Suite 737
Washington, D.C. 20006
(202) 289-7701
(202) 289-7706 (fax)
Counsel for Defendant

By: /s/ Aaron S. Book
Aaron S. Book (DC Bar # 490815)
Steven T. Webster (admitted *pro hac vice*)
WEBSTER BOOK LLP
1 North King Street
Leesburg, Virginia 20176
703-779-8229
703-991-9178 (fax)
Counsel for Defendant

CERTIFICATE OF SERVICE

      I hereby certify that on April 9, 2008, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will then send a notification of such filing (NEF) to the following:

Ronald Sharpe, Esq.
Assistant United States Attorney
United States Attorney's Office
555 4th Street, NW
Washington, DC 20530

/s/ Victoria Toensing
Victoria Toensing (DC Bar #304980)
diGENOVA & TOENSING, LLP
1776 K Street, N.W., Suite 737
Washington, D.C. 20006
(202) 289-7701
(202) 289-7706 (fax)
Counsel for Defendant