UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES ) | |
| ) | |
| v. ) | Crim. No. 1:07-cr-00149-RCL |
| ) | |
| FARZAD DARUI, ) | |
| ) | |
| Defendant. ) | |

**DEFENDANT FARZAD DARUI'S REPLY BRIEF IN SUPPORT OF MOTION
TO DISMISS COUNT EIGHT OF THE INDICTMENT FOR LACK OF VENUE**

Defendant Farzad Darui, by counsel, submits the following reply in support of his motion to dismiss Count Eight of the Indictment for lack of venue.

PRELIMINARY STATEMENT

In its attempt to save Count Eight, the government simply ignores the allegations of the Indictment. The specified unlawful activity that allegedly generated the "proceeds" at issue is mail fraud. *See* Indictment, Count Eight, ¶ 34 (identifying the criminally derived property as funds represented by check number 6258 written on a Blue Line checking account, "such property having been proceeds derived from a specified unlawful activity, that is Mail Fraud, in violation of United States Code Section 1341, *as further described in Counts 1 through 5 of this Superseding Indictment*") (emphasis added). In turn, according to the Indictment, the "manner and means" of the mail fraud included the following: "It was further part of the scheme and artifice that defendant FARZAD DARUI deposited the Center's checks directly into his Zaal checking account or into his Blue Line checking account." Indictment, ¶ 26. Thus, according to the government's theory, the scheme underlying the mail fraud was not complete until the altered checks were deposited. In other words, the deposit was part and parcel of the scheme. Under the circumstances, no "proceeds" of the specified unlawful activity existed until deposit of the checks in the Virginia account of a Virginia corporation by a Virginia resident.

ARGUMENT

*1.   Without a completed offense or phase of an offense, there are no proceeds.*

According to the United States Supreme Court, the statutory proscriptions of section 1957 "interdict only the financial transactions … not the anterior criminal conduct that yielded the funds allegedly laundered." *United States v. Cabrales,* 524 U.S. 1, 7 (1998) (affirming dismissal of money laundering counts for improper venue). *See also United States v. Adefehinti*, 510 F.3d 319, 324 (D.C. Cir. 2007) (distinguishing, in section 1956 case, transactions *in* proceeds (which constitutes money laundering) from transactions that *create* proceeds (which does not)). Moreover,

> Money laundering is an offense to be punished separately from an underlying criminal offense. *United States v. Edgmon*, 952 F.2d 1206, 1213 (10th Cir. 1991) (finding that Congress intended money laundering and other specified unlawful activity to be distinct offenses punished separately). The main issue in a money laundering charge, therefore, is determining when the predicate crime becomes a "completed offense" after which money laundering can occur. *United States v. Kennedy*, 64 F.3d 1465, 1477-78 (10th Cir. 1995).

*United States v. Christo*, 129 F.3d 578, 579-580 (11th Cir. 1997) (reversing money laundering convictions in context of check kiting scheme where government failed to prove a monetary transaction that was separate from and in addition to the underlying criminal activity). As the Court explained in *Christo*:

> The check kite did not deprive the bank of anything, nor did [defendant] Maulden unlawfully obtain something from the bank, until Bay Bank disgorged its funds by the payment of the check to SouthTrust Bank. Thus, the withdrawal of funds charged as money laundering was one and the same as the underlying criminal activity of bank fraud and misapplication of bank funds.

*Id.* at 580. Justice Department guidance to its attorneys recognizes as much:

> Sections 1956 and 1957 both require that the property involved in the money laundering transaction be the *proceeds* of specified unlawful activity at the time that the transaction occurs. The statute does not define when property becomes "proceeds," but the context implies that the property will have been derived from an

>already completed offense, or a completed phase of an ongoing offense, before it is laundered.

United States Attorneys' Manual, § 9-105.330 (emphasis in original).

And despite the laundry list of cases cited by the government, a close examination of those cases reveals important distinctions that the government neglects to mention. For example, in *United States v. Mankarious*, the checks at issue were not the fraudulently obtained checks first deposited into the accounts at issue. *See United States v. Mankarious*, 151 F.3d 694 (7th Cir. 1998). In the course of discussing the issue, the Court recognized that to constitute money laundering, it was necessary that "the predicate offense has produced proceeds in transactions distinct from those transactions allegedly constituting money laundering." *Id.* at 706. Because the money laundering counts focused on later conduct in the form of kickbacks, the Court affirmed those convictions "without directly answering the question of whether a check (or another kind of personal property) could constitute 'proceeds' under §1956(a)(1)(B)(i)." *Id.* at 707. Thus the government's statement that the Court "assumed that a check constitutes proceeds before it is cashed" is not accurate.

Likewise, *United States v. Hemmingson*, 157 F.3d 347 (5th Cir. 1998), is not on point. There, the defendants conspired to have a holding company of which Hemmingson was president issue a legitimate check to a co-defendant for legal services that both knew would not be performed. *Id.* In other words, unlike the allegations of the Indictment here, the check was properly drawn on the corporation's account but the purpose for the transaction was fraudulent. Moreover, *Hemmingson* was not a prosecution for mail fraud.

The government's reliance on *United States v. Akintobi*, 159 F.3d 401 (9th Cir. 1998), is also misplaced. There, the defendants used credit cards stolen from the mails to make purchases and cash advances up to the limits of the cards and then used the cards and other credit information

3

(also illegally obtained) to open bank accounts in the consumers' names. They then used the fraudulently obtained checks to pay down the credit card balances, taking advantage of the credit card issuers' policy of immediately crediting the credit card accounts without waiting for the checks to clear. The defendants would then immediately draw down on the credit cards before the checks were dishonored. It was in this context that the checks (termed "booster checks" for their ability to extend the bank fraud) had value. Not surprisingly, the Court ultimately concluded on those facts that materials stolen from the mail were the proceeds of mail theft and checks obtained from bank fraud (which had immediate value due to the credit card issuers' account terms) were the proceeds of that fraud. *Id.* at 404.

And *United States v. Ross,* 210 F.3d 916 (8th Cir. 2000), simply does not say what the government asserts. There, the defendant argued on appeal that the funds actually deposited into the account in question were not proceeds and that the mere deposit of the funds did not constitute the "use of proceeds to 'promote' the 'carrying on' of illegal activity under §1956(a)(1)(A)(i)." *Id.* at 920. The Court rejected this claim, noting that the continuing operation of the sham business (named Consortium) was funded almost exclusively from fraudulently obtained funds:

> The evidence showed these funds were deposited into Consortium's business account and thereafter checks were written on the business account to partially fund another loan, fund employee travel to Luxembourg in order to establish bank accounts abroad to conceal assets from the United States, and to pay Consortium's rent and overhead to maintain its appearance of validity throughout the scheme.
> \*    \*    \*
> From this evidence, a jury could reasonably find that the deposited funds were the proceeds of wire fraud and that Ross thereafter used the deposited proceeds to sustain and promote the illegal scheme in violation of § 1956(a)(1).

*Id.* at 921. Counsel is unable to locate any statement in this case, as claimed by the government, that a "victim's check is SUA proceeds." Government Brief in Opposition [Doc. # 60] at 4.

*United States v. Sutera*, 933 F.2d 1068 (9th Cir. 1991) says nothing about the issue before this Court. In *Sutera*, the defendant was charged with laundering funds by depositing into his bank account checks received from another person who was involved in gambling activities. Sutera then used these funds for personal and gambling expenses. Thus the proceeds of the completed underlying predicate offense, namely the initial gambling activity, were transferred from one person's bank account to another by check. In short, there were *already* proceeds in the form of tainted cash deposited into account number one before the checks drawn on that account were deposited into account number two. *Sutera* is of no assistance at all to the Court.

The government's citation to *United States v. Montoya,* 945 F.2d 1068 (9th Cir. 1991), also misses the boat. Montoya was a California state senator convicted of various offenses, including money laundering under section 1956, arising from his receipt of a bribe. *See id.* The laundering was the deposit of a $3,000 check representing a bribe (in actuality, it was paid as part of a sting operation). *See id.* On appeal, he contended that the deposit of the check did not "promote the carrying on of specified unlawful activity as required under section 1956(a)(1)(A)(i)." *See id.* at 1076. The reason, according to Montoya, was that the specified unlawful activity (the bribe) had already been completed when he received the check from the FBI agent so there was nothing more to promote. *See id.* The Court disagreed:

> [W]e agree with the Government that Montoya *could not have made use of the funds without depositing the check*. Moreover, depositing the check provided an opportunity for Montoya to carry out the illegal bribery by characterizing the funds as a legitimate honorarium.

*Id.* (emphasis added). Thus the issue in *Montoya* was not proceeds at all. It was whether *depositing the check* constituted money laundering. Although decided under section 1956, applying that reasoning here would lead to the conclusion that the *locus delicti* of Count Eight was Virginia.

The government also mischaracterizes the holding of *United States v. Lomow,* 266 F.3d 1013 (9th Cir. 2001). Lomow pled guilty to money laundering and conspiracy. He then appealed, challenging, among other things, the factual basis for the plea. Lomow operated a disposal service (OMDS) that contracted to perform services for a sanitary district. *Id.* at 1016. The rates for those services were set by allowing OMDS a certain amount of profit, as calculated from its financial statements. But OMDS overstated expenses (by paying sham companies for non-existent expenses) and understated revenues (by diverting revenues from other customers to non-OMDS bank accounts), thereby effectively raising its rates to achieve the contracted profit margin. *Id.* On appeal, Lomow complained that the money laundering was not a separate financial transaction from the specified unlawful activity, namely, mail fraud. *Id.* at 1018. The Court, consistent with *United States v. Estacio*, 64 F.3d 477 (9th Cir. 1995), accepted the premise that a separate transaction was required, but simply rejected its application to these facts, noting that the receipt of off-the-books checks satisfied that requirement.

The remaining cases are distinguishable for one simple reason: as noted above, the Indictment here specifically includes the act of depositing the checks into the Virginia accounts as part of the mail fraud. *See* Indictment, ¶ 26. Thus the fraud alleged here was not complete (and therefore there were no proceeds) until those deposits were made. *See id.* Moreover, a forged check cannot constitute proceeds as a matter of law because it is a nullity until such time as it is honored by a depositary bank—here, after it was deposited. *See* D.C. Code §28:3-403(a) (providing as a matter of law that an unauthorized signature on a negotiable instrument is ineffective).

Finally, the government's analysis ignores the rule in this Circuit, and generally, that requires a restrictive construction of venue provisions:

6

> "[I]f an enactment of Congress equally permits the underlying spirit of the constitutional concern for trial in the vicinage to be respected rather than disrespected, construction should go in the direction of constitutional policy even though not commanded by it."

*United States v. Morgan*, 393 F.3d 192, 201 (D.C. Cir. 2004) (quoting *United States v. Johnson*, 323 U.S. 273, 276 (1944)).

## CONCLUSION

For the reasons stated above and those that may be stated at any hearing on this motion, the Court should dismiss Count Eight of the Indictment in order to honor the constitutional right to trial in a proper venue.

FARZAD DARUI

By: /s/ Victoria Toensing
Victoria Toensing (DC Bar #304980)
Joseph diGenova
Brady Toensing
diGENOVA & TOENSING, LLP
1776 K Street, N.W., Suite 737
Washington, D.C. 20006
(202) 289-7701
(202) 289-7706 (fax)

By: /s/ Aaron S. Book
Aaron S. Book (DC Bar # 490815)
Steven T. Webster (admitted *pro hac vice*)
WEBSTER BOOK LLP
1 North King Street
Leesburg, Virginia 20176
703-779-8229
703-991-9178 (fax)
*Counsel for Defendant*

7

CERTIFICATE OF SERVICE

       I hereby certify that on April 9, 2008, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will then send a notification of such filing (NEF) to the following:

Ronald Sharpe, Esquire
Tejpal Chawla, Esquire
Assistant United States Attorneys
United States Attorney's Office
555 4th Street, NW
Washington, DC 20530

/s/ Aaron S. Book
Aaron S. Book