UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | Crim. No. 07-149 (RCL) |
| | : | |
| FARZAD DARUI | : | |
| | : | |
| Defendant | : | |
| _____ | : | |

**GOVERNMENT'S REPLY TO DEFENDANT FARZAD DARUI'S BRIEF IN
OPPOSITION TO GOVERNMENT'S MOTION IN LIMINE**

The United States of America, through its attorney, the United States Attorney for the District of Columbia, respectfully files this Reply to the Defendant's Brief in Opposition to the Government's Motion in Limine. As discussed below, the defendant's filing concedes the central points of the government's motion, (1) that the defense is seeking to inject extrinsic and prejudicial evidence that relates to collateral matters, and (2) that the alternative procedure proposed by the Government, which prevents examination on certain matters until the defense properly raises the matters through admissible evidence in its own case in chief, is appropriate in this case.

**I.  Defendant's Arguments Concede Inadmissibility of Numerous Arguments and Fail to Acknowledge This Court's Ability to Limit Cross Examination and Argument**

While the defendant's motion parrots the general law about the constitutional underpinnings of the right to confrontation, it simply avoids discussing – or even citing– FRE 608(b), 610, 611, or any of the long litany of cases cited in the government's motion in limine that sustain the court's obligation to control the proper presentation of admissible evidence and protect the jury verdict from unfair prejudice, confusion, and extrinsic evidence.  The

1

government does not repeat that legal summary here, but merely points out the law has not changed.

    **A.**    **The Defense Has Conceded It Sought the Introduction of Inadmissible Material**

The defense has completely failed in its opposition to address a number of subject areas raised in the government's motion in limine. It has done so knowingly, and intentionally conceded these topic areas as irrelevant trial issues. With regard to the "Historical and Political Issues Relating to the Middle East," the defense has not taken issue with the government's motion to limit evidence or testimony regarding the following:

- Akbar Tabatabai- a murder victim in 1980;
- David Belfield- alleged Tabatabai murderer;
- Iranian revolution of 1980 and Ayatollah Komeneini;
- the Iran Freedom Foundation (IFF) and similar movements;
- various civil disturbances, protests, and removal of said protestors at or involving the D.C Islamic Center or the IFF, including, but not limited to, subsequent prosecutions for unlawful entry;
- Robert Levinson;
- Said Ramadan;
- Hani Ramadan;
- Ali Al-Timimi;
- Amar al-Bayoumi;
- Osama Basnan;
- Osama bin-Landen, and the attacks of September 11, 2001;
- requests from the U.S. State Department to the Islamic Center for information about its activities made after September 11, 2001;
- Muslim World League; and
- the emergence and spread of Wahhabist theology.

Gov. Mot. In Limine at 5-6. Nor has it questioned the government's argument as to the irrelevancy of questions directed to "the religious opinions of various persons who may have visited or worked at the Islamic Center, including their views on: (a) a women's right to pray with men, (b) the role of women in society, (c) polygamy and (d) Wahhabism and radical

Islam."[1]  Id. at 7.

Importantly, it appears that the defendant has also abandoned his core argument about an international conspiracy, headed by the Kingdom of Saudi Arabia, to alter the checks, and that:

> any check he [Darui] cashed was originally made out to Blue Line or Zaal and that any other check with the same amount, number and date – but different payee – is the result of alteration by Khouj or the Saudi Embassy. It appears that copies of these bogus altered checks were provided by the Saudi Embassy in a form different from how Darui prepared finance information for Khouj to provide the Embassy.

Id. at 14-15 (quoting Def. Reply Brief in Sup. of Mot. For Bill of Particulars at 2, n.1).  Instead, the defendant now claims that the alterations in the checks were intentional, and due to direction given by Dr. Khouj to the defendant "to 'authorize' extra payments to vendors" in order to cover the true destination of the payments to the defendant.  Def. Brief in Opp. to Gov. Mot. In Limine at 2.[2]  This being the case, the Court should preclude the defense from making any argument about a Saudi-led conspiracy against the defendant, or that the records of the Islamic Center and the Royal Embassy of Saudi Arabia, which contain the copies of the pre-altered checks, have been altered in any way by the embassy or the Islamic Center.  This is particularly appropriate

---

[1] The only exception is that the defense still claims that it can cross examine Dr. Khouj relative to his religious beliefs and views related to polygamy.  However, the defendant cannot escape the clear language and intent of FRE 610: this is particularly true because it has acknowledged it wishes to examine Dr. Khouj on his religious beliefs solely to attack his credibility and attack his religion.  See Def. Brief in Opp. To Gov. Mot. In Limine at 11 (""It is relevant that Islam allows multiple 'marriages' . . . .  If jury is not told . . . it may not believe [it] . . . because polygamy is against U.S. law and contrary to most American religions").  The government rejects the defense suggestion that Islam is not an "American" religion.

[2] In abandoning this international conspiracy, the defendant has also put himself in the awkward position of having changed his story. He first argued that any copies of checks to any vendors other than Blue Line Travel and Zaal, Inc. were all altered by Dr. Khouj or the Saudis, but he now claims that those same copies were not altered.  He now claims that after the copies were sent to the Saudi embassy, the checks were intentionally altered by Darui after the fact, on the authority of Dr. Khouj, to deceive the Royal Embassy of Saudi Arabia.

because the defense has no basis to question the validity of these documents under FRE 803(6), 901(11), or 1003 (use of duplicates).

      **B.    Defense Must Present Affirmative Evidence in Its Case-in-Chief Before Being Permitted to Inquire About Potentially Prejudicial Matters**

The defense has also failed to rebut or contest the government's proposed procedure for cross examination on certain prejudicial matters. The government thus believes the defendant recognizes that this Court can, and should, limit the defense's cross-examination of government witnesses on a number of matters until it can establish the proper foundation for the questions by presenting competent evidence supporting these questions in its own case in chief. See, e.g., United States v. Lin, 101 F.3d 760 (D.C. Cir. 1996) (court can limit cross-examination on prejudicial matters until the defense can make proper foundation in its case in chief).

Here, the defendant's efforts to cross examine Dr. Khouj and government witnesses about Dr. Khouj's alleged other "wives," and his suggestion that Dr. Khouj authorized the defendant to alter checks to himself, in part, to repay Darui for paying off informants, fall into this category.[3] The alleged "wives" issue has already been discussed in the government's initial motion, but the specificity of the defendant's informant claim is new (and unfounded). The defense states in its motion that a number of the checks alleged in the indictment were really meant to pay informants for the Islamic Center, and that "Khouj was aware of these

---

[3] The government does not object to the defense asking Dr. Khouj on direct examination, without additional evidence, whether the checks at issue in this fraud were authorized by Dr. Khouj as reimbursement to Darui for housing specific individuals. However, any mention or suggestion that Dr. Khouj, a married Imam, engaged in polygamy, or had an intimate, romantic, or nefarious relationship with Ms. Estrada or Ms. Zouhri (or any other woman), must first be established by affirmative evidence because of its significant likelihood of undue prejudice without the defense having established a basis in its case in chief.

'intelligence' payments as they were usually made via an extra paycheck to certain employees and the cash given to the information provider." Def. Brief in Opp. to Gov. Mot. In Limine at 3. Importantly, however, the defendant has not claimed that Dr. Khouj authorized: (1) any reimbursement to the defendant for these costs; (2) the defendant to deposit checks made out to other center employee's into Darui's corporate account; or (3) lie about the payments in the Center's financial submissions to the Royal Embassy of Saudi Arabia. Without this proof, the defense cannot claim the informant payments are relevant to this case.

Even if the defense had made a proper claim, the naked allegation that Dr. Khouj, as Imam of the Islamic Center (where numerous foreign diplomats pray and attend services) permitted defendant Darui to pay for the secret surveillance of his own congregation – without any proof – could greatly inflame and prejudice the jury in so far as it suggests that Dr. Khouj may have been attempting to violate the religious trust and privacy of those who prayed at the mosque.[4] Not only are these allegations unduly prejudicial, but the defense has no legitimate basis to ask questions on this topic outside of the defendant's own representations. As discussed in the cases cited in the government's initial motion, where, as here, there is a significant risk of undue prejudice and limited relevance, courts in this district have consistently limited cross examination until defendants can prove up their allegations in their own case in chief. Gov. Mot. In Limine at 4-5, 16-17.[5]

---

[4] Despite the serious nature of this allegation, the defense has not yet identified to the government, despite several discovery requests, a single informant whom the defendant claims he actually paid for information.

[5] Given that the defense will be able to ask any and all questions it wishes on these subject matters, assuming it can establish relevance and present affirmative evidence on point to these claims, the defendant will not suffer any prejudice from the use of this procedure.

5

**C.     Defense Ignores Rule 608(b) and the Limits of Extrinsic Evidence**

The defense's filing also does not mention or even discuss this Court's obligations under FRE 608(b) to limit the introduction of extrinsic and immaterial evidence on collateral matters. This complete disregard for this fundamental rule of evidence demonstrates the defense's propensity to run afoul of the rule when given the opportunity. For example, the defense makes much out of several alleged inconsistent statements by Dr. Khouj. The government obviously will not object to cross examination of Dr. Khouj about material inconsistencies (assuming there is a factual basis for the question), but this does not mean, however, that the defense can prove up any inconsistencies or alleged false statements on immaterial items by extrinsic evidence in violation of FRE 608(b). The government objects to this defense effort and respectfully asks the court to recognize this proper evidentiary limitation at trial.

**II.     Other Defense's Arguments That Relate to Inadmissible Arguments**

Without rehashing the issues in the initial motion, the government wishes to address a few of the categories of immaterial and inadmissible evidence that the defense has mentioned in its opposition. Interestingly, the defense has now asserted that its goal in cross examining Khouj and attempting to bring in the evidence identified by the government is relevant **solely** to: 1) attack Dr. Khouj's credibility, and 2) show defendant Darui's state of mind. See Def. Brief in Opp. To Gov. Mot. In Limine at 4 (claiming the defendant's alleged "reasons and manner" for the payments is "not solely to attack Khouj's credibility" but that Darui does not have guilty "*mens rea*").[6] The government will address each of these topic areas through this asserted lens

---

[6] The defense asserts that it can cross examine witnesses on prior bad acts based upon FRE 404(b), citing United States v. Stephans, 365 F.3d 967, 975 (11th Cir. 2004). This reliance is misplaced, as Stephans had to with the case of a government cooperator who sold drugs, and

of relevance.

### A.    Testimony Relating to Dr. Khouj's "Marriage" to Another Woman

The defense has argued that it should be able to call a witness to rebut Dr. Khouj's claim that he was not married or romantically involved with Ms. Estrada or Ms. Zouhri. Specifically, in several motions, the defendant has claimed an unidentified witness will testify it was present when Dr. Khouj married an unknown woman ("Woman X"), who is not Ms. Estrada or Ms. Zouhri. This witness has no relevant testimony to offer and should be rejected for several reasons.

First, the testimony is irrelevant: the logic tree simply does not work. According to the defendant, if Dr. Khouj denies he married Woman Y (Estrada or Zouri), it would be demonstrably more likely that he actually married Woman Y if it can be shown that Dr. Khouj married a different woman, Woman X. There is no logical connection between marriages to Woman X and Woman Y, just as it does not make it any more likely that Dr. Khouj married Woman Y simply because he is married to his wife in Saudi Arabia (Woman A).

Second, even assuming the defendant's claims, this testimony is extrinsic to the question of whether the checks at issue were repayments to the defendant, approved by Dr. Khouj, for debts the defendant incurred for his care of Ms. Estrada or Ms. Zouhri. As discussed above, FRE 608(b) clearly forbids this.

Third, there is no allegation that this witness' testimony relates to the defendant's state of

---

the defense's argument was that the drugs that the cooperator gave the government could have been from his drug dealing. There is no such criminal or bad acts identified against any government witness in this case, and the defendant has not established how any of the issues it raises would qualify for admissibility under the FRE 404(b) requirements.

mind in committing these offenses. The defendant has not suggested that he ever knew this witness' information at the time, or that he relied upon it. Moreover, if, as the defendant claims, Dr. Khouj told the defendant that Ms. Estrada and Ms. Zouri were his "wives," there is no reason why the identity of Woman X, who presumably Dr. Khouj was providing for on his own, would impact the defendant's state of mind.

### B. Islamic Center Employees Prior to 2000

In response to the governments specific motion in limine, the defense merely asserts that the termination of an employee before 2000 is relevant to the defense to show that Dr. Khouj and the Saudi's controlled the money. Id. at 13. The simple reality is that the defendant cannot weave this argument into any of his defenses. It is not relevant to his allegation that Dr. Khouj was repaying the defendant for his "wives," which began in 2000. Nor is it relevant to his allegation that the checks he cashed were actually payoffs to informants. It also has nothing to do with the defendant's state of mind as it related to Dr. Khouj's repayment of these debts. To the extent that the defense would like to present this evidence to attack Dr. Khouj's credibility, it would also be immaterial extrinsic evidence, and inadmissible.

### C. Board of Directors Meetings and Bylaws

The defense also argues that issues related to the Islamic Center's Board of Directors and the Islamic Center's bylaws may be admissible. Just as above, however, these are irrelevant. It does not support his allegation that Dr. Khouj was repaying the defendant for his "wives" which began in 2000, or that the checks the defendant cashed were actually payoffs to informants. It also has nothing to do with the defendant's state of mind as it related to repayment of these debts. To the extent that the defense would like to present this evidence to attack Dr. Khouj's

credibility, it would also be immaterial extrinsic evidence, and inadmissible.

### D. Bookstore Taxes

Lastly, the defendant argues that whether the Islamic Center paid sales taxes on books sold at the Islamic Center is a relevant issue. Again, the defendant is wrong in several ways. As a preliminary matter, it appears that the defendant is wrong as a matter of law, as it is unlikely that the bookstore, as an entity owned by a recognized religious federal non-profit, had a legal obligation to pay D.C. sales taxes on its sale of religious books. Even if it were not the case, the defendant's logic again breaks down. The defendant's asserted relevance is that if: 1) the *Islamic Center* failed to pay taxes for the Bookstore (which was the defendant's job), 2) it makes it more likely that *Dr. Khouj* did not pay his own taxes, 3) which it makes it more likely that Dr. Khouj did not pay taxes on the Special Account , 4) which (somehow) makes it relevant to whether Dr. Khouj owned the Special Account, not the Islamic Center. This asserted relevance is far too attenuated to be of much use, and it clearly had nothing to do with the defendant's state of mind. In addition, its probity is clearly outweighed by its prejudice. Again, even if this fact was relevant, and it went to Dr. Khouj's credibility (as opposed to the defendant), it is extrinsic and immaterial evidence that is inadmissible.

**III.     Conclusion**

For the reasons stated here, and any that may be raised orally before the Court, the government requests that the defense be precluded from making the arguments and defenses referenced in this Motion.

                                              Respectfully submitted,

                                              UNITED STATES ATTORNEY

                                  By:     _____/s/_____
                                              Tejpal S. Chawla, D.C. Bar No. 464012
                                              Ronald W. Sharpe, D.C. Bar. No. 434575
                                              Assistant United States Attorneys
                                              555 4th Street, NW
                                              Washington, D.C. 20530
                                              (202) 353-2442 (Chawla)
                                              (202) 353-9640 (Sharpe)