UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | Crim. No. 07-149 (RCL) |
| | : | |
| FARZAD DARUI | : | |
| | : | |
| Defendant | : | |
| | : | |

**GOVERNMENT'S OPPOSITION TO DEFENDANT DARUI'S MOTION TO
COMPEL DISCLOSURE OF EVIDENCE REGARDING INTERVIEWS
CONDUCTED BY SPECIAL AGENT JEFFREY HARRY**

The United States of America, through its attorney, the United States Attorney for the District of Columbia, respectfully opposes Defendant's Motion to Compel Disclosure of Evidence Regarding Interviews Conducted by Special Agent Jeffrey Harry. As is more fully discussed below, there is no basis for the defendant's motion, and the government asks this Court to deny the motion.

**I.   The Requested Reports Do Not Contain Any *Brady* or Discoverable Materials Under Rule 16**

The defense's motion requests reports from meetings between Darui and an FBI agent with whom he met twice in 2006 (March 15, 2006 and July 13, 2006), before the government or the Islamic Center discovered the defendant's fraud in this case in August 2006. The government has reviewed reports requested by the defense and has concluded there is no *Brady*, *Giglio* or discoverable statements in these materials. As discussed below, these meetings are irrelevant, and the government does not intend to use any of statements made by the defendant during any of these meetings at trial.

1

**A.    Materials Do Not Contain Exculpatory or Relevant Information**

Government counsel has reviewed the reports in question from 2006, and can confirm that they do not contain any exculpatory information, or other information, or suggestion, that Darui paid any persons for information, or that Dr. Khouj had multiple wives or mistresses that Darui was housing. The materials also do not mention any alleged fraud, discuss any payments made by Darui or the Islamic Center to employees or vendors, or refer to any inconsistent statements made by any intended government witness. In short, the meeting reports, which predate discovery of the fraud scheme, are entirely irrelevant to the Indictment and the defenses that have been asserted by the defendant this case. Furthermore, they do not contain exculpatory *Brady* information.[1]

Even if the reports did mention Darui paid informants– which they do not – it is well-established that a defendant has no claim under *Brady* for information of which he is already aware. See, e.g., United States v. Graham, 484 F.3d 413, 417 (6th Cir. 2007), cert. denied, 2008 WL 754345 (Mar. 24, 2008) ("*Brady* is only concerned with cases in which the government possesses information which the defendant does not" and recognizing "there is no *Brady* violation if the defendant knew or should have known the essential facts permitting him to take advantage of the information in question, or if the information was available to him from another

---

[1] The defense has speculated that if Darui told Special Agent Harry in 2006 that he believed the "Saudis were attempting to take over The Center" that this "evidence would support Darui's defense that he collected evidence of radicals' plans regarding The Center." Def. Mot. at 2. Even assuming this were true, this fact is far removed from the defense assertion, which is that the altered checks deposited into Darui's accounts were repayments authorized by Dr. Khouj for Darui's payments to informants for many years prior to 2000. Just because someone talks to another does not mean that the information shared by either person was derived from paid sources. As discussed, the government has no information that Darui ever paid anyone for information, and the defense has not been able to identify a single "informant" whom Darui paid, despite the government's repeated discovery requests.

source" (quotations omitted)); United States v. Paulino, 445 F.3d 211, 225 (2nd Cir. 2006) ("As this court has frequently recognized, 'evidence is not considered to be suppressed within the meaning of *Brady* doctrine if the defendant or his attorney either knew, or should have known, of the essential facts permitting him to take advantage of that evidence'" (citations omitted)). Here, the defendant is arguing for the disclosure of his own inadmissible hearsay statements of which he is already aware.

### B. These Statements Are Not Discoverable Under Rule 16

The meetings between Special Agent Harry and the Darui were not recorded or transcribed, but certain reports contain some of the defendant's oral statements. Because Rule 16(a)(1)(A) only allows discovery of a defendant's oral statements if the government plans to use the statements at trial, and Rule 16(a)(1)(B)(I) only applies to recorded or written statements, the reports are only discoverable if they fall under Rule 16(a)(1)(B)(ii). Rule 16(a)(1)(B)(ii) provides for disclosure

> the portion of any written record containing the substance of any *relevant* oral statement made before or after arrest if the defendant made the statement *in response to interrogation* by a person the defendant knew was a government agent.

Id. (emphasis added); United States v. Small, 74 F.3d 1276, 1284 (D.C. Cir. 1996), cert. denied, 517 U.S. 1229 (1996) (Rule 16 provides discovery for "a relevant written record of a defendant's oral statement in response to government interrogation"). The reports fail to meet both the relevance and interrogation requirements.

First, if the statements are not relevant to the indictment they are not discoverable. See, e.g., United States v. Disston, 612 F.2d 1035, 1037 (7th Cir. 1980) (finding statements only discoverable if they are "relevant to the indictment"); see also United States v. Yunis, 867 F.2d

617, 622 (D.C. Cir. 1989) (recognizing relevancy requirement in Rule 16). If the rule were otherwise, every defendant, in every case, would have the absolute right to request the government to produce any oral statement he ever made to the government, even in other cases, investigations, or other contexts (i.e. tax records, health records, and census data) that may have been incorporated into a written record. As discussed above, the oral statements at issue here are not relevant to the Indictment: Darui did not discuss or mention the fraud (which at the time had not been discovered), any payments he made to any person, Dr. Khouj's alleged "wives" or mistresses, or any Islamic Center expenditures or checks. Under FRE Rule 401, the defendant's statements are not relevant as they do not have "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."

Second, even if the statements had minimal relevance, the oral statements made to Special Agent Harry were not made "in response to interrogation" of the defendant.[2] Rule 16(a)(1)(B)(ii). While Rule 16 does not specifically define interrogation, the word "interrogation" is a term of art, well-understood in criminal procedure (particularly in the Fifth Amendment/ *Miranda* context). The Supreme Court has repeatedly held that the term interrogation refers to "express questioning [and] any words or actions on the part of the police . . . that the police should know are *reasonably likely to elicit an incriminating response from the suspect*," Rhode Island v. Innis, 446 U.S. 291, 301 (1980) (emphasis added), and the D.C. Circuit has applied this definition in Rule 16 cases. See Small, 74 F.3d at 1285, n.2 (quoting

---

[2] Indeed, the Advisory Committee Notes indicate that interrogation is the touchstone for discovery, as the "change recognizes that the defendant has some proprietary interest in statements made during interrogation . . . ." *Advisory Committee Notes to Rule 16, 1991 Amendment.*

Innis and rejecting alleged Rule 16 discovery violation regarding defendant's oral statement where it was "far from clear" that the police statement was "reasonably likely to elicit an incriminating response").³ Under this definition, interrogation does not include statements made to law enforcement in response to administrative questions asked by police that "were not likely to be perceived as calling for any incriminating response." See Pennsylvania v. Muniz, 496 U.S. 582, 604-05 (1990); cf. United States v. Hinckley, 672 F.2d 115, 123-24 (D.C. Cir. 1982) (questions during booking were outside exception because interrogation was intended to elicit incriminating information). Courts interpreting the Rule 16(a) requirement of interrogation have adopted this view and reached similar conclusions. See, e.g., United States v. Scott, 223 F.3d 208, 210 (3rd Cir. 2000) (spontaneous statement made post-arrest to law enforcement was not interrogation discoverable under Rule 16); United States v. Reeves, 730 F.2d 1189, 1193 (5th Cir. 1984) (statement made to law enforcement after arrest that was not made in response to interrogation was not discoverable under Rule 16); United States v. Safavian, 233 F.R.D. 12, 14 (D.D.C. 2005) (recognizing interrogation requirement, and holding defense not entitled to defendant statements to government employees who interviewed the defendant before criminal investigations began "unless those questions were asked in conjunction with or as an adjunct to the OIG or FBI investigations"); United States v. NYNEX, 781 F. Supp. 19, 24 (D.D.C. 1991) (where defendant initiated voluntary telephone conversation, statements made to law enforcement could not constitute interrogation, and were not discoverable).

Under almost any definition, neither of the meetings between Darui and Special Agent

---

³ The Court in Innis stated by "incriminating response' we refer to any response-whether inculpatory or exculpatory-that the prosecution may seek to introduce at trial." 446 U.S. at 301, n.5.

Harry can be considered interrogation. The meetings were not designed or intended to elicit any incriminating responses from Darui, as the crime remained undiscovered and he was not a suspect. There was also nothing foreseeable about this criminal case: the government investigation related to the Indictment did not open until after the meetings, and Special Agent Harry was never assigned to work on this investigation. Because the meetings were not held in conjunction with this criminal investigation, they cannot be interrogations subject to discovery in this trial. See Safavian, 233 F.R.D. at 14 (interviews conducted with government agents before criminal investigation began were not interrogation).

  Morever, both meetings were entirely voluntarily and informal. In the first meeting, Special Agent Harry wished to meet solely with Dr. Khouj, and Darui insisted on being present with them during this discussion, a point that the defense acknowledges. See Def. Mot. at 2 (agents met Dr. Khouj and that "Darui was present for this meeting"). As in the NYNEX case, since Darui included himself voluntarily into a conversation through his own volition, it hardly can be considered interrogation. See NYNEX, 781 F. Supp. at 24. In the second meeting, Darui invited Special Agent Harry to meet with him at the Islamic Center, but they later agreed to meet over a meal at a public restaurant. See Def. Mot. at 2. This meeting was entirely consensual, and government counsel understands that Special Agent Harry paid the entire bill. Again, Darui was not a suspect and the agent was not intending to elicit an incriminating statement to use at a trial against him (and the government is not attempting to do so now). Where there is no attempt, objectively or subjectively, to obtain a statement for use by the government at trial from a suspect, there can be no interrogation. See Innis, 446 U.S. at 301, n.5 ("incriminating response" means "any response-whether inculpatory or exculpatory-that the prosecution may

seek to introduce at trial"). As a result, the defendant is not entitled to discover these oral statements under Rule 16.

## II.             Future Proceedings in This Matter

The government understands that the Court may wish to examine Darui's statements in the reports at issue *in camera*. At present, the FBI has categorized the reports at issue as classified, but government counsel has requested the FBI to reevaluate its classification of these records. Assuming the FBI maintains its classification, the government will be compelled to handle the materials pursuant to the Classified Information and Procedures Act (CIPA), 18 U.S.C.App. III §§ 1-16 (2007). In that case, if the Court requests *in camera* review, the government will file the materials pursuant to CIPA procedures (including the necessary affidavits establishing the classified nature of the materials), and request the Court to order production of such materials only if the defense has shown clear "materiality" of the statements, that being it is admissible and "helpful to the defense of the accused." See, e.g., United States v. Mejia, 448 F.3d 436, 443 (D.C. Cir. 2006), cert. denied, 127 S.Ct. 989 (2007) (quoting Yunis, 867 F.2d at 60-61). As stated above, the defense has not met the base level of relevance in this case, and cannot establish materiality (because, as discussed below, the statements are inadmissible hearsay). Even if the defense could make this showing, and the Court finds the materials discoverable under CIPA, the government may request the Court to allow it to produce the substance of the statements through the use of methods authorized by 18 U.S.C.App. IIII § 4 ("to delete specific items of classified information . . . substitute a summary of the information . . . or to substitute a statement admitting relevant facts").

### III.     Defendant's Statements to FBI Are Inadmissible Evidence

Putting aside the discovery issue, the government recognizes that the defense may seek to call Special Agent Jeffrey Harry to testify at trial.  The government urges this Court to affirmatively prohibit the defense from eliciting statements made by the defendant from any witness, including Special Agent Harry.  In addition to the irrelevancy and classified issues already discussed, the defendant's statements made to other persons are classic inadmissible hearsay when introduced by the defendant, FRE 801, and the only purpose the defense can have in seeking to admit this evidence would be to attempt to bolster the defendant's own testimony through the improper use of prior consistent statements even without proof of inconsistent statements or recent fabrication.  This he cannot do.  See FRE 801(d)(1); United States v. Washington, 106 F.3d 983, 1000-1001 (D.C. Cir.), cert. denied, 522 U.S. 984 (1997) (upholding limits on introduction of prior consistent statements).  This classic defense tactic should be foreclosed now.  The government urges this Court to deny discovery of the reports at issue and make clear that the defendant may not call Special Agent Harry, or any other witness, to testify about the defendant's own statements unless a proper prior inconsistent statement foundation is first established.

## IV.     **CONCLUSION**

For the foregoing reasons, the government believes that the Defense's Motion should be denied, and the defense should be precluded from calling any government agent merely to repeat a defendant's own statements, without the proper foundation.

Respectfully submitted,

JEFFREY A. TAYLOR

UNITED STATES ATTORNEY

By:     _____**/s/**_____
Tejpal S. Chawla, D.C. Bar No. 464012
Ronald W. Sharpe, D.C. Bar. No. 434575
Assistant United States Attorneys
555 4th Street, NW
Washington, D.C. 20530
(202) 353-2442 (Chawla)
(202) 353-9460 (Sharpe)