UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA | ) ) ) | |
| v. | ) ) ) | Criminal No. 07-149 (RCL) |
| FARZAD DARUI, | ) ) ) | |
| Defendant. | ) ) | |

## MEMORANDUM OPINION

Presently before the Court are the following motions by defendant Farzad Darui: (1) Motion [31] in Limine regarding Evidence of Checks Where Mails Not Alleged to Further Described Scheme; (2) Motion [50] to Dismiss, or in the Alternative, Motion in Limine to Preclude Any Evidence or Testimony from Any Representative of the Royal Embassy of Saudi Arabia; and (3) Motion [52] to Dismiss Count Eight of the Indictment for Lack of Venue. Upon consideration of the motions, the oppositions and replies thereto, oral arguments made at a hearing, the applicable law, and the record herein, this Court finds that each of defendant's motions should be DENIED.

## I. BACKGROUND

Defendant Darui is charged in a nine-count Superseding Indictment (the "Indictment") with five counts of mail fraud and causing an act to be done in violation of Title 18, United States Code, sections 1341 and 2, interstate transportation of stolen property and causing an act to be done in violation of Title 18 United States Code, sections 2314 and 2, money laundering and causing an act to be done in violation of 18 United States Code, sections 1957 and 2, and theft in the first degree in violation of Title 22, District of Columbia Code, sections 3211(b)(2) and 3212(a). (*See* Indictment.) The Indictment alleges that defendant knowingly engaged in a

scheme to defraud the Islamic Center (the "Center") and to obtain money and property belonging to the Center by means of false and fraudulent pretenses. (*See id.* at 4, ¶ 11.) Specifically, the government claims that defendant Darui wrote and issued, or caused to be written, issued, or signed, or falsely altered checks written on the Center's various bank accounts, which he used for his personal enrichment. (*See id.* at 4, ¶ 12.) The government further alleges that to conceal the scheme, defendant rented a United States Post Office box in the name of the Center without the knowledge or consent of the Center's director or anyone else at the Center. (*See id.* at 7-8, ¶ 23.)

Defendant now moves to preclude certain evidence and testimony from being presented at trial and to dismiss the case in its entirety or count eight for lack of venue. The Court will address each of defendant's motions in turn.

## II. DISCUSSION

**A.     Evidence of Checks Where Mails not Alleged to Further the Described Scheme**

Defendant has been indicted on five counts of mail fraud. The Indictment alleges that "[i]n approximately February 2002, the mailing information for the Islamic Center Special Account was changed from the Center to a United States Post Office box in Washington, D.C." (*See id.* at 7, ¶ 22.) According to defendant, since counts one through five of the Indictment describe mailings of account statements for the Center's "Special Account" and not its other bank accounts, the only check evidence admissible for mail fraud must be related to the Special Account. (*See* Def.'s Mot. [31] in Limine 2.) Defendant reasons that his alleged use of a P.O. box could only further a scheme to defraud as to the "Special Account" and none other. (*See id.*) Defendant asks this Court to prohibit the government from using evidence from any account other than the Special Account to prove counts one through five.

2

The government counters that "[t]he Indictment alleges that the defendant engaged in a single, but wide ranging criminal scheme" to defraud the Center. (Gov.'s Opp'n to Mot. [31] at 1 (citing Indictment 4, ¶ 11).) This Court agrees. The Indictment plainly alleges that defendant "obtained numerous checks from [the Center], by developing a scheme by which he would write and issue, or cause to be written, signed and issued, or falsely alter checks written on *the Center's various bank accounts*." (Superseding Indictment 4, ¶ 12.) The government's chosen counts charging "the *execution* of the scheme . . . does not reduce the boundaries of the *scheme*, which the statute requires the government to prove." *United States v. Pless*, 79 F.3d 1217, 1220 (D.C. Cir. 1996). The government is not "artificially limited to presenting to the jury only that portion of the scheme that directly related to [the Special Account]." *Id.* And it is not necessary for the government to charge every single act of execution of the scheme in order to prove the whole scheme. *Id.* Accordingly, defendant's motion [31] in limine shall be DENIED.

**B.    Evidence or Testimony from Representatives of the Royal Embassy of Saudi Arabia**

The Indictment asserts that "the Royal Embassy agreed to donate money to the Center by way of semi-monthly checks to reimburse the Center's legitimate operating costs." (Indictment 5, ¶ 14.) The Indictment further asserts that defendant sent semi-monthly expense reports to the Embassy, which relied on their accuracy as the basis for the amount of money it would donate in its semi-monthly monetary donations to the Center. (*See id.*) Defendant argues that "by injecting Saudi intent and accounting procedures into the superseding indictment," the government has triggered the need for defendant to subpoena records and witnesses with personal knowledge of such matters. (Def.'s Mot. [50] in Limine 2 (emphasis in original).) Given defendant's inability under the Vienna Convention on Diplomatic Relations to subpoena

3

foreign nationals, defendant claims that it is "impossible" for him to "procure witnesses and documents necessary for his defense." (*Id.* at 6.) Ostensibly, defendant argues that the government should be precluded from presenting its evidence through "presumably cooperative Saudi Embassy officials" while defendant "is prevented from subpoenaing [the same] persons and documents in support of his defense." (*Id.*)

Defendant's arguments must be rejected for the following reasons. First, the Sixth Amendment provides a right to compulsory process only if the desired witness is within the court's subpoena power. *United States v. Korogodsky*, 4 F. Supp. 2d 262, 268 (S.D.N.Y. 1998) (citing *United States v. Greco*, 298 F.2d 247, 251 (2d Cir. 1962) ("The Sixth Amendment can give the right to compulsory process only where it is within the power of the federal government to provide it")). Second, as of the date of the hearing on defendant's motion, defendant had neither identified any potential witness from the Embassy nor made any inquiry as to whether the Embassy would make certain employees or records available to defendant.[1] That defendant may not compel the attendance of unnamed witnesses and records for whom he has not asked the Embassy to provide does not deprive him of any constitutional right. *See Greco*, 298 F.2d at 251 (finding that defendant was deprived of no constitutional right where he had never asked an unnamed witness to testify on his behalf). Moreover, defendant must make "'some plausible showing of how [the witness'] testimony would have been both material and favorable to his defense.'" *United States v. Dean*, 55 F.3d 640, 662 (D.C. Cir. 1995) (quoting *United States v. Valenzuela-Bernal*, 458 U.S. 858, 867 (1982)). As the government persuasively argues, the

---

[1] Indeed, defendant sent no formal request to the Embassy requesting that it waive immunity to the legal process until April 21, 2008. (*See* Supplement to Def.'s Mot. [50] in Limine, Docket entry [73].)

internal accounting and administrative processes used by the Embassy are not directly relevant to this case, nor does this information show whether defendant took money from the Center. More importantly, defendant has not sufficiently demonstrated that his inability to obtain witnesses or evidence from the Embassy will actually prejudice his ability to mount a defense. *See Dean*, 55 F.3d at 662 ("A witness' testimony is material if its absence actually prejudiced the defendant's ability to mount a defense." (citation omitted)). Indeed, defendant has not identified a single exculpatory witness with personal knowledge at the Embassy whom he wishes to testify.[2] Finally, to the extent that the government calls a representative from the Embassy during its case-in-chief, the defense will have an opportunity to cross-examine that witness. For all of these reasons, defendant's motion [50] in limine shall be DENIED.

## C.  Venue

Defendant moves to dismiss the money laundering count of the Indictment for lack of venue. That count alleges a violation of 18 U.S.C. section 1957.[3] Proper venue for a section 1957 violation is set forth in 18 U.S.C. § 1956(i):

(1) Except as provided in paragraph (2), a prosecution for an offense under this

---

[2] While defendant has recently named four potential witnesses from the Embassy that he wishes to testify, *see* Supplement to Def.'s Mot. [50] in Limine, Docket entry [73] at 2, defendant has not represented that the absence of any of these witnesses will actually prejudice his ability to mount a defense.

[3] Section 1957 provides in relevant part:

Whoever, in any of the circumstances set forth in subsection (d), knowingly engages or attempts to engage in a monetary transaction in criminally derived property that is of a value greater than $10,000 and is derived from specified unlawful activity, shall by punished as provided in subsection (b).

18 U.S.C. § 1957(a).

section or section 1957 may be brought in

(A) any district in which the financial or monetary transaction is conducted; or

(B) any district where a prosecution for the underlying specified unlawful activity could be brought, if the defendant participated in the transfer of the proceeds of the specific unlawful activity from that district to the district where the financial or monetary transaction is conducted.

18 U.S.C. § 1956(i). Here, the Indictment alleges that defendant's withdrawal and transfer of funds by check constitutes a money laundering offense. The check at issue was drawn on the account of a corporation chartered under Virginia law, located in Virginia, and on a Wachovia branch financial account opened and located in Virginia. (*See* Def.'s Mot. [52] in Limine 3.) The government does not challenge that under these circumstances, venue in the District of Columbia is not satisfied under § 1956(i)(1)(A). Rather, the government argues that the defendant's alleged transportation of the stolen proceeds from Washington, D.C. to Virginia satisfy the venue requirement as set forth in § 1956(i)(1)(B). Defendant contends, however, that venue is improper under that provision because there were no proceeds of the alleged fraud until the funds were credited to defendant's bank account in Virginia. This Court must therefore determine whether an uncashed check constitutes proceeds under § 1956(i)(1)(B).

The specified unlawful activity that allegedly generated the "proceeds" at issue in this matter is mail fraud. (*See* Indictment 14, ¶ 34.) The government cites cases where other courts have found that checks obtained by fraud were "proceeds." In *United States v. Hemmingson*, 157 F.3d 347 (5th Cir. 1998), the court rejected a defendant's argument that he could not have engaged in money laundering "because the check had not yet 'attained the status of proceeds' at the time it was transferred." 157 F.3d at 355. The *Hemmingson* court held that the check itself constituted the "proceeds" of the fraud even if it has yet to be cashed. *Id.* Similarly, in *United*

6

*States v. Akintobi*, 159 F.3d 401 (9th Cir. 1998), defendants argued that fraudulently obtained checks could not be proceeds under § 1956 because the checks themselves were worthless. 159 F.3d at 404. Rejecting defendants' argument, the court found that blank checks were the proceeds of defendants' earlier thefts or frauds. *Id.* The court further noted that § 1956 "does not require that the proceeds have intrinsic value." *Id.* In the instant matter, the government persuasively argues that when defendant gained control of the checks in Washington, D.C., those checks were proceeds of his mail fraud scheme to defraud the Center. Moreover, defendant has pointed to no authority which has found that an uncashed, fraudulently obtained check does not constitute proceeds of specified unlawful activity.

This determination, however, does not end the Court's inquiry. Defendant argues that there can be no proceeds until the alleged mail fraud offense is complete. (*See* Def.'s Mot. [52] in Limine 2 (quoting *United States v. Christo*, 129 F.3d 578, 579–80 (11th Cir. 1997) ("The main issue in a money laundering charge . . . is determining when the predicate crime becomes a 'completed offense' after which money laundering can occur.")).) According to the defendant, because the Indictment alleges that "[i]t was further a part of the scheme and artifice that defendant Farzad Darui deposited the Center's checks directly into his Zaal checking account or into his Blue Line checking account," (Indictment 8, ¶ 26), the scheme underlying the mail fraud was not complete until the altered checks were deposited. (*See* Def.'s Reply 1.) Defendant's argument is misplaced. Even if the entire mail fraud scheme was not yet completed at the time defendant obtained the Center's checks, the checks clearly constitute proceeds of a *completed phase* of the ongoing mail fraud offense. *See United States v. Howard*, 271 F. Supp. 2d 79, 84 (D.D.C. 2002) (Walton, J.) ("Criminally derived proceeds are proceeds derived from an already

completed offense, *or a completed phase of an ongoing offense.*" (internal quotations omitted) (emphasis added)). As such, defendant's argument that there were no proceeds until the checks were deposited must be rejected, and defendant's motion [52] to dismiss count eight of the Indictment shall be DENIED.

### III. CONCLUSION

For the reasons discussed herein, defendant's motion [31], [50], and [52] shall be DENIED.

A separate Order shall issue this date.


Signed by Royce C. Lamberth, United States District Judge, on April 24, 2008.