UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES | ) | |
| | ) | |
| v. | ) | Crim. No. 1:07-cr-00149-RCL |
| | ) | |
| FARZAD DARUI, | ) | |
| | ) | |
| Defendant. | ) | |

**DEFENDANT'S MOTION TO
EXCLUDE OR LIMIT GOVERNMENT'S EXPERT TESTIMONY**

Defendant, by counsel, moves to exclude or limit the presentation of expert testimony by

the government for failure to comply with the requirements of Federal Rule of Criminal

Procedure 16(a)(1)(G) regarding disclosure of expert testimony.  The grounds for this motion are

set forth with particularity in the accompanying brief in support.

FARZAD DARUI
By Counsel

_____/S/ Aaron S. Book_____
Aaron S. Book (DC Bar No. 490815)
Steven T. Webster (admitted *pro hac vice*)
Webster Book LLP
1 North King Street
Leesburg, Virginia 20176
703-779-8229
703-991-9178 (fax)
abook@websterbook.com

Victoria Toensing
Joseph diGenova
diGenova & Toensing, LLP
1776 K Street, N.W., Suite 737
Washington, D.C. 20006
(202) 289-7701
(202) 289-7706
*Counsel for Defendant Farzad Darui*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on May 9, 2008, a copy of the foregoing was electronically filed with the Clerk of Court using the CM/ECF system, which will then send a notification of such filing (NEF) to the following:

Ronald W. Sharpe, Esquire
Tejpal S. Chawla, Esquire
Assistant United States Attorney
United States Attorney's Office
555 4th Street, NW
Washington, DC 20530


       /S/ Aaron S. Book
Aaron S. Book (DC Bar No. 490815)
Steven T. Webster (admitted *pro hac vice*)
Webster Book LLP
1 North King Street
Leesburg, Virginia 20176
703-779-8229
703-991-9178 (fax)
abook@websterbook.com

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES | ) |
| | ) |
| v. | ) Crim. No. 1:07-cr-00149-RCL |
| | ) |
| FARZAD DARUI, | ) |
| | ) |
| Defendant. | ) |

**DEFENDANT'S BRIEF IN SUPPORT OF**
**MOTION TO EXCLUDE OR LIMIT GOVERNMENT'S EXPERT TESTIMONY**

Defendant, by counsel, states as follows in support of his motion to exclude or limit the

government's anticipated expert testimony:

Introduction

The government's expert designations fail to comply with Rule 16 of the Federal Rules of

Criminal Procedure.  With the exception of, at most, three properly-designated opinions

(described below), the government's expert designations fail to identify any other opinion the

experts will offer, and, predictably, fail to provide any bases or reasons for the non-disclosed

opinions.  In an attempt to obfuscate the issue, the government identifies a laundry list of

"topics" on which its experts may opine, but it has not informed the defense what opinions the

experts will offer on these topics, or the bases and reasons for these undisclosed opinions, as

required by Rule 16.  The defense is left wholly in the dark, ignorant of what these experts will

say or why they will say it.  As such, it is impossible for the defense to prepare to cross-examine

the government's experts.

Notably, Darui provided the government with a designation of each of his expected

experts, their opinions, and a detailed explanation of the bases and reasons for these opinions.

*See* Exhibit A, attached.  In addition, Darui either attached to the designation the demonstrative

exhibits to which the experts will refer when giving their courtroom presentation or provided a description of such exhibits.[1]

The government intends to offer expert testimony in two areas:  Forensic Document Examination, and Computer Forensic Document Examination.  For the reasons stated below, the Court should exclude most of the testimony of the government's forensic document examiner, Ted Burkes, and all of the testimony of the computer forensic document examiner, Special Agent Kimberly Klaiber.

## 1.    *Forensic Document Examination of Checks.*

The government identified two individuals whom it may call to testify regarding the review of the questioned checks:  Ted Burkes and Marguerite McHenry.[2]  In its December 17, 2007, designation, the government states that these individuals "examined the seized typewriters, typewriter ribbons, original checks and copies of the checks provided to the government by the Royal Embassy of Saudi Arabia . . . ."  Letter from T. Chawla and R. Sharpe to V. Toensing, December 17, 2007 (attached as Exhibit B).  The letter states that either Mr. Burkes or Ms. McHenry will "provide testimony consistent with the findings in the FBI Laboratory Reports (Bates numbered USFBILAB00001-00027) and any additional reports provided by the government."  *Id*.

### A.    **The FBI Laboratory Reports Contain, at Most, Three Opinions.**

The government provided five Reports of Examination ("FBI Lab Reports") relating to examinations of various documents performed by the FBI's Questioned Documents Unit.  The

---

[1] The attachments to Darui's expert designations are not included with this motion.

[2] In a subsequent designation, the government identified only Mr. Burkes as its Forensic Document Examination expert.  Should the government attempt to substitute Ms. McHenry, the identical arguments apply to exclude her testimony as well.

FBI Lab Reports are attached as Exhibits C, D, E, F, and G, respectively, and provide the following information:

- February 26, 2007:  This report identifies which typewritten names (such as Blue Line and Zaal) appear on a typewriter ribbon that was seized from The Islamic Center and the frequency of such appearance.  The report contains a printout of the ribbon, but offers no opinions with respect to the ribbon.

- April 30, 2007:  This report identifies seven checks "drawn on the account of Dr. Abdullah M. Khouj"[3] that the FBI examined, along with an additional typewriter ribbon.  The report identifies various business names that appear on the ribbon, but offers no other opinions.  In fact, the report affirmatively states that "a definite determination could not be made whether the specimen K4 typewriter or printwheel was used to prepare the questioned text as it appears on specimens Q3 through Q9, due to the poor image quality of the questioned specimens."

- December 31, 2007:  This report states that the FBI examined 25 checks (documents Q10 through Q34) as well as 3 check stubs.  The report concludes that through a "torn/cut edge comparison that specimens Q33 through Q35 were at one time a continuous sheet of paper."  The report fails to explain what a "torn/cut edge comparison" is.  The report also states that the typewriting on Q33 through Q35 "appears to have been prepared continuously," but offers no bases or reasons for this pseudo-conclusion.  The report concludes with an opinion that, on

_____

3 Notably, even the FBI experts acknowledge that this account (the "Special Account") is Dr. Khouj's personal account.

two of the checks (Q16 and Q17), some typewritten words in the payee line are "not in alignment with the remaining typewriting on the check."

- July 6, 2007: This report states that a latent fingerprint was recovered from the Typewriter seized from The Islamic Center and that fingerprint was determined to be Farzad Darui's.

- March 7, 2008: This report identifies 33 checks examined by the FBI. Of these, Mr. Burkes identifies six checks where the letters of the payee name are "not in alignment with the remaining typewriting" of the check. The report offers no further opinions regarding the alignment of the letters on the checks or the significance/insignificance of misalignment.

At most, the FBI Lab Reports set forth three opinions: 1) the typewriter ribbons identified in the February 26, 2007, and April 30, 2007, reports contain various business names (Exhibit C); 2) a fingerprint on a typewriter that Darui used was found to be Darui's fingerprint (Exhibit F); and 3) some of the payees on checks examined in the December 31, 2007, and March 7, 2008, FBI Lab Reports contained letters that were "not in alignment" with the remaining text on the checks (Exhibits E and G). To the extent the government attempts to offer opinions beyond the three properly designated in these reports, it should be precluded from doing so.

### B.     The Remainder of the Government's December 17, 2007, Designation Contains No Opinions.

The December 17 letter further states as follows:

In addition, the government would request that the Court permit the testifying FBI Examiner to offer expert opinions concerning the conclusions that may be drawn from the examination conducted on the aforementioned items seized by the FBI and/or items in possession of the government. This would include opinion testimony concerning (1) the correctional features and functions of the seized

4

typewriter(s); (2) the internal consistency of the seized typewriter(s) and documents created by such typewriter(s); (3) examination and comparison of the typewriter fonts and printwheels to documents provided to the government by the Royal Embassy of Saudi Arabia; (4) whether the seized typewriter(s) could produce the type found on certain typewritten documents including the typewritten information on original checks, checkbook payment stubs and copies of the checks provided to the government by the Royal Embassy of Saudi Arabia; (5) examination of the alignment of typewritten information on original checks, checkbook payment stubs and copies of the checks provided to the government by the Royal Embassy of Saudi Arabia; (6) security features present on the original checks.

Letter from T. Chawla and R. Sharpe to V. Toensing, December 17, 2007. A review of this cryptic portion of the designation reveals that it is no designation at all. The introductory sentence states that the government requests that the Court permit the expert to offer opinions "concerning the conclusions that may be drawn" regarding a list of six different topics. The government never identifies any of these purported conclusions. It simply lists six topics on which the government's expert(s) may offer conclusions, leaving Darui to speculate as to what actual opinions will be offered on some or all of these topics, not to mention the bases and reasons for these undisclosed opinions. The government should be precluded from presenting any opinions regarding these topics.

**2.    *The April 21 Supplemental Designation Does Not Save the Government's Witnesses.***

On April 21, 2008, the government submitted a supplement to its December 21 designation. *See* Letter from T. Chawla and R. Sharpe to V. Toensing, April 21, 2008 (attached as Exhibit H). The supplement falls short of the requirements of Rule 16 in its attempt to designate the testimony of two expert witnesses.

**A.    FBI Examiner Ted Burkes.**

Mr. Burkes' supplemental designation contains, at most, a single opinion, which merely restates the opinions set forth in the December 31, 2007, and March 7, 2008, FBI Reports (*i.e.,*

that some of the payees on checks contain letters that are "not in alignment" with the remaining text on the checks). The government does not identify any other opinion or conclusion that Mr. Burkes may offer as a result of this examination. The government states evasively that "Mr. Burkes will also provide expert opinion testimony explaining why a set of typed characters might not be in alignment with the other typed characters on a particular document where all of the characters were prepared using the same spacing." Exhibit H. Again, the government hides the ball by failing to identify what the "opinion" is.

The designation goes on to state that Mr. Burkes will provide "expert opinion testimony explaining different aspects of proportional spacing," but never identifies what these "different aspects" are. Finally, the government offers Mr. Burkes to testify "about whether the typewriters seized by the government at Blue Line Travel and the Islamic Center were set to type in proportional spacing." Exhibit H. Even with respect to this apparently straightforward topic, the government fails to tell Darui what Mr. Burkes is going to say. The defense has no idea whether he will opine that the typewriters are, or are not, set to proportional spacing, or even what "proportional spacing" is. Darui is left once again to speculate as to Mr. Burkes' testimony.

**B.    Special Agent Kimberly J. Klaiber.**

The government identifies SA Klaiber as a FBI Computer Forensic Document Examiner. In an attempt to avoid disclosing any of SA Klaiber's findings, the government identifies her as a "fact witness," but states that it is prepared to qualify her as an expert if necessary. Exhibit H. It is clear from a review of the FBI Reports and the April 21 designation that any testimony SA Klaiber offers will fall squarely within the ambit of expert testimony. As such, her opinions and the bases and reasons for those opinions were required to be disclosed to the defense. Having failed to do so, the government cannot now call her to testify.

6

The government states that "Special Agent Klaiber will provide testimony regarding the general use and functioning of computers and electronic media and the location of certain files that were found on the computers and electronic media seized by the FBI." Exhibit H. The designation provides no further information regarding Ms. Klaiber's testimony other than this vague description.

SA Klaiber is a member of the FBI's Computer Analysis Response Team ("CART"). As described on the FBI website:

> The Computer Analysis and Response Team provides assistance to FBI field offices in the search and seizure of computer evidence as well as forensic examinations and technical support for FBI investigations. This Unit includes a state-of-the-art forensic laboratory comprised of computer specialists and a network of trained and equipped forensic examiners assigned to more than 50 field offices.

<< http://www.fbi.gov/hq/lab/org/cart.htm>>.    Members of CART performed a digital forensic examination of various electronic media in November and December 2006. SA Klaiber did not perform either of these examinations. *See* Computer Analysis Response Team Report of Examination, November 30, 2006 and December 6, 2006 (identifying SA Matthew L. Goard and SA Steven W. Meckl as the CART analysts) (attached as Exhibits I and J respectively). A review of the December 6 report reveals that a digital forensic examination is, as the FBI website touts, a highly sophisticated "state-of-the-art" process, well beyond the normal understanding of a jury, and is properly the subject of expert testimony. For example, the FBI Reports state as follows:

> The specimens submitted were visually examined. Original specimens were imaged using *forensic procedures* that preclude any writing to the item. The destination hard drive was verified as erased before the capture of the image.

> A *computationally unique digital hash value* (MD5) was calculated for the original specimens and for destination digital media that contain the image of the specimens. The *calculation results matched*, thus verifying the integrity of the images.

Exhibits I and J (emphasis added).  Under the Federal Rules of Evidence, non-experts

(i.e., fact witnesses) can offer opinions that "are (a) rationally based on the perception of

the witness, (b) helpful to a clear understanding of the witness' testimony or the

determination of a fact in issue, and (c) not based on scientific, technical, or other

specialized knowledge within the scope of Rule 702." Fed. R. Evid. 701.  However:

> If scientific, technical, or other specialized knowledge will assist the trier of fact
> to understand the evidence or to determine a fact in issue, a witness qualified as
> an expert by knowledge, skill, experience, training, or education, may testify
> thereto in the form of an opinion or otherwise, if (1) the testimony is based upon
> sufficient facts or data, (2) the testimony is the product of reliable principles and
> methods, and (3) the witness has applied the principles and methods reliably to
> the facts of the case.

Fed. R. Evid. 702.

CART performed an additional examination of digital media on April 9, 2007 (and

possibly on April 29, 2008, one year later), and listed the media it reviewed in a report dated

April 29, 2008.  *See* Exhibit K, attached.  The April 29 report contains no opinions.  Notably, the

report does not list the CART Special Agent who performed the April 9, 2007, examination[4] or

distinguish what was examined in 2007 and what was examined in 2008.

Here, SA Klaiber's testimony regarding the location, extraction, and "state-of-the-art"

analysis of electronic information is precisely the kind of "scientific, technical, or other

specialized knowledge" that the government believes will assist the jury in understanding part of

the evidence it intends to present.  This is expert testimony, and Rule 16 mandates that the

opinions, as well as the bases and reasons for those opinions, be revealed to the defense.  They

have not been, and SA Klaiber's testimony should be excluded.

---

[4] Presumably, the 2007 examiner could not have been SA Klaiber because she did not become a
CART examiner until April 2008.

<u>Conclusion</u>

The purpose of Rule 16 is to adequately inform the parties of the opinions and bases and reasons for the opinions of experts. The government has hidden these opinions from the defense. Rule 16 mandates that expert opinions cannot remain a mystery until the expert speaks from the witness stand. For the reasons stated above, and for those reasons that may be stated in open court, Farzad Darui requests that the Court preclude the presentation of any undisclosed expert opinions.

FARZAD DARUI
By Counsel

_____/S/ Aaron S. Book_____
Aaron S. Book (DC Bar No. 490815)
Steven T. Webster (admitted *pro hac vice*)
Webster Book LLP
1 North King Street
Leesburg, Virginia 20176
703-779-8229
703-991-9178 (fax)
abook@websterbook.com

Victoria Toensing
Joseph diGenova
diGenova & Toensing, LLP
1776 K Street, N.W., Suite 737
Washington, D.C. 20006
(202) 289-7701
(202) 289-7706
*Counsel for Defendant Farzad Darui*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on May 9, 2008, a copy of the foregoing was electronically filed with the Clerk of Court using the CM/ECF system, which will then send a notification of such filing (NEF) to the following:

Ronald Sharpe, Esquire
Assistant United States Attorney
United States Attorney's Office
555 4th Street, NW
Washington, DC 20530

      /S/ Aaron S. Book
Aaron S. Book (DC Bar No. 490815)
Steven T. Webster (admitted *pro hac vice*)
Webster Book LLP
1 North King Street
Leesburg, Virginia 20176
703-779-8229
703-991-9178 (fax)
abook@websterbook.com

**EXHIBIT A**

**Crim. No. 1:07-cr-00149-RCL**

# WEBSTER BOOK LLP

April 22, 2008

Ronald W. Sharpe, Esq.
Tejpal S. Chawla, Esq.
United States Attorney's Office
555 Fourth Street NW
Washington, DC  20530

Re:     *United States  v. Farzad Darui*, In the United States District Court for the District of
        Columbia, Criminal No. 1:07-cr-149 (RCL)

Dear Ron and Tej:

    Defendant, by counsel, pursuant to Federal Rule of Criminal Procedure 16(b)(1)(C)
submits the following summary of testimony that it may introduce from Gerald B. Richards.

    Mr. Richards is a forensic document examiner.  His education and experience is detailed
in the CV provided to you previously.  Mr. Richards is expected to opine that one cannot
conclude whether the checks at issue were altered, forged, or otherwise tampered with based on
an examination of the spacing of the characters appearing on the checks.  Mr. Richards' opinion
is based on the following:

    Mr. Richards examined an IBM Personal Wheelwriter 2 ("Wheelwriter 2"), which is the
typewriter alleged to have been used by Darui in committing the alleged crimes.  Mr. Richards
also reviewed the operating manual for the Wheelwriter 2.  Mr. Richards determined that the
Wheelwriter 2 permits the operator to backspace in 1/5 character increments.  In other words, the
backspace feature allows the operator to backspace 1/5 of a letter by pressing a particular key.
Mr. Richards is expected to testify that the characters used on the checks at issue appear to be in
"Elite" font.  Mr. Richards is expected to testify that the Elite font permits 2.12 millimeters per
character.  Mr. Richards is expected to testify that older typewriters would only permit the
operator to backspace by a single character length (i.e., 2.12 mm).  The Wheelwriter 2 permits
forward spacing by only 2.12 mm, but permits backspacing in .424 mm increments.
Mr. Richards is expected to opine that the spacing or alignment issues identified by the
government cannot be attributed to reinsertion/alteration to a reasonable degree of certainty
given the spacing characteristics of the Wheelwriter 2.  Because of the backspace feature,
lettering on the Wheelwriter 2 can be "out of alignment" by 1/5 to 4/5 of a character even for
checks that were "prepared continuously."  As a result, by using the Wheelwriter 2, depending on
the spacing that the operator used, the lettering on different lines of a check can be completely in
alignment, completely out of alignment, or partially aligned.  Mr. Richards intends to present a

**1 North King Street**
**Leesburg, VA 20176**
**Direct Dial (703) 779-8767**
**Fax (703) 991-9178**
**abook@websterbook.com**

WEBSTER BOOK LLP

Ronald W. Sharpe, Esq.
Tejpal S. Chawla, Esq.
April 22, 2008
Page 2 of 4

demonstrative exhibit (attached as Exhibit 1) that shows the backspacing characteristics of a Wheelwriter 2 using the letter "H."

In addition to horizontal spacing, the Wheelwriter 2 permits the operator great flexibility in vertical spacing. Older typewriters would permit the operator to scroll vertically through the page at 6 lines per inch, and some would permit 12 lines per inch. The Wheelwriter 2 permits the operator to scroll vertically through the page at 48 increments per inch. As such, one cannot conclude that documents were altered by examining the vertical spacing either.

Mr. Richards' methodology for examining the checks follows: Mr. Richards obtains a scan of a check, either provided by the government as a scan of a copy, or a high-definition scan of an original check that Mr. Richards made at the United States Attorney's Office in Washington, D.C. All high-definition scans of checks were provided to the government on a disk on April 18, 2008, and color copies of these scans are attached as Exhibit 2. Once Mr. Richards completes a scan of the check, he aligns it horizontally in his computer using Adobe Photoshop CS3 Extended. After aligning the check, Mr. Richards creates a "layer" of the check, that is, an identical copy of the check that floats over the original scan. He distinguishes the layer from the original scan by making the layer red in color. In other words, the red layer is floating over the black layer.

Next, Mr. Richards removes everything from the red layer except the payee name. The payee name now appears in red, floating over the bottom black layer. The remainder of the check appears in black. Mr. Richards creates a vertical line to the left and right of the payee line. Mr. Richards then slides the red layer down to the amount line of the check to determine if it is in or out of alignment. He does this by floating the red layer immediately over the black layer as well as immediately on top of the amount line. Mr. Richards makes a visual comparison whether the letters line up or are out of alignment. Mr. Richards is expected to demonstrate this to the jury at trial.

Mr. Richards is expected to opine that this method is more effective than using a grid because there is no "scaling" required. In other words, one simply compares a portion of the text on a check to other portions of text on the same check. There is no need to scale (i.e., enlarge or reduce) a grid to the scan of a check, or to scale a check to a particular fixed grid.

Mr. Richards performed this methodology on the checks identified in the attached spreadsheet. (See Exhibit 3). Mr. Richards continues to examine other checks. As such, the spreadsheet may be amended prior to Mr. Richards' testimony at trial.

Mr. Richards is expected to testify regarding the particular characteristics of the following checks:

Check 7994. This is a known original check that Mr. Richards is expected to testify is in alignment.

WEBSTER BOOK LLP

Ronald W. Sharpe, Esq.
Tejpal S. Chawla, Esq.
April 22, 2008
Page 3 of 4

 Check 78107.  This is a questioned check that Mr. Richards is expected to testify is in alignment.

 Check 76574.  This is a known original check that Mr. Richards is expected to testify is out of horizontal alignment.

 Check 76581.  This is a known original check that Mr. Richards is expected to testify is out of both horizontal and vertical alignment.

 Check 7937.  This is a known original check that Mr. Richards is expected to testify is out of horizontal alignment.

 Check 77583.   This is a questioned check that Mr. Richards is expected to testify is out of horizontal alignment.

 Check  76237.  This is a known original that Mr. Richards is expected to testify is in partial horizontal alignment.

 Check 77622.  This is a questioned check that Mr. Richards is expected to testify is in partial horizontal alignment.

 Mr. Richards is also expected to testify regarding two non-questioned checks where the payees are different:  1BO72-3511 payable to Pepco, and USBOA5929-00765 payable to PDS Incorporated (attached as Exhibit 4).  These are "identical" checks except for the payee. Mr. Richards is expected to testify that he performed a review of the printout of the IBM typewriter ribbon that was attached to the FBI Report of Examination dated February 26, 2007. On page 2 of the typewriter ribbon (identified as "Page Start:  100073 – Page End: 205161" in the FBI Report of Investigation), the type that appears at the bottom indicates that the check payable to PDS Incorporated was prepared using this typewriter ribbon.  The ribbon further indicates that the amount and the word "Pepco" appears immediately after, which is consistent with the typing of "Pepco" and the amount in the check stub area.  (*See* Exhibit 5, attached).  Mr. Richards is expected to testify that if he were presented with these two checks and asked to opine which one was the "original" check, he would testify that USBOA5929-00765 payable to PDS Incorporated was the original check and that 1B072-3511 was an altered check.  Mr. Richards' testimony is based on his review of the two checks and his examination of the typewriter ribbon. Mr. Richards is expected to present a demonstrative exhibit of the typewriter ribbon to aid the jury in understanding what he examined.

WEBSTER BOOK LLP

Ronald W. Sharpe, Esq.
Tejpal S. Chawla, Esq.
April 22, 2008
Page 4 of 4

Mr. Richards' testimony is based on his education, training, and experience in the field forensic document examination. His testimony is also based on his examination of the Wheelwriter 2, his review of the operator's manual of the Wheelwriter 2, his examination of original checks, his examination of scans of checks, and his familiarity with the documents at issue in this case. Mr. Richards may amend his testimony based on other discovered evidence and/or the testimony of the government's expert(s) at trial.

Sincerely,

Aaron S. Book

# WEBSTER BOOK LLP

April 23, 2008

Ronald W. Sharpe, Esq.
Tejpal S. Chawla, Esq.
United States Attorney's Office
555 Fourth Street NW
Washington, DC 20530

Re:     *United States v. Farzad Darui*, In the United States District Court for the District of
        Columbia, Criminal No. 1:07-cr-149 (RCL)

Dear Ron and Tej:

Defendant, by counsel, pursuant to Federal Rule of Criminal Procedure 16(b)(1)(C)
submits the following summary of testimony that it may introduce from Pedro Quiñones.

Mr. Quiñones is a computer scientist. He has a bachelor of science in applied science
from World University in Hato Rey, Puerto Rico (1975); a Master of Science in computer
science from California Coast University (1986); and a PhD in Computer Science from
Canterbury University in the United Kingdom (2000).

Mr. Quiñones has taken Microsoft Certified Systems Engineer courses and forensic
training classes provided by Access Data. Mr. Quiñones has worked for 20 years as a contractor
with the United States Government with various intelligence agencies as well as the Department
of Defense. As a result of this experience, Mr. Quiñones has received substantial computer
training in network-related services, document creation and alteration, and other areas, most of
which is classified. Mr. Quiñones has also performed computer literacy training at the Northern
Virginia Community College. He has personally trained over 1,000 students in subjects such as
DOS, BASIC programming, Database programming, LOTUS and EXCEL spreadsheet
programming, MS Windows (all versions), and many other applications. Mr. Quiñones has also
performed training at numerous corporate and government locations.

Mr. Quiñones has also performed training for various US Government agencies in
computer literacy subjects and has co-written network security training courses that have been
used as training materials in various US Government Agencies

Mr. Quiñones is a principal of 3D Forensics, Inc. The company's initial focus was in the
area of computer training and services. Over time, 3D Forensics has become a multifaceted small
business organization providing a broad range of quality, cost-effective services including

1 North King Street
Leesburg, VA 20176
Direct Dial (703) 779-8767
Fax (703) 991-9178
abook@websterbook.com

WEBSTER BOOK LLP

Ronald W. Sharpe, Esq.
Tejpal S. Chawla, Esq.
April 23, 2008
Page 2 of 3

computer information services and security, systems installation and integration, digital forensics, network security assessments and penetration testing.

Among other things, Mr. Quiñones has worked with both the U.S. Government and the private sector in the analysis and recovery of lost and, or deleted data from computer storage systems. These tasks have ranged from simple lost or deleted files to the complete recovery of large amounts of data after a computer crash. Mr. Quiñones has also helped customers develop MIS policies and procedures geared specifically towards the prevention of data loss and data security.

Mr. Quiñones has performed forensic recovery services for various Fortune 500 companies. Mr. Quiñones performs computer forensic examinations, computer security reviews, computer investigations and computer consulting services. He also performs computer security analysis and security evaluations of client networks.

Mr. Quiñones is expected to explain how computerized duplicates of the checks that appear on the invoices that were allegedly sent to the Royal Embassy of Saudi Arabia can be created, modified, and manipulated. Mr. Quiñones is expected to testify that he was able to take an image of a particular check and, using Xara Xtreme Pro, version 4.0,[1] electronically cut individual letters from those checks and rearrange the letters to create a new payee. The image will appear to be an exact copy of the original check, but with a different payee. Mr. Quiñones is expected to demonstrate to the jury how it is possible, through the use of the commercially-available computer software program, to manipulate the check images to make them look like any of the so-called "original checks," or the checks at issue.

Mr. Quiñones is expected to provide a computerized demonstration of how to create a check with an alternate payee, payment amount, date, or memo line, using the Xara Xtreme Pro program. Mr. Quiñones is expected to testify that the results he obtained using Xara Xtreme Pro can also be obtained with other commercially-available software programs with which he is familiar including Adobe Photoshop, Ulead PhotoImpact X3, Corel Painter, ACDSee Photo Editor.

Mr. Quiñones is also expected to testify regarding check number 77678 payable to RJH Air Service, LLC in the amount of $1,103.10 (Bates No. 29-INV1MAR02-015. He is expected to testify that the letters in the payee name appear to be smaller than the letters in the amount line. He is expected to testify that a computer scan of a document or a computer manipulation of a document could produce such a result (i.e., differing letter sizes).

Mr. Quiñones' testimony is based on his education, training, and experience in the field of computers. His testimony is also based on his familiarity with the documents at issue in this case.

---

[1] Xara Xtreme Pro is a commercially-available photo and graphics editing tool.

WEBSTER BOOK LLP

Ronald W. Sharpe, Esq.
Tejpal S. Chawla, Esq.
April 23, 2008
Page 3 of 3

Sincerely,

Aaron S. Book

# **EXHIBIT B**

## **Crim. No. 1:07-cr-00149-RCL**



U.S. Department of Justice

Jeffrey A. Taylor
United States Attorney

*District of Columbia*

---

*Judiciary Center*
*555 Fourth St., N.W.*
*Washington, D.C. 20530*

December 17, 2007

**VIA HAND DELIVERY**

Victoria Toensing
diGenova & Toensing, L.L.P.
1776 K Street, N.W.
Suite 737
Washington, D.C. 20006

Re:  United States v. Farzad Darui, Cr. No. 07-149 (RCL)

Dear Ms. Toensing:

Pursuant to Fed. R. Crim. P. 16(a), the government provides the materials and information which have been saved in an electronic format onto the enclosed diskette (Disc 9). The contents of Disc 9 are specifically described on the enclosed updated index that includes all scanned and Bates numbered materials that have been turned over to the defense.[1]  Please note that some of the materials on the enclosed Disc 9 were previously provided to or made available for your review.

**Scientific Tests or Examinations:**    In connection with an examination conducted by the FBI of the latent fingerprint found on one of the typewriters seized by the FBI from the Islamic Center, the government has included Bates numbered copies of the following materials, among others, on the enclosed diskette (Bates numbered USFBILAB00001 - 00027):

   1)      FBI Request for Examination dated 10/04/2006, regarding a request for the FBI
           Laboratory to examine typewriter ribbons and latent fingerprints.
   2)      FBI Laboratory Report of Examination dated 07/06/2007, regarding the
           10/04/1006 request to examine a latent fingerprint.

---

[1]      Please note that Disc 7R referenced in the updated index is discussed under cover of a separate letter.

**Expert Testimony:** The government may call FBI Examiners Ted M. Burkes and Marguerite McHenry who are both employed by the FBI in the Forensic Analysis Section of the Questioned Documents Unit. Mr. Burkes and Ms. McHenry examined the seized typewriters, typewriter ribbons, original checks and copies of the checks provided to the government by the Royal Embassy of Saudi Arabia in connection with this case. Should the government decide to qualify either as an expert, the government expects that the FBI Examiner will provide testimony consistent with the findings in the FBI Laboratory Reports (Bates numbered USFBILAB00001 - 00027) and any additional reports provided by the government. In addition, the government would request that the Court permit the testifying FBI Examiner to offer expert opinions concerning the conclusions that may be drawn from the examinations conducted on the aforementioned items seized by the FBI and/or items in possession of the government. This would include opinion testimony concerning (1) the correctional features and functions of the seized typewriter(s); (2) the internal consistency of the seized typewriter(s) and documents created by such typewriter(s); (3) examination and comparison of the typewriter fonts and printwheels to documents in the government's possession including but not limited to original checks, checkbook payment stubs and copies of the checks provided to the government by the Royal Embassy of Saudi Arabia; (4) whether the seized typewriter(s) could produce the type found on certain typewritten documents including the typewritten information on original checks, checkbook payment stubs and copies of the checks provided to the government by the Royal Embassy of Saudi Arabia; (5) examination of the alignment of typewritten information on original checks, checkbook payment stubs and copies of the checks provided to the government by the Royal Embassy of Saudi Arabia; and, (6) security features present on the original checks.

The government expects to have all reports prepared in connection with examinations conducted by Mr. Burkes and Ms. McHenry no later than December, 28, 2007. We will forward a copy of Mr. Burkes and Ms. McHenry's curriculum vitae as well as a copy of any pending reports as soon as it becomes available. The government reserves the right to add additional experts or supplement the areas that Mr. Burkes or Ms. McHenry will address in their testimony based upon any defense expert report that is provided to the government.

**FRE 404(b) Evidence:** Pursuant to F.R.E. 404(b), the government is providing notice of the following materials and information which it may seek to introduce in its case-in-chief or in rebuttal:

1)      altered checks including copies of checks the defense provided to the government during a meeting at the United States Attorney's on January 25, 2007. These checks appear to indicate unauthorized transfers of funds between Islamic Center accounts;

2)      testimony that defendant removed bags of shredded documents from his office prior to leaving the country in August 2006; and,

3)      checks and other materials evidencing the substitution of entity names in the payee line of altered checks that were not derivatives of Blue Line Travel, Inc., and Zaal, Inc.

2

These other entity names are mentioned in several of the affidavits n support of various search warrants. Copies of these affidavits were provided to you under cover of our letter dated June 28, 2007.

As requested in our letters dated August 29, 2007, September 19, 2007, and October 9, 2007, the government formally requests all defense discovery materials pursuant to Fed. R. Crim. P. 16(b) including, but not limited to, any and all documents or tangible evidence which you intend to use at trial, any expert testimony you intend to use at trial, and any scientific tests or examinations performed on behalf of the defendant. The government specifically requests the "additional evidence of Khouj's transactions with Blue Line Travel and Zaal" referenced in Defendant's Motion to Dismiss filed August 15, 2007, (Dkt. No. 20 at 14), the Western Union transmittal and Blue Line Travel, Inc., a receipts book referenced by defense counsel during a December 12, 2007, telephone conversation with Mr. Webster and Mr. Book.

Finally, the government is requesting copies of all documents and materials obtained by the defense pursuant to subpoenas issued under Rule 17 (c) of the Federal Rules of Criminal Procedure.

Please contact us if you have any questions or need additional information.

Sincerely yours,

JEFFREY A. TAYLOR
UNITED STATES ATTORNEY

By: _____

TEJPAL S. CHAWLA
RONALD W. SHARPE
Assistant United States Attorneys
(202) 353-2442 (Chawla)
(202) 353-9460 (Sharpe)

Enclosures

3

**<u>EXHIBIT C</u>**

**Crim. No. 1:07-cr-00149-RCL**



# FBI Laboratory

2501 Investigation Parkway
Quantico, Virginia 22135

## REPORT OF EXAMINATION

To:   Washington Field
NVRA CR-13
SA Brian L. Crews

Date: February 26, 2007

Case ID No.: 196D-WF-234808-*68*

Lab No.: 061012004 QB LS

Reference: Communication dated October 4, 2006

Your No.:

Title:   FARZAD DARUI;
THE ISLAMIC CENTER,
2551 MASSACHUSETTS AVE NW
WASHINGTON, D.C. - VICTIM

### AGENT COPY

Date specimens received: October 12, 2006

The specimens listed below were examined in the Questioned Documents Unit:

Q1   Photocopy of check #77996, drawn on the account of Dr. Abdullah M. Khouj, dated 08/31/2002, in the amount of $1206.00

Q2   Photocopy of Special Account check #79032, dated 04/30/2004, in the amount $750.00

K1   IBM Personal Wheelwriter 2 Typewriter  (1B14, E03982127)

K2   IBM typewriter ribbon  (1B14, E03982127)

K3   IBM correction tape  (1B14, E03982127)

This report contains the results of the questioned document examinations.

Enclosure

Page 1 of 2

For Official Use Only

**Results of Examinations:**

Information from specimens Q1 and Q2 was searched through the National Fraudulent Check File with no associations effected.  Appropriate data was added to the file for future reference.

The text of specimens Q1 and Q2 was not found on the K2 typewriter ribbon and K3 correction tape.

The text "Blue Line" occurs seven times on the K2 ribbon.  The text "ZAAL" occurs five times on the K2 ribbon.  The terms "Travel Service, Inc." and "BLT" do not appear on the K2 ribbon.

A transcript of the K2 typewriter ribbon is enclosed for your investigative assistance.

**Remarks:**

The submitted specimens will be returned under separate cover.

A digital record of the evidence is retained.

For questions about the content of this report, please contact examiner Ted Burkes at 703-632-7313.

For questions about the status of remaining forensic examinations, please contact Request Coordinator Kristi Oberbroeckling at 703-632-8327.

Ted M. Burkes
Questioned Documents Unit
703-632-7313

This report contains the opinions/interpretations of the examiner(s) who issued the report.

Page 2 of 2
061012004 QB LS

Envisage Systems RAW Report

FBI Typewriter  Ribbon  Printout

Case: 061012004 LS

Operator:          DJ
Date:                        1/10/07
To:                          WFO
Case number:     061012004
Case Ref:           196D-WF-234808
Specimen:                    K2
Type of Ribbon:   IBM


<u>Notes</u>

2/26/07 pw

ADMN ST. ACCT. DECEMBER 6 TO 31: 2
005 M. R., TAHAM. B. AKHSH. ACOCOUNTS DIVISIO
N ROYAL EMB. AS SY OF DSAUDIA. RABIAEX TENTLO
N 2456 PLEASE HAND DELIVER TO THE INTENDED PAR
TY.

MR. TAHAM. BA
KHSHA. CC. OUNTS D IVISIONR. OYA. LEMB. ASS
YOEDSA. UD IARABIAEXTEN. TION 2456 PLEASE HA
ND DELIVER TO THE INTENDED PAR TY.

NN JOSEFINADA. ARJAS. 56
3 LEESBURG. PIKE (C) F21FA. SCHURCH., VA2
021 4 1 USA 05/01/05/2006,01/09/2006 WE SIM INS
T. ERSCHOOL. JJC. ***62" 1 131: SIXTHOUSAN
DNINE HUNDREDN. INETYONEAN. D 20/10:0 **A. C
. CT. #41230 1/092/006 *LAWSO N, TA. RT. ER &
CHARVET. 1. C. 342., 5C. FOURHUNDREDFORTY
TEWOA. ND 50/100 ***: ***** * LE KGAL FEES,
NV. NO. 7 1 708 LL EE AASSEE TT EERR MMIINNAAT
TI IOONNNNOJ'T IJC. CE. E.

AADDJ IM. JJNN BESTT
VVEE. A. ACCCC TT. JJAANNI I1. 1 TT OOJ1 55
22000066

SS TICKET., SUPPL. IES 01 1 2/2006 4 750.
00 **F. OURTHOUSA NDSEVENHUNDREDFIFTYAN
D 00/100 ***** **  *  ***** ** ***** ** ***
** ***** $4. 750.00Z$47 50.00 PMRPMR....
mmrr....                    ffffffff mmrr
M. RMR. JAH. AM. BAKHSHACCOUNTSDI VISIONR
OYALEMB. AS SY OFS AUD IARABIAR XTENTLO N24
56 E. PLEASEHAND. DELIVERTOTHEINTENDEDPAR
TY.

PLEASE5J: OONR

HODESSTINGTON, VA, 2209150CONRHODES M
RF ARZADDARUI (703)824-0445farzad.das r
uiarui@verixzonetxzaal,inc AL, INC. 3143
MALBROOKDRIVE.FALLSCHURCH.VA22044-1110
FARZADDARUISAMESAME11NOPOTOMACDISPOSA
LSERVICESOFVIRGINIA.LLC2813JUNIPERSTRE
ET.FAIRFAX.VA22031(703)560-8866XCOMNTA
INERGSAATTHEPARKINGLOT.XFARZADDARUIPRES
INT01/17/20062132NN19STREETTHSTREET213
2N19THSTREET.ARKLINGTON.VA22201 FARZADD
ARUI(703)824-0445farzad.darui@verizon.
nertxzaal.FRAZADDARUI 3433MALBROOKDRIVE.
FALLS.CHURCH.IA22044-110110FARZADDARUI
SAMESAME81POTOMAEISPOASALSERVI CESOFV
IRGINIA,LLC. 2813JUNIPERSTREET.FAIRFACX
,VA22031(703)560-8866X FIRSOARPORT,M U
ITIPLECONTAINERSX 11/98/2006FARZ/DRDU O
WNER67-5462262 9F-0015 4-1622629XLTTERT
AX0101194BLUELINETARAVEL,INC, SAMESAM  ) Blue Line
ESIDEESBU R GPIKE.STE21 FALLSCHURCH,V   ) Travel (up)
A22041SAMESAME 70367-B724SAMEASABOVEBL  ) Blue Line
UELINETRA VELN C. 5631 LEESBURGPIKESUITE ) Travel
21 TEEFALLSCHURCH,VA22041VADEPARTMENTOF
TAXA TIONREGISTRA TIONUNITPOBOX1 U 4RICH
MOND,VA231218-1114AAMM       Lz
      21VZZINVOICENO. 0544 2071 I NCORPO
RA TED4425 3R01/18/2006FOURRTH ANDFOUR
HUNDREDTWENTYFICVEANDI 8/ )0* :*:*: *:*I***
*:*I *:*I** ***********:*I*,,, CCFEICE ELECTRIGE
LECT. SER VICERICSERVI CE$4 24 5. 18$4425
(. 13PEPCO33BLLUUEELLINNEE 3, 333BBLLL
LLIILL JUEEUUEE BBL II LLUEEEELLL
IIIINNNEEEHHAANNAENL LBBAAKKR RYY77)
33D88LLOO CHHEEDDIINNCCTT.. PPOOTTOOMM

2/26/07 TW

AACC, , MMD D 22 008 855 44 MMRRSS . . NNAADD D A
AMM . EEZZZ ZAATT 27 55 22 771 TRRQ OP PHHYYLLA
ANNE ERREESS TTOON N , , VVAA 22 00 19 9 -1- 22 1
21 2 66 MMRR, . SSHHAAMMSS AABB DDUURR RRAA HH
MMAANN1 31 6PUMPK1N CREEKLANEDANLLE . VAL
E. VA 24 43 ADMINIS TRATI VEACCT. JAN 1 TPO
31 06 06 CMR. TAHAM. BAKHSHACCOUNTS DIVISIO
NR QYALEMBASSYOF SAUDIARABIAEXTENTIION
456PLEASH ANDDELIVERTOTHEINTENDEDPART
Y,

        ALLALLBOARDRELATED 200
46 UPM R TAHAM. BAKHSHACCOUNTS DIV. ISI ONR
QY. ALEMBA SSYOFSAU DIARABIAEXTEN TIONZ
456 PLEA SEHANDDEL IVERTOTHEINTEDEDPANDE
DPA RTY.

          4 44 V VV
RTHEISLAMICCENTDR TERERNBOOKSTOREACCOU
NT2005THEISIAMIC CENTERCONDSTRU CTION F
UND&THE SLAMICCENTERRESERVEFUND(PNCBAN
K)2005BOOKSTOR EACCOUNT 2 06(F OO DAC COUN
T 20 06 RESERVE FUND2006CHARITYACCOUNT 2 06
CONSTR U C TIONFU ND 2 06 THEISLAMI CCEN
TERBFOODACCOUNT 20 05 THEISLAMICCENTERCHA
RITYACCOUNT2005 ADMINISTRATI VEACCOUND2
005DEPOSITS2005D E P 20 05 $2 37 1 43$7 7
7 31 43PMR PRINTINGCO. $4910 24SPECIALAC
COUNT2005BANKSTAT EMENTS&CHECKSTUBSSPEC
IALACCOUNT2005 PECIALACCOUNT2006 MRM
OSTAFAM. ELMAESS IRI 1482COUNTRYCIRCLED
RIVEW. AYNESBORQ PA 26 8 ISIAMICCCCENT
ERQUICKBOOKSACCOUNT 02 2 20062005 ALLINS
URANCETH EISLAMICCENTERA DMINISTRATIVE
A CCT 14 2 6 ACCOUNTC LOSING 4 4394F
EBR U A RY 14 2 06 THEISLAMICCENTERADMI

061012004    2/26/07

NTS TRATIVE ACCOUNT 34343 . 94 FEBR UARY 14 .12
0.084 . 33.42. HEIS . I AMI CCENR . TERAD . MINIS
TRATIVE ACC UNTE QURTHOUS AND THREE . HUNDRE
DEORTY TH REE AND 9 4/ 100 DOLLAR S . FEBR UARY 14
2.20. 61 HEI SLA . MICCENU RADM I NIS TRAT I VE AC
CQUNTTRANSFE. RQFFUNDS . &ACCOUNTCLOSU G 4
33.4.39AA C. CQ UNTCLOSING. SPEC IAIACCOUNT
2100 6/ AC. CT. CLOSED. 2/ 1/4 2006 ADM INISTRA
TIVEACCOUNTFEB. 1 = 1-51-6 . . . . . . m.r. MR. TAHAM
L IAKH SHROY ACCOUNT SDIVIS I ONROYALEMBASSY
OF SAUD IARABI AEX TENTIONNUMBER245 6 PLEA
SE HAND DELI VERTOTHEINTENDEDPARTY.

272 470.16 FARZAD I . 7 EU C 3/ 27/ 1961
UOSE FLNAA R IASDARUI 10 1/ 1/2 46 Y 44 343 MALB
ROOKDRIVEFALLZS CHUR CHV A 2 20 4 9-1 1 1 70 3 70
368! -4 848 (70 3) 824 - 0445 (7 C 190 9-1621 422
71-. 92 = 6 2 03 226 - 61- 8 2 1CXXXARNMA I DAR . I
USHDARUL 01 1/ 2 / 19 97 A RI AN. ADARUI 0 8 10 / 12
01 999 NO. N ON ON O. NO. XX IRAN. AND MYWI FEI SFR
OM MEXICO. XX. X X XX. XX. ADMIN I TSIRATIVEA
CCT. FEB 1 - - 8 / 006 TAHAM B. AKHSH MR. ACC
QUNTS DIVIS I ONROYALEM. BASSUY OF SAUDIARA
BI AEXTENTIONNUMBER 24 6PL EASEHAND DEL
IVERTOTHEINTEN DEDPARTY.

ALLADMINI STRATIVEDEPO. SI TS2 006 DARI I.
F. AR ZAD 03 / C / 20 C C 551 M. ASSACHUS ETT SAV
ENUE, NW WASHING TON. IC 20008 (20 3 32 - 8 34
+ 2134 . . . adn I DMINIS TRAT IVEA
CCT. MAR. C. H-1 5 /2 06 MR. TAHAM. BAKHSHAC
. COUNTSDIVIS I ONRO YALEM BAS. SYOFSAUDIAR
ARI AEXTENTIONNUM BER245 6PLEA SS EEHAND 2E
] . LIVERTOTHEINTEN D. EDAPARTY.

061012004

2/26/07

HE IS KNOWN TO OUR ARABIC INSTRUC
TOR FROM JAN 2, 2006 HE HAS BEEN ABLE TO IMPROV
E HIS ARBIC ABIC LANGUA GE BY BEING ABLE TO REA
D ELEMENTARY TEXTS. HIS INSTRUCTOR BELEIVES
IVES THINKS HE IS MAKE GOOD PROGRESS FARJZAD
DA RUI MANAGER, THE ISLAMIC CENTER 2551 MASS
ACHUSAETTS AVENUE, NW, WASHINGTON, DC 20008
(202) 332-8343 theislamic.moeterd (veriz
on.net administrative rve Account 31, 6-3
1/20068a ccaus ACCOUNTS DIVISION, J RT. R
. TAHA M. BAKHS HROYA LEMBASSY OF SAUDI ARA B
IA EXTENTIO N NUM BER 2456 PLEASE HAND DELI
VER TO THE INTENDED PARTY.

GOVERNM E
NT CONJ TRIBUTIONS 2006 ADMNST ACCOT APRI
LJT 01 5, 2006. etwl LLC E9 04 UP
PER MARLBORO D ARCYR ODA DUPPER MARLBORO,
MD 20774 MR. TAHAM. BA KHS HACCOUNTS DIVISI
ON ROYAL EMBASSU YOF SAUDI ARABIAR OYALEMB
ASSY OF DSAUDI ARABIA EX TENT IONNUMBER 245
6 PLEASE HAND DELI VER TO THE INTE NDED PARTY.

YES 4/01/2050 PRESENT JAS OO ELECTR
IC THREE EVER BA LN OTIC EXN O NEATTHIS TIM
. EFARZADDARUI PRESIDENT 04/20/2006 4/30/2
005 4/30/2006 $71 95 J OO NETHE OF I HE THREE Y
ES VERBAL ONTIME FARZADDARU IQWNER 4/20% 00
6S PEC IADMINIS DTRATIVE ACCT. APRIL 30, 32
006 MR. TAHA J. B AKHS HACCOUN TSDIC VISIO
N ROYAL EMBASS YOF SAUDI ARABIA EXTENTIONNUM
BER 24 6 PLEASE HAND DELIVERT OTHEINTENDED
PARTY. X
X QVERDRAFT PROCTTECTION $50.00.00 SEE ATT

2/26/07

Case 1:07-cr-00149-RCL 7   Document 89-2   Filed 05/09/2008   Page 22 of 41

ACHE 4DDBLUELINETRAVEL, UI NC. 5-41-622629) BLUELINE
X343 3MAL BROOKDRIVEFALLSCH URC HVA2 20 TRAVEL
44-111 0X$600. 00TRAVELAGENCY2-3MILLION1
99219924$9.0 0.00 0.000 FARZA DDARUI X03/2
7/1960 DRIVER' SLICENSEA69-6 5-6729VA02//
4/2005(703) 658-4848(703)X24-0445X933 3
MA L B ROOKDRIVEFALLSCHURCHV A2204 60
0.002,000,000.0087000,00X100PRESIDENTT
ICANDZAAL NC. 2251 8 0,000 00±DARUIda) ZAAL
rui@zaalinc. com comseeattachtment me n) ZAAL
t xxxxxbluelinetravel, inc. ITLBfarzadda) blueline
ruiDFpresident05/08/20061 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ha travel
nddeliveredDH tbRHODESCLOSINGRHODESRHO
DESPRO. PERTIESTOCONSIDER20067MAUYSPECI
ALACCT. MAIY1-152006ADM IN. IS TRATIVEACC
T. MAY-11 5, 2006ETW, LLC. 9304D'ARCYROADUPP
ERMARLBOTRO, MARYLAND20/74DR. ANDMR. SMOHA
MEDYEHIA8MAKHAZENELSHIRKASTREETMAHKAMA
, HELEOPOLISCAIREO, EGYPTIMAGINETIONSG R
OUPINC. 221BAYFRONTDRIVEPASADAENAL, MD21 1
22-622UMR. RICKLITTLEMR. ABDULAZIZALSHGH
E RACCOUNTSDIVISIONROYALEMBASSYOFSUA U
DIARABIAEXTENTIONNUMBER2456 P L E A S
E H A N D D E L I V E R T O T H E
I N T E N D E D P A R T Y PURCHAS
EO FBREAKERDR. ABDULISHM. KHOUJYADMINSTR
ATV. ACCT. MAY1 5-1, 2006 V. FMR. ABDULA
ZIZALSHGHERAC COUNTSDIV IOSIONROUYALEMB
ASSYCFSAUDIQARABIAEXTENTIONNUMBER@$%ç2
456 PLEASEHANDDELIVERTOTHEINTEDNDEDPART
Y.

ADMINIS TRATIV EACCT. 6/IT 0157/20
UETW. ; LLC. 9304D'ARCY ROADUPPERMARLBOR
O, MD20774MR. ABDULAZIZ ALSHGHERACCOUNTSD

061012004   2/26/07 po

IVISIONROYALEMBASSYOFSAUDIARABIAEXTENT
IONNUMBER2456PLEASEHANDDELIVERTOTHEINT
EDNDEDPARTY.

MARCHANTSERVICEE. BB
(&TC. REDITCARDSBLUELINREFARZADDARUI21JU) Blue Line
NEFAR ZADDARUIPRESIDENTJUNE21, 20056 W. A
TERFORDDEVELOPMENT, LLC. 1925ISAACNEWTON
(SQ. E. ESTON, , VA20190ZAAL, INC. . 13431MAL) ZAAL, Inc
BROOKDRIVEFALLSCHURCH, VA22044-110ATTE
(NTIONALEXANDRA STROUDZAAL, INC. 3433MALB) ZAAL, Inc
ROOKDRIVEFALLSCHURCH, VIRGINIA22044-111
OWATERFORDDEVELOPMENT,LLC. 19251SAACNEWT
ONSQUAREEASTSUITE180RESTON, VIRGINIA20
190ATTENTION: MS. ALEXANDRASTOUDROUD

ABDERRA
HIMHALILIHABIBATOUDIALLOREDOU ANESIRAD
administratien acct. AAjuJune16-30-20
06mr. MER. ABDULAZIZALSHGHERACCOUNTSDIVI
SIONEMBASSYOFSAUDIARABIAEXTENTIONNUMBE
R:2456PLEASEE ANDDELIVERTOTHEINTENDEDPA
RTY.

SANABEN-RAHIMJOSESAMBABASAM BA B
AA DM.INISTR.ATIV. EACCET. T. JULYI-15, 20
06MR. ABD YULAZIZALSHGHERACCOUNTSDIV I
SIONROYALEMBASSYOFSAUDIARABIAEXTENTION
NUMBER2456PLEASEHANDDELIVERTOTHEINTEND
EDPARTY.                                    farz
addarui@y. . . farzaddarui@yah . . far
zaddaruiorfarzadfadarui@yahoo.com farz
addarui@yahoo.com farzaddarui@yahc.o.c
o,m fanzddarui@yahoo.comfarzaddarui@y
ahoo.comfarzaddarui @ yahoo. comfanzad
darui@yahoo. comfarzaddarui@yahoccomfar
zaddarui@yahoo.comfarzaddarui@yahoo.co

061012004

2/26/07

mfarzaddarui@yahoo.comfarzaddarui@yaho
o.comfarzaddarui@yahoo.comfarzaddarui@
yahoo.comfarzaddarui@yahoo.comfarzadda
rui@yahoo.comtarzaddarui@yahoo.comfar
zaddarui@yahoo.comfarzaddarui@yahoo.co
mfarzaddarui@yahoo.comfarzaddarui@yaho
o.comfarzaddarui@yahoo.comfarzaddaru
i@yahoo.comfarzaddarui@yahoo.comfarzad
darui@yahoo.comfarzaddarui@yahoo.com
farzaddarui@yahoo.comfarzaddarui@yaho
o.comvaVADEPARTMENTOFTACXATIONP.O.BOX2
7216RICHMNOOND, VAZ3261-72634ADMINISRT

(RATIVEACCT.JUL Y16-3-1-06BLUELINETRAVEL )  Blue Line
,INC.. 6113LEES BURGPIKESUITEZ1FALLSCHUEC)  Travel
(H, VAZ2041BLUELINETRAVEL, INC.. 5613L3EE
BURGPIKESUITEI2 FALLSCHUECHR, VAZ2041BLU  Blue Line
ELINETRAVEL, INC. 5613LEESBURGPIKESUITE )  Travel
1FALLSCHUERCH, VAZ2014 AUGUST2,2006ANNET
TEPERZAN*1595.00*0**ONETHOUSANDONEFIVE
HUNDREDNINETYFIVEANDOO/1OO**REFUNDOFSE
CURITYDEPOSITANNETTEPERZANMR.ABDULAZUI
ZALSHGHERACCOUNTSDIVISIONROYALEMBASSYO
FSAUDIARAVBIAEXTENTIONNUMBERZ456PLEASE
HANDDELIVERTOTHEINTENDEDPARTY. _____
                                      ANN
ETTEPERZAN320KINGSTREETS.UITE250ALEXAN
(DRIA, VIRGINIAZZ314ZAAL, INC. 5613LEESBUR )  ZAAL, I
GPIKESUITE22AFAR.ILASCHURCH, VAZ2041ALL
OUNEBANGOURA±LI031EXCHANGE20076, RHODSES
MR.JOHNMINTZ115015THSTREET, NWWASHINGTO
N, DC20071IMPORTANTANDCONFIDENCIAL
                        PATRICEH811.LLAN
DJOYCEPRICE3600NEWYORKAVYORKAVENUE, SEN
WASHINGTON, CDC20002-1947CONFIDENTIALAN

2/26/07

DIMPORTA NT                                                    ADMI NI
STRATIVEACCT. AUG. 1-15, 2006THEISIsanon-
bindingletteriotintent. Thisisanon-bind
ingletterotintent. ∠mei. abdulazizMR. ABD
ULAZIZ ALSHGHERACCOUNTSDIVISIONROYALEMB
ASSYOFSAUDIARABIAEXT. ENTIONNUMBER2456P
LEASEHANDDELIVERTOTHEINTENDEDPARTY.

061012004

2/26/07

## **<u>EXHIBIT D</u>**

**Crim. No. 1:07-cr-00149-RCL**



**FBI Laboratory**

2501 Investigation Parkway
Quantico, Virginia 22135

## REPORT OF EXAMINATION

To:   Washington Field
      NVRA CR-13
      SA Brian L. Crews

Date: April 30, 2007

Case ID No.: 196D-WF-234808·35

Lab No.: 061207022 QB LS

Reference: Communication dated December 5, 2006

Your No.:

Title:   FARZAD DARUI;
         THE ISLAMIC CENTER,
         2551 MASSACHUSETTS AVE NW
         WASHINGTON, D.C. - VICTIM

# AGENT COPY

Date specimens received: December 7, 2006

The specimens listed below were received in the Questioned Documents Unit:

Photocopies of seven checks drawn on the account of Dr. Abdullah M. Khouj, further described as follows:

| Specimen | Check # |
|----------|---------|
| Q3 | 76949 |
| Q4 | 77032 |
| Q5 | 77066 |
| Q6 | 77124 |
| Q7 | 77152 |
| Q8 | 77178 |
| Q9 | 77179 |

K4   IBM Personal Wheelwriter 2 Typewriter  (1B71, E03982226)

K5   IBM typewriter ribbon  (1B71, E03982226)

Enclosure

Page 1 of 3

For Official Use Only

K6        IBM correction tape  (1B71, E03982226)

This report contains the results of the questioned document examinations.


**Results of Examinations:**

Information from specimens Q3 through Q9 was searched through the National Fraudulent Check File with no associations effected.  Appropriate data was added to the file for future reference.

The text of specimens Q3 through Q9 was not found on the K5 typewriter ribbon and the K6 correction tape.

The text "BLUE LINE" occurs once on the K5 ribbon.  The terms "Zaal Inc.", "Blue Line Travel Inc.", "BLT", "Travel Service Inc.", "Washington Travel Service", "Consolidated Travel & Tour Services", "CB Lucas Company", "Sky Travel Corporation", "G.W. University Health Plan", "CNA", and "J.P. Flanagan Corporation" do not appear on the K5 ribbon.  A transcript of the K5 ribbon is enclosed for your investigative assistance.

The text "ZAAL, INC." occurs once on the K6 tape.  The terms "Blue Line Travel Inc.", "BLT", "Travel Service Inc.", "Washington Travel Service", "Consolidated Travel & Tour Services", "CB Lucas Company", "Sky Travel Corporation", "G.W. University Health Plan", "CNA", and "J.P. Flanagan Corporation" do not appear on the K6 tape.

A definite determination could not be made whether the specimen K4 typewriter or printwheel was used to prepare the questioned text as it appears on specimens Q3 through Q9, due to the poor image quality of the questioned specimens.


**Remarks:**

The submitted specimens will be returned under separate cover.

A digital record of the questioned documents is retained.


Page 2 of 3

061207022 QB LS

For Official Use Only

For questions about the content of this report, please contact examiner Ted Burkes at 703-632-7313.

For questions about the status of remaining forensic examinations, please contact Request Coordinator Kristi Oberbroeckling at 703-632-8327.

Ted M. Burkes
Questioned Documents Unit
703-632-7313

This report contains the opinions/interpretations of the examiner(s) who issued the report.

For Official Use Only

Envisage Systems RAW Report

FBI Typewriter  Ribbon  Printout

Case: 061207022 LS

Operator:            DJ
Date:                        1/10/07
To:                          WFO
Case number:      061207022
Case Ref:            196D-WF-234808
Specimen:                    K5
Type of Ribbon:   IBM


<u>Notes</u>

**<u>EXHIBIT E</u>**

**Crim. No. 1:07-cr-00149-RCL**



## FBI Laboratory

2501 Investigation Parkway
Quantico, Virginia 22135

## REPORT OF EXAMINATION

To:  Washington Field
Squad CR-13/NVRA
SA Michael J. McGillicuddy

Date: December 31, 2007

Case ID No.: 318E-WF-234808

Lab No.: 071219002 QB LS

Reference: Communication dated December 18, 2007

Your No.:

Title:  FARZAD DARUI;
THE ISLAMIC CENTER
2551 MASSACHUSETTS AVE NW
WASHINGTON, D.C. - VICTIM

Date specimens received: December 19, 2007

The specimens listed below were received in the Questioned Documents Unit on December 19, 2007:

Photocopies of four checks drawn on the account of Dr. Abdullah M. Khouj, Special for Islamic Center, further described as follows (1B135, E02182619):

| Specimen | Check # | Pay to the Order Of: |
|----------|---------|----------------------|
| Q10      | 77124   | CNA                  |
| Q11      | 77217   | Traveler             |
| Q12      | 77622   | Travelers            |
| Q13      | Not Used |                     |
| Q14      | 77892   | CNA                  |

Photocopies of four checks drawn on the account of Dr. Abdullah M. Khouj, Special for Islamic Center, further described as follows:

| Specimen | Check # | Pay to the Order Of: |
|----------|---------|----------------------|
| Q15      | 77124   | BLT, INC             |
| Q16      | 77217   | BLT Travel Service Corporation |
| Q17      | 77622   | Blue Line Travel Corporation |
| Q18      | 77892   | BLT, Corporation     |

Enclosures (6)

Page 1 of 3

For Official Use Only

Photocopies of twelve checks drawn on the account of Dr. Abdullah M. Khouj, Special Account, further described as follows:

| Specimen | Check # | Pay to the Order Of: |
|----------|---------|----------------------|
| Q19 | 78244 | Pepco |
| Q20 | 78244 | Zaal, Inc. |
| Q21 | 78436 | Washington Gas |
| Q22 | 78436 | B.L.T. Services Inc. |
| Q23 | 78707 | Pepco |
| Q24 | 78707 | Blue Line Incorporated |
| Q25 | 78730 | Loyal Service Systems |
| Q26 | 78730 | Zaal, Inc. |
| Q27 | 78906 | Pepco |
| Q28 | 78906 | Blue Line Travel, Inc. |
| Q29 | 78955 | CNA |
| Q30 | 78955 | B.L.T. Incorporated |

Photocopies of two checks drawn on the account of Islamic Center, ADM, further described as follows:

| Specimen | Check # | Pay to the Order Of: |
|----------|---------|----------------------|
| Q31 | 9051 | Travelers AMD |
| Q32 | 9051 | Blue Line Travelers Incorporated |

Two checks drawn on the account of Dr. Abdullah M. Khouj, Special Account, further described as follows (1B10, E02182621):

| Specimen | Check # | Pay to the Order Of: |
|----------|---------|----------------------|
| Q33 | 78437 | Home Paramount |
| Q34 | 78438 | AJH Air Conditioning |

Q35     Check stub from checks #78436, 78437, and 78438  (1B78, E02182620)

NE1     Fifteen photocopies

This report contains the results of the questioned document examinations.


**Results of Examinations:**

It was determined through a torn/cut edge comparison that specimens Q33 through Q35 were at one time a continuous sheet of paper.


Page 2 of 3

071219002 QB LS

For Official Use Only

The typewriting on the joined specimens Q33 through Q35 appears to have been prepared continuously.

The typewriting imaged on specimens Q10 through Q12 and Q14 appears to have been prepared continuously. Images of a portion of the typewriting under a grid are enclosed for your investigative assistance.

The typewritten "SERVICE" is not in alignment with the remaining typewriting imaged on specimen Q16. An image of a portion of the typewriting under a grid is enclosed for your investigative assistance.

The typewritten "BLUE LINE" is not in alignment with the remaining typewriting imaged on specimen Q17. An image of a portion of the typewriting under a grid is enclosed for your investigative assistance.

Due to the lack of clarity and detail as a result of the imaging process, no determination could be reached as to whether the typewriting imaged on specimens Q15 and Q18 through Q32 was prepared continuously.

**Remarks:**

The submitted specimens will be returned under separate cover.

A digital record of the evidence is retained.

No examinations were conducted on the NE1 items.

For questions about the content of this report, please contact examiner Ted Burkes at 703-632-7313.

For questions about the status of your submission, please contact Request Coordinator Kristi Oberbroeckling at 703-632-8327.

Ted M. Burkes
Questioned Documents Unit

This report contains the opinions/interpretations of the examiner(s) who issued the report.

Page 3 of 3
071219002 QB LS



CNA

THOUSAND EIGHT

RCULAR WATERMARKS ARE NC



Q10



TRAVELER

EIGHTY NINE AND 1

ARE NOT PRESENT, DO NOT C



TRAVELERS

E HUNDRED FORTY EI

ARE NOT PRESENT, DO NOT CA

212



CNA

FIVE HUNDRED EI

TERMARKS ARE NOT PRESEN



$Q14$





BLT TRAVEL SERVICE

) EIGHTY NINE AND NO/

CS ARE NOT PRESENT, DO NOT CASH.

Q16



BLUE LINE TRAVEL CORPORATION

D THREE HUNDRED FORTY EIGHT AN

TERMARKS ARE NOT PRESENT, DO NOT CASH. SEE B



Q17

## **EXHIBIT F**

## **Crim. No. 1:07-cr-00149-RCL**



# FBI Laboratory

2501 Investigation Parkway
Quantico, Virginia 22135

## REPORT OF EXAMINATION

To:  Washington Field
     NVRA CR-13
     SA Michael McGillicuddy

Date: July 6, 2007

Case ID No.: 196D-WF-234808  −10⁷

Lab No.: 061012004 QB YJ

Reference: Communication dated October 4, 2006

Your No.:

Title:  FARZAD DARUI;
        THE ISLAMIC CENTER,
        2551 MASSACHUSETTS AVE NW
        WASHINGTON, D.C. - VICTIM

Date specimens received: October 12, 2006

The item listed below was examined in the Latent Print Operations Unit:

K1     IBM Personal Wheelwriter 2 Typewriter  (1B14, E03982127)

This report contains the results of the latent print examinations.

**Results of Examinations:**

One latent fingerprint of value was developed on K1.

The latent fingerprint developed on K1, a IBM Personal Wheelwriter 2 Typewriter, has been identified as a fingerprint of FARZAD DARUI, FBI# 710541HA7.

Page 1 of 2

For Official Use Only

USFBILAB00026

**Remarks:**

Inked prints of DARUI, FBI# 710541HA7, recorded in connection with this case, should be submitted to the Latent Print Operations Unit with correspondence referenced to Laboratory Number 061012004 QB YJ. These prints will be used for comparison purposes and any latent print testimony you may desire in this matter.

For questions about the content of this report, please contact Physical Scientist/Forensic Examiner Aimee Qulia at (703) 632-7124.

For questions about the status of your submission, please contact Request Coordinator Kristi Oberbroeckling at (703) 632-8327.

The specimen, along with a photograph of the developed latent fingerprint, are being returned under separate cover.

Aimee Qulia
Latent Print Operations Unit

This report contains the opinions/interpretations of the examiner(s) who issued the report.

For Official Use Only

USFBILAB00027

**<u>EXHIBIT G</u>**

**Crim. No. 1:07-cr-00149-RCL**

 **FBI Laboratory**

2501 Investigation Parkway
Quantico, Virginia 22135

## REPORT OF EXAMINATION

To:  Washington Field
Squad CR-20/NVRA
SA Michael J. McGillicuddy

Date: March 7, 2008

Case ID No.: 318E-WF-234808-*150*

Lab No.: 080222002 QB LS

Reference: Communication dated February 21, 2008

Your No.:

Title:  FARZAD DARUI;
THE ISLAMIC CENTER
2551 MASSACHUSETTS AVENUE NW
WASHINGTON, D.C. - VICTIM

Date specimens received: February 22, 2008

The specimens listed below were received in the Questioned Documents Unit on February 27, 2008:

Q36 - Q37          Not Used

Photocopies of two checks drawn on the account of Dr. Abdullah M. Khouj, Special for Islamic Center, further described as follows (1B135, E04088925):

| Specimen | Check # | Pay to the Order of |
|----------|---------|---------------------|
| Q38 | 77399 | CHANTILY PRINTING CO. |
| Q39 | 77950 | PAUL E PENNOYER & ASSOCIATES |

Photocopies of three checks drawn on the account of Dr. Abdullah M. Khouj, Special Account, further described as follows (1B135, E04088925):

| Specimen | Check # | Pay to the Order of |
|----------|---------|---------------------|
| Q40 | 78106 | DCWASA |
| Q41 | 78164 | BANK OF AMERICA |
| Q42 | 78183 | LOYAL SERVICE SYSTEMS |

Enclosures (17)

Page 1 of 4

For Official Use Only

Photocopies of two checks drawn on the account of Dr. Abdullah M. Khouj, Special for Islamic Center, further described as follows:

| Specimen | Check # | Pay to the Order of |
|----------|---------|---------------------|
| Q43 | 77399 | CHANTILY PRINTING CO. |
| Q44 | 77399 | B.L.T. SERVICES CO. |

Photocopies of twenty checks drawn on the account of Dr. Abdullah M. Khouj, Special Account, further described as follows:

| Specimen | Check # | Pay to the Order of |
|----------|---------|---------------------|
| Q45 | 77950 | PAUL E PENNOYER & ASSOCIATES |
| Q46 | 77950 | BLUE LINE TRAVEL, INC. |
| Q47 | 78164 | BANK OF AMERICA |
| Q48 | 78164 | ZAAL, INCORPORATED |
| Q49 | 78106 | DCWASA |
| Q50 | 78106 | ZAAL, INCORPORATED |
| Q51 | 78183 | LOYAL SERVICE SYSTEMS |
| Q52 | 78183 | ZAAL, INCORPORATED |
| Q53 | 78268 | CNA |
| Q54 | 78268 | BLUE LINE TRAVEL, INC |
| Q55 | 78415 | CNA |
| Q56 | 78415 | BLT INCORPORATED |
| Q57 | 78458 | R.J.H |
| Q58 | 78458 | ZAAL, INCORPORATED |
| Q59 | 78511 | AYALA AND ASSOCIATES |
| Q60 | 78511 | ZAAL, INCORPORATED |
| Q61 | 78588 | BANK OF AMERICA |
| Q62 | 78588 | BLUE LINE TRAVEL |
| Q63 | 78736 | TRAVELERS |
| Q64 | 78736 | BLUE LINE INCORPORATED |

Photocopies of six checks drawn on Special Account, further described as follows:

| Specimen | Check # | Pay to the Order of |
|----------|---------|---------------------|
| Q65 | 78983 | WASHINGTON GAS |
| Q66 | 78983 | BLUE LINE TRAVEL, INC. |
| Q67 | 79002 | CNA |
| Q68 | 79002 | B.L.T INCORPORATED |
| Q69 | 79076 | PEPCO |
| Q70 | 79076 | ZAAL, INCORPORATED |

| NE1 | | Thirteen photocopies |

Page 2 of 4

080222002 QB LS

This report contains the results of the questioned document examinations.

**Results of Examinations:**

The typewriting imaged on specimens Q38 through Q42, Q53, Q55, Q63, Q65, Q67, and Q69 appears to have been prepared continuously. Images of a portion of the typewriting under a grid are enclosed for your investigative assistance.

The typewritten "BLUE LINE TRAVEL, INC." is not in alignment with the remaining typewriting imaged on specimen Q54. An image of a portion of the typewriting under a grid is enclosed for your investigative assistance.

The typewritten "BLT INCORPORATED" is not in alignment with the remaining typewriting imaged on specimen Q56. An image of a portion of the typewriting under a grid is enclosed for your investigative assistance.

The typewritten "BLUE LINE INCORPORATED" is not in alignment with the remaining typewriting imaged on specimen Q64. An image of a portion of the typewriting under a grid is enclosed for your investigative assistance.

The typewritten "BLUE LINE TRAVEL, INC." is not in alignment with the remaining typewriting imaged on specimen Q66. An image of a portion of the typewriting under a grid is enclosed for your investigative assistance.

The typewritten "*B.L.T INCORPORATED*" is not in alignment with the remaining typewriting imaged on specimen Q68. An image of a portion of the typewriting under a grid is enclosed for your investigative assistance.

The typewritten "*ZAAL, INCORPORATED*" is not in alignment with the remaining typewriting imaged on specimen Q70. An image of a portion of the typewriting under a grid is enclosed for your investigative assistance.

Due to the lack of clarity and detail as a result of the imaging process, no determination could be reached as to whether the typewriting imaged on specimens Q44, Q46, Q48, Q50, Q52, and Q57 through Q62 was prepared continuously.

**Remarks:**

The submitted specimens will be returned under separate cover.

Page 3 of 4

080222002 QB LS

For Official Use Only

A digital record of the evidence is retained.

No examinations were conducted on the NE1 items. Additionally, no examinations were conducted on specimens Q43, Q45, Q47, Q49, and Q51 as they are photocopies of specimens Q38 through Q42, respectively.

For questions about the content of this report, please contact examiner Ted Burkes at 703-632-7313.

For questions about the status of your submission, please contact Request Coordinator Kristi Oberbroeckling at 703-632-8327.

Ted M. Burkes
Questioned Documents Unit

This report contains the opinions/interpretations of the examiner(s) who issued the report.

Page 4 of 4
080222002 QB LS



CHANTILY PRINTING CC

OUSAND FOUR HUNDRED NIN

WATERMARKS ARE NOT PRESENT, DO NO



Q38

318E-WF -234808
08022002



## PAUL E PENNOYER & ASSOCIAT

## E THOUSAND NINE HUNDRED THI[

WATERMARKS ARE NOT PRESENT, DO NOT CAS[



Q39

318E-WF-234808
080222002



DCWASA

GHT HUNDRED FORTY

ERMARKS ARE NOT PRESENT, O

Q40

318E-WF-234808
08 0222002



BANK OF AMERICA

ND SIX HUNDRED SIXTY

ERMARKS ARE NOT PRESENT, DO NO

Q41

318E-WF-234808
080222002



LOYAL SERVICE SYSTEMS

Y NINE AND 995/100 DOLI

KS ARE NOT PRESENT, DO NOT CASH. S

Q42

318E-WF-234808

080222002



CNA

SIX AND 35/100 DOLLARS.

WATERMARKS ARE NOT PRESENT, DO NOT



Q53

318E-WF- 234808
080222002



**BLUE LINE TRAVEL, INC.**

**ND 35/100 DOLLARS.**

KB ARE NOT PRESENT, DO NOT CASH. SE

Q54

318E-WF-234808

080222802



CNA

JSAND SIX HUNDRED SE

TRMARKS ARE NOT PRESENT, OO

Q55

318E - WF - 234808
080222002

# BLT INCORPORATED

# SIX HUNDRED SEVENTEEN

...ARE NOT PRESENT, DO NOT CASH. █

PAYMENT ____

Q56

J18E-WF-234808
080222002



TRAVELERS

THOUSAND TWO HUNDR

IF CIRCULAR WATERMARKS AR

rica.

Q63

318E - WF- 234808
080222002



# BLUE LINE INCORPORATED

OUSAND TWO HUNDRED AND NO

IRCULAR WATERMARKS ARE NOT PRESENT.



Q64

318E-WF-234808
080222002



WASHINGTON GAS

THOUSAND SIX HUNDRED

RMARKS ARE NOT PRESENT DO NOT

Q65

318E-WF-234808
080222002



# BLUE LINE TRAVEL, INC.

## UR THOUSAND SIX HUNDRED AND

ATERMARKS ARE NOT PRESENT, DO NOT CASH.



EL, DARUI

Q66

318E-WF-234808
080222002



CNA



USAND SIX HUNDRED

WATERMARKS ARE NOT PRESEN



Q67

38E-WF-234808
080222002



**\*B.L.T INCORPORATED\***

**THOUSAND SIX HUNDRED AND NO/**

RCULAR WATERMARKS ARE NOT PRESENT. DO NOT C



Q68

318E-WF-234808

080222002



PEPCO

*THREE THOUSAND SIX HUNDRED

IF CIRCULAR WATERMARKS ARE NOT PRESENT,

erica

Q69

318E-WF-234808
080222002



★ZAAL, INCORPORATED★

E THOUSAND SIX HUNDRED FOUR

ULAR WATERMARKS ARE NOT PRESENT, DO NOT C



Q70

318E - WF - 234808

080222 002

## CURRICULUM VITAE
FBI Expert Witness



### Ted M. Burkes

Federal Bureau of Investigation
Questioned Documents Unit, Room 2158
2501 Investigation Parkway
Quantico, VA 22135
(703) 632-7277  FAX (703) 632-7278

## PROFESSIONAL EXPERIENCE

| | |
|---|---|
| Apr 1998 - present | **Forensic Document Examiner**<br>FBI Laboratory<br>Federal Bureau of Investigation<br>Washington, DC<br><br>Perform forensic examinations on document evidence submitted to the Questioned Documents Unit. Conduct comparisons and examinations on handwriting, hand printing, typewriting and physical characteristics of documents for the purpose of establishing origin or authenticity of the item(s) in question.  Provide testimony of examination results in federal, state, and local courts. |
| Nov 1991 - Apr 1998 | **Forensic Document Examiner**<br>Mississippi Crime Laboratory<br>Jackson, MS<br><br>Perform forensic examinations on document evidence submitted to the Questioned Documents Section. Conduct comparisons and examinations on handwriting, hand printing, typewriting and physical characteristics of documents for the purpose of establishing origin or authenticity of the item(s) in question.  Provide testimony of examination results in state and local courts. |

## EDUCATION

Bachelor of Science in Criminal Justice, University of Southern Mississippi, Hattiesburg, MS, 1978

## PROFESSIONAL TRAINING

Half-day "Lottery Ticket Manufacturing Workshop" at Scientific Games, Inc., sponsored by the Southeastern Association of Forensic Document Examiners, Atlanta, GA, May, 1992.

Half-day "Questioned Documents Reference and Typewriter Database Workshop" sponsored by the American Academy of Forensic Sciences, San Antonio, TX, February, 1994.

Two-day "Typewriter Classification and Identification" workshop sponsored by the Southeastern Association of Forensic Document Examiners, Atlanta, GA, May, 1995.

One-day "Imaging Documents Throughout the Spectrum" workshop sponsored by the American Academy of Forensic Sciences, Nashville, TN, February, 1996.

One-day "Canon Fax/Copier Workshop" sponsored by the Southeastern Association of Forensic Document Examiners, Atlanta, GA, April, 1996.

Three-day "Difficult and Complex Handwriting Examinations Seminar" sponsored by the American Board of Forensic Document Examiners, Burlingame, CA, January, 1997.

One-day "Examining Documents Throughout the Spectrum" workshop sponsored by the Southeastern Association of Forensic Document Examiners, Conyers, GA, April, 1997.

Ted M. Burkes
Page 2 of 3

Half-day "Difficult Handwriting Problems Workshop" sponsored by the American Society of Questioned Document Examiners, Scottsdale, AZ, August, 1997.

Half-day "Daubert Workshop" sponsored by the American Academy of Forensic Sciences, Reno, NV, February, 2000.

One-day "Paper Knowledge Field Seminar" sponsored by the Mid-Atlantic Association of Forensic Scientists and taught by The Mead Corporation, Williamsburg, VA, May, 2001.

One and a half day "Constructing a scientific paradigm for forensic handwriting identification evidence:  The use of blind testing to characterise specialists' skills" workshop sponsored by the Southeastern Association of Forensic Document Examiners, Atlanta, GA, April 2005.

One day "Adobe Photoshop:  A Tool for Document Examination" workshop sponsored by the Mid-Atlantic Association of Forensic Scientists, Pittsburgh, PA, May, 2005.

Two day "Disguised handwriting:  An interactive workshop" workshop sponsored by the Southeastern Association of Forensic Document Examiners, Atlanta, GA, April 2006.

Half-day "Disguised Writing: an Interactive Workshop" workshop sponsored by the European Academy of Forensic Science, Helsinki, Finland, June, 2006

Half-day "Likelihood Without Numbers - A Case Assessment and Interpretation(CAI) Model for Handwriting Comparison" workshop sponsored by the European Academy of Forensic Science, Helsinki, Finland, June, 2006

One day "Fine and Subtle Elements of Handwriting" workshop sponsored by the Southeastern Association of Forensic Document Examiners, Atlanta, GA, April 2007.

Half-day "Authenticating and Dating Methods Used in Forensic Document Examination" workshop sponsored by the American Society of Questioned Document Examiners, Boulder, CO, August, 2007.

Half-day "Indentation Development - In Theory and In Practice" workshop sponsored by the American Society of Questioned Document Examiners, Boulder, CO, August, 2007.

Half-day "Examination of Documents by Analyzing the Paper" workshop sponsored by the American Society of Questioned Document Examiners, Boulder, CO, August, 2007.

Toured several plants and factories relating to Forensic Document Examinations, since 1992.

Completed training programs at the FBI Laboratory (1998-2000) and the Mississippi Crime Laboratory (1991-1994), covering all facets of forensic document examination.


## PROFESSIONAL AFFILIATIONS

American Academy of Forensic Sciences, Member in the Questioned Documents Section
Mid-Atlantic Association of Forensic Scientists, Regular Member
Southeastern Association of Forensic Document Examiners, Regular Member
American Society for Testing and Materials, Member
Scientific Working Group for Forensic Document Examination (SWGDOC), Chair


## PRESENTATIONS

Paper titled "Pick A Card, Any Card", co-written and co-presented with Frank Hicks, at the Southeastern Association of Forensic Document Examiners meeting in Atlanta, GA, May, 1992.

Paper titled "Visualization Fluids: The Search for an Inexpensive Alternative to Chlorinated Fluorocarbons, An Initial Report" presented at the Southeastern Association of Forensic Document Examiners meeting in Atlanta, GA, May, 1993.

2

Paper titled "*Visualization Fluids: The Search for an Inexpensive Alternative to Chlorinated Fluorocarbons*" presented to the Questioned Document Section at the 46th Annual Meeting of the American Academy of Forensic Sciences in San Antonio, TX, February, 1994.

Paper titled "*Advances in the Imaging of Banking Documents*" presented to the Questioned Document Section at the 47th Annual Meeting of the American Academy of Forensic Sciences in Seattle, WA, February, 1995.

Paper titled "*Fraudulent UPC Labels*" presented at the Southeastern Association of Forensic Document Examiners meeting in Atlanta, GA, April, 1996.

Paper titled "*An Interesting Electrostatic Detection Apparatus Phenomenon*" presented to the Questioned Document Section at the 52nd Annual Meeting of the American Academy of Forensic Sciences in Reno, NV, February, 2000.

Paper titled "*An Interesting Electrostatic Detection Apparatus Phenomenon*" presented to the Questioned Document Section at the 27th Annual Meeting of the Mid-Atlantic Association of Forensic Scientists in Atlantic City, NJ, May, 2000.

Questioned Documents presentation to the Multidisciplinary Symposium on the Uses of Forensic Sciences, *Hate Crime? So Do We! The Tragedy of Hate Crime and the Response of the Forensic Sciences*, at the 53rd Annual Meeting of the American Academy of Forensic Sciences in Seattle, WA, February, 2001.

Paper titled "*A Statistical Inquiry into the Significance of Word Spacing*" presented to the Questioned Document Section at the 53rd Annual Meeting of the American Academy of Forensic Sciences in Seattle, WA, February, 2001.

Paper titled "*A Statistical Inquiry into the Significance of Word Spacing*" presented to the Questioned Document Section at the 28th Annual Meeting of the Mid-Atlantic Association of Forensic Scientists in Williamsburg, VA, May, 2001.

Questioned Documents presentation to the Multidisciplinary Symposium on the Uses of Forensic Sciences, *Who's What and Who's Who: Credentials and the Things We Do*, at the 54th Annual Meeting of the American Academy of Forensic Sciences in Atlanta, GA, February, 2002.

Presentation titled "SWGDOC - Where We're At and Where We're Going" presented to the Questioned Document Section at the 31st Annual Meeting of the Mid-Atlantic Association of Forensic Scientists in Wilmington, DE, April, 2004.

Presentation titled "An Interesting Printing Process Testimony" presented at the Southeastern Association of Forensic Document Examiners meeting in Atlanta, GA, April, 2005.

Presentation titled "An Interesting Printing Process Testimony" presented at the Mid-Atlantic Association of Forensic Scientists meeting in Pittsburgh, PA, May, 2005.

Presentation titled "Danger Ahead: An Update of SWGDOC and ASTM Activities" (prepared by Diana Harrison) presented at the Mid-Atlantic Association of Forensic Scientists meeting in Pittsburgh, PA, May, 2005.

Presentation titled "American Society for Testing and Materials (ASTM)" presented to the Document Examiners of the Washington Area meeting in Washington, DC, May 2005.

Presentation titled "Using PowerPoint for Court Charts" presented at the Southeastern Association of Forensic Document Examiners meeting in Atlanta, GA, April, 2006.

Presentation titled "Using PowerPoint for Court Charts" presented at the Mid-Atlantic Association of Forensic Scientists meeting in Richmond, VA, May, 2006.

Presentation on current challenges facing the discipline of Forensic Document Examination to a multi-disciplinary pre-European Academy of Forensic Science mini-forum, Vantaa, Finland, June, 2006.

Paper titled "Photocopiers, an Identification, and the Pretender" presented at the American Society of Questioned Document Examiners meeting in Boulder, CO, August, 2007.

**Ted M. Burkes**
**Page 4 of 3**

## PUBLICATIONS

"Visualization Fluids: The Search for an Inexpensive Alternative to Chlorinated Fluorocarbons" *Journal of Forensic Sciences*, JFSCA, Vol. 40, No. 2, March, 1995, pp. 242-244.

## CERTIFICATIONS

Federal Bureau of Investigation, 2000
Diplomate, American Board of Forensic Document Examiners, 1997

# CURRICULUM VITAE



### Marguerite McHenry
Federal Bureau of Investigation
Questioned Documents Unit, Room 2171
2501 Investigation Parkway
Quantico, VA 22135
(703) 632-7283

## PROFESSIONAL EXPERIENCE

**1994-present**

**Document Analyst-Forensic Examiner**
FBI Laboratory
Federal Bureau of Investigation
Washington, D.C.

Examine and compare handwriting, hand printing, typewriting and other documentary items for the purpose of establishing authenticity or origin. Present examination results both written and orally to include testimony in federal, state and local courts. Supervise various employees in the Questioned Documents Unit.

**1983-1994**

**Document Analyst**
FBI Laboratory
Federal Bureau of Investigation
Washington, D.C.

Receive, process, and conduct preliminary examinations on submitted evidence. Train other document analysts in the preparation of casework.

## EDUCATION

**1973-1974**

**The Pennsylvania State University**
**York Campus**

**1974 - 1977 Millersville State College**
Millersville, Pennsylvania
Bachelor of Arts
Major: Psychology

**1995-1998**

**The George Washington University**
Washington, D.C.
Master of Forensic Sciences

## PROFESSIONAL TRAINING

**1994**

Completed full-time training program at the FBI Laboratory covering all areas of forensic document examination, including classroom lectures, reading textbooks and journal articles, practical problems, written and oral examinations, and casework under the supervision of senior document examiners.

| 1995 | Printing Course, Rochester Institute of Technology |
| 1995 | Paper Course, Mead Paper Corporation |
| 1996 | Safety Features/Tamper Evident Products, 3M Corporation |
| 1997 | Polyethylene Products, Tennco Corporation |
| 1999 | Foster and Freeman VSC 2000 |
| 2000 | EEO Training for Supervisors |
| 2001 | Securink Corporation Ink presentation |
| 2002 | "Driver's License and Other Identification Documents," American Association of Motor Vehicles Administration |
| 2002 | Holocaust Museum tour |
| 2004 | Video Spectral Comparator 5000, Foster and Freeman |
| 2004 | Clandestine Writing, FBI |
| 2004 | VSC 5000 |
| 2004 | Digital Watermarking |
| 2004 | Check 21 |
| 2005 | Digital Watermarking |
| 2005 | Microsoft Access |
| 2007 | Tour of Appleton Carbonless Paper Mill in Spring Mill, Pennsylvania |
| 2007 | Mid-Atlantic Association of Forensic Scientists' annual meeting, Washington, D.C. |

## PROFESSIONAL AFFILIATIONS

| 1994 - present | Mid-Atlantic Association of Forensic Scientists |

**<u>EXHIBIT H</u>**

**Crim. No. 1:07-cr-00149-RCL**



U.S. Department of Justice

Jeffrey A. Taylor
United States Attorney

*District of Columbia*

---

*Judiciary Center*
*555 Fourth St., N.W.*
*Washington, D.C. 20530*

April 21, 2008

## VIA EMAIL AND US MAIL

Victoria Toensing
diGenova & Toensing, L.L.P.
1776 K Street, N.W.
Suite 737
Washington, D.C. 20006

Steven T. Webster, Esq.
Aaron S. Book, Esq.
Webster Book LLP
1 North King Street
Leesburg, VA 20176

Re:  United States v. Farzad Darui, Cr. No. 07-149 (RCL)

Dear Counsel:

The government is providing the following information in connection with the referenced case:

In addition to the testimony Mr. Burkes will provide consistent with the findings in the FBI Laboratory Reports and the opinion testimony indicated in the government's letter to the defense dated December 17, 2007, Mr. Burkes will provide expert opinion testimony concerning the possible reasons for any misalignment of the typed characters on the documents he reviewed. Specifically, Mr. Burkes will also provide expert opinion testimony explaining why a set of typed characters might not be in alignment with the other typed characters on a particular document where all of the characters were prepared using the same spacing. Mr. Burkes will also provide expert opinion testimony explaining different aspects of proportional spacing. Furthermore, he will opine that if the groups of characters on a typed document were prepared at different spacing settings, such as proportional spacing, the group of characters would appear to be out of alignment with the other typed text. Mr. Burkes has also concluded that the questioned text on the evidence that he examined is not consistent with proportional spacing. He may also

provide expert opinion testimony about whether the typewriters seized by the government at Blue Line Travel and the Islamic Center were set to type in proportional spacing.

In addition, the government intends to call FBI Computer Forensic Examiner Kimberly J. Klaiber, PhD., as a fact witness to provide testimony concerning her examination of the computers seized by the FBI pursuant to the various search warrants executed in connection with the investigation of this case. Special Agent Klaiber will provide testimony regarding the general use and functioning of computers and electronic media and the location of certain files that were found on the computers and electronic media seized by the FBI. We do not consider this testimony to require expert qualification pursuant to F.R.E. 702. But, the government is prepared to qualify Special Agent Klaiber as an expert in this area of computer forensics. For your convenience, the government has enclosed a copy of Special Agent Klaiber's curriculum vitae.

The government, again, formally requests all defense discovery materials pursuant to Fed. R. Crim. P. 16(b) including, but not limited to, any and all documents or tangible evidence which you intend to use at trial, any expert testimony you intend to use at trial, and any tests or examinations performed on behalf of the defendant.

The government specifically requests any and all documents or tangible evidence which you intend to use at trial relating to defendant Farzad Darui's allegations that he paid informants for information and concealed "payments to certain informers" from the Saudis. Defendant Farzad Darui's Brief in Opposition to Motion to Quash Subpoena to Abdullah Khouj filed November 7, 2007, (07-mc-00387-RCL, Dkt. No. 5 at 10). Please contact us if you have any questions or need additional information.

Sincerely yours,

JEFFREY A. TAYLOR
UNITED STATES ATTORNEY

By: _____

TEJPAL S. CHAWLA
RONALD W. SHARPE
Assistant United States Attorneys
(202) 353-2442 (Chawla)
(202) 353-9460 (Sharpe)

2

Kimberly J. Klaiber
Page 1 of 3

# CURRICULUM VITAE



## Kimberly J. Klaiber, PhD

Federal Bureau of Investigation
Washington Field Office
Computer Analysis Response Team
Northern Virginia Resident Agency
9325 Discovery Boulevard
Manassas, Virginia  20109
PHONE: 703-686-6877
FAX: 703-686-6864

## PROFESSIONAL EXPERIENCE

**Feb 2007 - present**

**Computer Forensic Examiner/Special Agent**
Federal Bureau of Investigation
Computer Analysis Response Team (CART)
Washington, D.C.

Conduct forensic examinations of digital evidence, as dictated by a documented quality assurance program and in adherence to standard operating procedures; participate in search and seizure operations.

**July 2001 – Feb 2007**

**Special Agent**
Federal Bureau of Investigation
Washington, D.C.

Conducted criminal investigations involving a wide variety of federal violations to include Violent Crimes, Street Gangs, Crimes Against Children, Foreign Counterintelligence, and Domestic Terrorism.

**Dec 1998 – July 2001**

**Supervisory Special Agent**
FBI Laboratory
Federal Bureau of Investigation
Hazardous Materials Response Unit
FBI Academy
Quantico, Virginia

Acted as Chemistry Program Manager, supervised and trained unit scientists, coordinated and participated in the FBI's response to terrorism cases involving Chemical, Biological, and Nuclear Weapons, and participated in Research & Development activities.

**Oct 1995 – Dec 1998**

**Special Agent**
Federal Bureau of Investigation
Chicago, Illinois

Conducted criminal investigations involving a wide variety of federal violations to include Violent Crimes, Street Gangs, Drug Trafficking, and Property Crimes.

**June 1995 – Oct 1995**

**Special Agent Trainee**
FBI Academy
Quantico, Virginia

**Kimberly J. Klaiber**
**Page 2 of 3**

| | |
|---|---|
| May 1994 – May 1995 | **Senior Research Associate**<br>Arthur G. James Cancer Hospital<br>Ohio State University<br>Columbus, Ohio<br><br>Conducted research activities, supervised and trained Research Assistant, and managed laboratory. |
| Oct 1991 – May 1994 | **Senior Research Associate**<br>The Wexner Research Institute<br>Children's Hospital<br>Columbus, Ohio<br><br>Conducted research activities and managed laboratory. |

## EDUCATION

| | |
|---|---|
| Sept 1986 – Oct 1991 | **Brandeis University**<br>Waltham, Massachusetts<br>Doctorate of Philosophy in Biochemistry |
| Sept 1982 – June 1986 | **Ohio University**<br>Athens, Ohio<br>Bachelor of Science in Chemistry<br>Magna Cum Laude |

## PROFESSIONAL TRAINING

| | |
|---|---|
| Nov 2007 | *FBI Basic Wintel Certification Training Practicals*, Stafford, VA (5 days) |
| Sept 2007 | *Network + Certification Class*, New Horizons, McLean, VA (3 days) |
| Aug 2007 | *FTK Boot Camp*, Access Data, Harrisonburg, VA (3 days) |
| April 2007 | *Basic Data Recovery and Analysis.* National White Collar Crime Center, Baltimore, MD (4 days) |
| March 2007 | *A+ Certification Class*, Kentucky Regional Computer Forensic Laboratory, Louisville, KY (10 days) |

## CERTIFICATIONS & AWARDS

| | |
|---|---|
| April 2008 | FBI CART Forensic Examiner Certification |
| March 2008 | *Net+ Certification* – CompTIA |
| June 2007 | *A+ Certification* – CompTIA |
| April 2007 | *BDRA Certification* – National White Collar Crime Center |
| March 2007 | 2007 Public Service Award – United States Attorney's Office, Eastern District of Virginia |
| Aug 2006 | Time Off Award – FBI |
| Nov 2003 | On the Spot Award – FBI |

**Kimberly J. Klaiber**
**Page 3 of 3**

Feb 2000        Letter of Commendation – FBI

Jan 2000        Incentive Award – FBI

March 1998      Incentive Award – FBI

## __EXHIBIT I__

## Crim. No. 1:07-cr-00149-RCL

# **EXHIBIT I**

## **Crim. No. 1:07-cr-00149-RCL**

FD-302 (Rev. 10-6-95)

- 1 -

**FEDERAL BUREAU OF INVESTIGATION**

Date of transcription    11/30/2006

**Computer Analysis Response Team**
**Report of Examination**

Included herein are the results of a digital forensic examination performed by a Federal Bureau of Investigation (FBI) Computer Analysis Response Team (CART) certified forensic examiner (FE).

**Case Reference:** 196D-WF-234808, CART Submission ID 39006

**Specimens:**

| | | |
|---|---|---|
| QWF61 | 1B61 | Dell Dimension 300 Desktop computer, serial number FLK2V61 |
| QWF61_1 | 1B61 | 80GB Maxtor DiamondMax Plus 9 hard disk drive, serial number Y22ATJ8C |
| QWF63 | 1B63 | Compaq Presario SR1110NX computer, serial number MXM431019X |
| QWF63_1 | 1B63 | 40GB Western Digiral hard disk drive, serial number WCAJA2295151 |

**Request:**

Special Agent (SA) Brian L. Crews of WFO squad CR-13 requested CART to image evidence items 1B61 and 1B63 so that they could be returned to the owner of the computers.

**Summary:**

CART made two image copies of evidence items 1B61 and 1B63. All original evidence items were returned to the Northern Virginia Resident Agency (NVRA) evidence control center. All derivative evidence items were submitted to the NVRA evidence control center.

Investigation on    11/30/2006    at  Falls Church, Virginia

File #  196D-WF-234808, 196D-WF-234808-CART        Date dictated

by    SA Steven W. Meckl

This document contains neither recommendations nor conclusions of the FBI. It is the property of the FBI and is loaned to your agency; it and its contents are not to be distributed outside your agency.

-52-

D-302a (Rev. 10-6-95)

196D-WF-234808, 196D-WF-234808-CART

Continuation of FD-302 of _____ , On 11/30/2006 , Page ___2___

**Derivative Evidence:**

DEWF61                    400GB Maxtor model 6H400R0 hard disk drive,
                          serial number H80LYYTH, containing images of
                          QWF61_1 and QWF63_1

DEWF61_1                  160GB Western Digital hard disk drive,
                          serial number WCAL95973024, containing a
                          second copy of all image files on DEWF61

**Examination:**

        The specimens submitted were visually examined.  Original
specimens were imaged using forensic procedures that preclude any
writing to the item.  The destination hard drive was verified as
erased before the capture of the image.

        A computationally unique digital hash value (MD5) was
calculated for the original specimens and for destination digital
media that contain the image of the specimens.  The calculation
results matched, thus verifying the integrity of the images.

**Evidence Disposition:**

        The original evidence items were returned to and
derivative evidence items were submitted to the WFO evidence
control center at the Northern Virginia Resident Agency.

**Administrative:**

        The evidence identification numbers used in this exam
differ from the numbers assigned to the evidence items in the
report of items seized (FD-302 dated 10/12/2006).  Item QWF61 in
this report refers to the same computer as item QWF7 in the
previous report.  Item QWF63 in this report refers to the same
computer as QWF3 in the previous report.

**<u>EXHIBIT J</u>**

**Crim. No. 1:07-cr-00149-RCL**

FD-302 (Rev. 10-6-95)

- 1 -

**FEDERAL BUREAU OF INVESTIGATION**

Date of transcription    12/06/2006

**Computer Analysis Response Team
Report of Examination**

Included herein are the results of a digital forensic examination performed by a Federal Bureau of Investigation (FBI) Computer Analysis Response Team (CART) forensic examiner in training (FET) under the supervision of a certified forensic examiner (FE).

**Case Reference:** 196D-WF-234808, CART Submission ID 39396

**Specimens:**

| | | |
|---|---|---|
| QWF62 | 1B62 | HP Pavilion 500 Computer, S/N: MX311S6627 |
| QWF62_1 | 1B62 | 60GB Seagate U6 ST360020A hard disk drive, S/N: 5EX0MFKX |
| QWF62_2 | 1B62 | Sony 3.5" Floppy Disk with "Back up will" written on the disk label |
| QWF64 | 1B64 | Compaq Presario SR1110NX computer, S/N: MXM43102ZW |
| QWF64_1 | 1B64 | Seagate ST340015A hard disk drive, S/N: 5LAF3BV7 |
| QWF65 | 1B65 | Compaq Presario SR1110NX computer, S/N: MXM43101B4 |
| QWF65_1 | 1B65 | 40 GB Western Digital WD400 WD Protege, S/N: WCAJA2289306 |
| QWF66 | 1B66 | Compaq Presario SR1110NX computer, S/N: MXM43101B0 |
| QWF66_1 | 1B66 | 40 GB Western Digital WD400 WD Protege, S/N: WCAJA2198374 |
| QWF89 | 1B89 | Dell Inspiron Laptop Computer, S/N: CPKJ981 |

Investigation on    12/06/2006    at    Falls Church, Virginia

File #    196D-WF-234808, 196D-WF-234808-CART    Date dictated

by    SA Matthew L. Goard, SA Steven W. Meckl

This document contains neither recommendations nor conclusions of the FBI. It is the property of the FBI and is loaned to your agency;

- 78

FD-302a (Rev. 10-6-95)

196D-WF-234808, 196D-WF-234808-CART

Continuation of FD-302 of _____ , On 12/06/2006 , Page __2__

| QWF89_1 | 1B89 | Fujitsu Model MHV2040AH Notebook hard drive, S/N: NT26T582KNSU |
| QWF89_2 | 1B89 | Fujifilm, CD-R, 700MB, 80MIN |
| QWF90 | 1B90 | IBM Aptiva Computer, S/N: 11591359016U0AF1VC3R |
| QWF90_1 | 1B90 | Maxtor N256 Model 91360D8, S/N: V8036JAA |

**Request:**

Special Agent (SA) Brian L. Crews of WFO squad CR-13 requested CART to image evidence items 1B62, 1B64, 1B65, 1B66, 1B89, and 1B90 so that they could be returned to the owner of the computers.

**Summary:**

CART made two image copies of evidence items 1B62, 1B64, 1B65, 1B66, 1B89, and 1B90. All original evidence items were returned to the Northern Virginia Resident Agency (NVRA) evidence control center. All derivative evidence items were submitted to the NVRA evidence control center.

**Derivative Evidence:**

| DEWF62 | 500GB Maxtor hard disk drive, S/N: H80LH95H, containing images of QWF62_1, QWF62_2, QWF64_1, QWF65_1, QWF66_1, QWF89_1, QWF89_2, and QWF90_1. |
| DEWF62_1 | 250GB Maxtor 6L250R0 hard disk drive, S/N: L50L5RGG, containing a second copy of all image files on DEWF62 |

**Examination:**

The specimens submitted were visually examined. Original specimens were imaged using forensic procedures that preclude any writing to the item. The destination hard drive was verified as erased before the capture of the image.

A computationally unique digital hash value (MD5) was calculated for the original specimens and for destination digital media

FD-302a (Rev. 10-6-95)

196D-WF-234808, 196D-WF-234808-CART

Continuation of FD-302 of _____ , On 12/06/2006 , Page 3

that contain the image of the specimens.  The calculation results matched, thus verifying the integrity of the images.

**Evidence Disposition:**

The original evidence items were returned to and derivative evidence items were submitted to the WFO evidence control center at the Northern Virginia Resident Agency.

**Administrative:**

The evidence identification numbers used in this exam differ from the numbers assigned to the evidence items in the report of items seized (FD-302 dated 10/12/2006).  The following table lists the old item number (from the 10/12/2006) corresponding to the item numbers used in this report.

New Item NumberOld Item Number
QWF62        QWF8
QWF64        QWF4
QWF65        QWF5
QWF66        QWF6
QWF89        QWF2
QWF90        QWF1

The new item numbers will be used for all further forensic examinations related to this case.

FD-JEN-00097

## **<u>EXHIBIT K</u>**

**Crim. No. 1:07-cr-00149-RCL**

FD-302 (Rev. 10-6-95)

- 1 -

### FEDERAL BUREAU OF INVESTIGATION

Date of transcription    04/29/2008

## COMPUTER ANALYSIS RESPONSE TEAM (CART)
### REPORT OF EXAMINATION

Included herein are the results of a digital forensic examination performed by Special Agent (SA) CART certified Forensic Examiner (FE) Kimberly J. Klaiber.  This examination has been performed in accordance with CART policies and procedures.

1.  **DATE OF REPORT:**                    04/29/2008

2.  **EXAMINER:**                          SA/FE Kimberly J. Klaiber

3.  **CASE REFERENCE:**  Case ID#:                    318E-WF-234808
                         CART Service Request(s):     #44620
                                                      #47264
                                                      #47265
                         CART Service Request Date(s):04/18/2007
                                                      08/08/2007
                                                      08/15/2007
                         CART Examination Dates:      05/09/2007-
                                                      04/29/2008

4.  **REQUESTS:**

        On 04/18/2007, in CART Service Request Submission ID #44620, SA Brian L. Crews requested that CART examine and upload previously imaged files (1B57, 1B119, and 1B122) in order to facilitate case agent review.

        On 08/08/2007, in CART Service Request Submission ID #47264, SA Michael McGillicuddy requested that CART image all floppy disks/CDs seized from searches (1B54, 1B59, 1B60, 1B67, 1B68, 1B97, 1B98, and 1B101) and prepare defense copies of imaged items for discovery proceedings.

        On 08/15/2007, in CART Service Request Submission ID #47265, SA Michael McGillicuddy requested that CART examine and upload files from seized floppy disks and CDs (1B59, 1B60, 1B67, 1B68, 1B97, 1B98, and 1B101) for case agent review.

Investigation on    04/29/2008    at  Manassas, Virginia

File #  318E-WF-234808; 318E-WF-234808-CART          Date dictated   N/A

by   SA/FE Kimberly J. Klaiber:kjk

This document contains neither recommendations nor conclusions of the FBI.  It is the property of the FBI and is loaned to your agency; it and its contents are not to be distributed outside your agency.

FD-302a (Rev. 10-6-95)

318E-WF-234808; 318E-WF-234808-CART

Continuation of FD-302 of ___ REPORT OF CART EXAMINATION ___ , On 04/29/2008 , Page ___ 2 ___

5.   **SUMMARY OF FINDINGS:**

Data contained in the submitted digital evidence was examined in accordance with SA McGillicuddy's request.  Findings included the following:

1.   Items of interest in 1B57 were located by SA McGillicuddy and provided to him in DEWF5.
2.   Items of interest in 1B122 were located by SA McGillicuddy and provided to him in DEWF7 and DEWF8.
3.   Items of interest in 1B56 were located by SA McGillicuddy and provided to him in DEWF9 and DEWF12.
4.   Items of interest in 1B130 were located by SA McGillicuddy and provided to him in DEWF10.
5.   Items of interest in 1B53 were located by SA McGillicuddy and provided to him in DEWF11.
6.   All loose media items were imaged for archive purposes and provided to SA McGillicuddy in DEWF3 and DEWF4.
7.   Defense Copies as requested by SA McGillicuddy were prepared and provided to him as DEWF2 and DEWF6.

6.   **EVIDENCE:**

The following digital media items were submitted for examination:

| QWF # or DEWF # | 1B # | BARCODE # | ITEM DESCRIPTION |
|---|---|---|---|
| DEWF61_1 | 1B119 | E03982291 | One (1) Western Digital Caviar HDD, 160 GB, Model Number WD1600BB-56GUC0, Serial Number WCAL95973024, containing copy of DEWF61 (images of HDDs from QWF61/1B61 and QWF63/1B63). |
| DEWF62_1 | 1B122 | E03982476 | One (1) Maxtor Quickview HDD, 250 GB, Model Number 6L250R0, Serial Number L50L5RGG, containing copy of DEWF62 (images of HDDs from QWF62_1/1B62, QWF64_1/1B64, QWF65_1/1B65, QWF66_1/1B66, QWF89_1/1B89, and QWF90_1/1B90). |

FD-302a (Rev. 10-6-95)

318E-WF-234808; 318E-WF-234808-CART

Continuation of FD-302 of    REPORT OF CART EXAMINATION    , On 04/29/2008 , Page    3

| | | | |
|---|---|---|---|
| DEWF2_1<br>DEWF7_1<br>DEWF11_1<br>DEWF17_1<br>DEWF40_1 | 1B57 | E03925935 | One (1) DVD containing images from items 1B2, 1B7, 1B11, 1B17, and 1B40. |
| DEWF62 | 1B123 | E03982477 | One (1) Maxtor DiamondMax 11 HDD, 500 GB, Model Number 6H500R0, Serial Number H80LH95H, containing images of HDDs from QWF62_1/1B62, QWF64_1/1B64, QWF65_1/1B65, QWF66_1/1B66, QWF89_1/1B89, and QWF90_1/1B90. |
| DEWF6_1 | 1B53 | E03982219 | One (1) Western Digital Caviar HDD, 160 GB, Model Number WD1600BB-00GUC0, Serial Number WCAL97078136, containing DEWF6_1, an image of QWF6_1 from QWF6/1B6. |
| DEWF1_1 | 1B55 | E03982221 | One (1) Maxtor DiamondMax 10 HDD, 200 GB, Model Number 6L200P0, Serial Number L41AW8TH, containing DEWF1_1, an image of QWF1_1 from QWF1/1B1. |
| DEWF20_1 | 1B56 | E03982222 | One (1) Maxtor DiamondMax 10 HDD, Model Number 6L080L0, Serial Number L223PYRG, containing DEWF20_1, an image of QWF20_1 from QWF20/1B20. |
| DEWF6_1 COPY | 1B126 | E04087860 | One (1) Western Digital Caviar HDD, 160 GB, Model Number WD1600BB-00GUC0, Serial Number WCAL97053983, containing DEWF6_1COPY, a copy of image of QWF6_1 from QWF6/1B6. |
| QWF59 | 1B59 | E03925946 | One (1) compact disk (CD), four (4) 3.5" floppy disks, and two (2) 5.25" floppy disks. |
| QWF60 | 1B60 | E03985947 | Eighty-nine (89) 3.5" floppy disks. |

FD-302a (Rev. 10-6-95)

318E-WF-234808; 318E-WF-234808-CART

Continuation of FD-302 of ___REPORT OF CART EXAMINATION___ , On 04/29/2008 , Page ___4___

| QWF67 | 1B67 | E03925954 | Twelve (12) CDs. |
|-------|------|-----------|------------------|
| QWF68 | 1B68 | E03925955 | One (1) CD and eighteen (18) 3.5" floppy disks. |
| QWF97 | 1B97 | E03982252 | Four (4) CDs and one (1) 3.5" floppy disk. |
| QWF98 | 1B98 | E03982253 | Fourteen (14) CDs. |
| QWF101 | 1B101 | E03982256 | Two (2) 3.5" floppy disks. |

The following submitted digital media items were examined:

| QWF # or DEWF # | 1B # | BARCODE # | ITEM DESCRIPTION |
|-----------------|------|-----------|------------------|
| DEWF61_1 | 1B119 | E03982291 | One (1) Western Digital Caviar HDD, 160 GB, Model Number WD1600BB-56GUC0, Serial Number WCAL95973024, containing copy of DEWF61 (images of HDDs from QWF61/1B61 and QWF63/1B63). |
| DEWF62_1 | 1B122 | E03982476 | One (1) Maxtor Quickview HDD, 250 GB, Model Number 6L250R0, Serial Number L50L5RGG, containing copy of DEWF62 (images of HDDs from QWF62_1/1B62, QWF64_1/1B64, QWF65_1/1B65, QWF66_1/1B66, QWF89_1/1B89, and QWF90_1/1B90) |
| DEWF2_1 DEWF7_1 DEWF11_1 DEWF17_1 DEWF40_1 | 1B57 | E03925935 | One (1) DVD containing images from items 1B2, 1B7, 1B11, 1B17, and 1B40. |
| DEWF6_1 | 1B53 | E03982219 | One (1) Western Digital Caviar HDD, 160 GB, Model Number WD1600BB-00GUC0, Serial Number WCAL97078136, containing DEWF6_1, an image of QWF6_1 from QWF6/1B6. |

FD-302a (Rev. 10-6-95)

318E-WF-234808; 318E-WF-234808-CART

Continuation of FD-302 of __REPORT OF CART EXAMINATION__ , On 04/29/2008 , Page __5__

| DEWF1_1 | 1B55 | E03982221 | One (1) Maxtor DiamondMax 10 HDD, 200 GB, Model Number 6L200P0, Serial Number L41AW8TH, containing DEWF1_1, containing DEWF1_1, an image of QWF1_1 from QWF1/1B1. |
|---------|------|-----------|-------------------------------------------------------------|
| DEWF20_1 | 1B56 | E03982222 | One (1) Maxtor DiamondMax 10 HDD, Model Number 6L080L0, Serial Number L223PYRG, containing DEWF20_1, an image of QWF20_1 from QWF20/1B20. |
| QWF59 | 1B59 | E03925946 | One (1) compact disk (CD), four (4) 3.5" floppy disks, and two (2) 5.25" floppy disks. |
| QWF60 | 1B60 | E03985947 | Eighty-nine (89) 3.5" floppy disks. |
| QWF67 | 1B67 | E03925954 | Twelve (12) CDs. |
| QWF68 | 1B68 | E03925955 | One (1) CD and eighteen (18) 3.5" floppy disks. |
| QWF97 | 1B97 | E03982252 | Four (4) CDs and one (1) 3.5" floppy disk. |
| QWF98 | 1B98 | E03982253 | Fourteen (14) CDs. |
| QWF101 | 1B101 | E03982256 | Two (2) 3.5" floppy disks. |

During the course of the examination, the following Derivative Evidence (DEWF) items were created:

| DEWF # | 1B # | BARCODE # | ITEM DESCRIPTION |
|--------|------|-----------|------------------|
| DEWF6_1 COPY | 1B131 | E04088043 | One (1) Maxtor DiamondMax 10 HDD, 200 GB, Model Number 6L200P0, Serial Number L41PPR1H, containing DEWF6_1COPY, a copy of 1B126. |

318E-WF-234808; 318E-WF-234808-CART

Continuation of FD-302 of _____REPORT OF CART EXAMINATION_____ , On 04/29/2008 , Page ___6___

| DEWF1_1 COPY | 1B128 | E04087863 | One (1) Western Digital Caviar HDD, 320 GB, Model Number WD3200JB-00KFA0, Serial Number WCAMR4554900, containing dd image of DEWF1_1/1B55. |
|---|---|---|---|
| DEWF20_1 COPY | 1B127 | E04087862 | One (1) Western Digital Caviar HDD, 160 GB, Model Number WD1600BB-55RDA0, Serial Number WCANME695983, containing dd image of DEWF20_1/1B56. |
| DEWF2 | 1B129 | E04087995 | Defense Copies of 1B55, 1B56, 1B57, and 1B126, as follows:<br>• One (1) Western Digital Caviar SE HDD, 320 GB, Model Number WD3200AAJB-00TYA0, Serial Number WCAPZ1632743, containing image of 1B55.<br>• One (1) Western Digital Caviar SE HDD, 160 GB, Model Number WD1600AAJB-00PVA0, Serial Number WMAP95327969, containing image of 1B56.<br>• One (1) Western Digital Caviar SE HDD, 320 GB, Model Number WD3200AAJB-00TYA0, Serial Number WMAPZ0936958, containing image of 1B126.<br>• One (1) DVD containing image of 1B57. |
| DEWF3 | 1B130 | E04088023 | One (1) CD containing images of selected loose media from 1B59, 1B60, 1B67, and 1B68. |
| DEWF4 | 1B132 | E04088609 | One (1) Western Digital Caviar HDD, 40 GB, Model Number WD400AB-32CMB0, Serial Number WMAAN2021273, containing selected loose media items from 1B67, 1B97, 1B98, and 1B101. |

318E-WF-234808; 318E-WF-234808-CART

Continuation of FD-302 of _____REPORT OF CART EXAMINATION_____ , On 04/29/2008 , Page ___7___

| DEWF5 | 1B134 | E04088699 | One (1) CD containing report of bookmarked items from 1B57. |
|---|---|---|---|
| DEWF6 | 1B133 | E04088672 | Defense Copies of 1B130 and 1B132:<br>• One (1) IBM Deskstar HDD, 40 GB, Model Number IC35L040AVVA07_0, Serial Number VNC204A2HSXSKA, containing image of 1B132,<br>• One (1) CD containing image of 1B130. |
| DEWF7 | 1B139 | E4252539 | One (1) CD containing report of bookmarked items from 1B122. |
| DEWF8 | 1B140 | E4252540 | One (1) CD containing report of bookmarked items (possibly privileged information) from 1B122. |
| DEWF9 | 1B138 | E4252538 | One (1) CD containing report of bookmarked items from 1B56. |
| DEWF10 | 1B137 | E4252525 | One (1) CD containing report of bookmarked items from 1B130. |
| DEWF11 | 1B136 | E4252497 | One (1) CD containing report of bookmarked items from 1B53. |
| DEWF12 | 1B141 | E4320202 | One (1) CD containing report of bookmarked items from 1B56. |

7. **EXAMINATION**:

The digital media items described above were examined for any data responsive to SA McGillicuddy's requests. The examinations in this matter were performed on image copies of the submitted media and not on the originally submitted digital media itself. The following processes were performed:

▸ Physical inventories of all examined items were performed, cataloged, and recorded.
▸ In instances where image copies were not previously prepared, physical image copies of examined items were

318E-WF-234808; 318E-WF-234808-CART

Continuation of FD-302 of ___REPORT OF CART EXAMINATION___ , On 04/29/2008 , Page ___8___

- completed using forensically clean media and successfully verified.
- Analyses of the image copies were conducted to retrieve all active and deleted files. The image copies were write-protected during analyses with software and hardware write blockers.
- File Listings of all items were created in Microsoft Access database format and included in each report.
- Reviews of file items retrieved during analyses were conducted. Items of interest were selected for inclusion in reports.
- Post-Exam Verifications of the examined image copies were successfully conducted, with the exception of item 1B53 which experienced technical difficulties. In addition, Post Exam Verification was not performed for 1B57 (DVD) or 1B130 (CD).
- Reports containing all selected items and associated exported files were created and burned to CDs.

## 8. EVIDENCE DISPOSITION:

At the conclusion of this examination, the original submitted evidence items were returned to the Evidence Control Center for custody and maintenance. Derivative evidence items were submitted to the Evidence Control Center as new 1B items for custody and maintenance.