UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA | ) ) ) | |
| v. | ) ) | Criminal No. 07-CR-0149 (RCL) |
| FARZAD DARUI, | ) ) ) | |
| Defendant. | ) ) | |

**GOVERNMENT'S OPPOSITION TO DEFENDANT
FARZAD DARUI'S MOTION FOR JUDGMENT OF ACQUITTAL**

The United States of America, by and through its counsel, the United States Attorney for the District of Columbia, respectfully opposes defendant Farzad Darui's Motion for Judgment of Acquittal. For the reasons discussed herein, defendant's motion lacks merit and should be denied.

I.   Background

Defendant was arraigned before this Court on February 29, 2008, on a nine-count Superseding Indictment charging him with five counts of mail fraud, two counts of interstate transportation of stolen property, one count of money laundering, and one count of first-degree theft. Defendant's jury trial began on May 6, 2008. Defendant moved for judgment of acquittal on the ground of insufficiency of the evidence after the government rested and again after all of the evidence was presented. The Court denied both motions. The jury began its deliberations on May 21, 2008. Following the jury's second note indicating it was deadlocked, the Court dismissed it and declared a mistrial on May 23, 2008.

On June 4, 2008, defendant filed a written motion for judgement of acquittal, pursuant to Federal Rule of Criminal Procedure 29. In his latest motion, defendant requests that the Court

reconsider its earlier rulings denying his motions for judgment of acquittal. Defendant argues that there was "no adequate proof of mail fraud because the mails were not used in furtherance of the alleged scheme to defraud." Def. Mtn at 1. But, defendant ignores the well-settled standard of review and applicable case law. The Court did not err in denying his motions for judgment of acquittal because there was more than ample evidence to prove beyond a reasonable doubt that defendant engaged in a scheme to defraud and caused mailings in furtherance of that scheme to occur.

II.   Standard of Review

The standard of review for motions of judgment of acquittal on the ground of sufficiency of the evidence is whether viewing the evidence in the light most favorable to the government, a rational trier of fact could have found the elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 319 (1979); United States v. Teffera, 985 F.2d 1082, 1085 (D.C. Cir. 1993); United States v. Edmonds, 103 F.3d 882, 824-825 (9th Cir. 1996); United States v. Hernandez, 105 F.3d 1330 (9th Cir. 1997). Where a defendant has presented evidence in his defense, the court reviews the entire record and not just the evidence presented in the government's case-in-chief." United States v. Dingle, 114 F.3d 307, 310 (D.C. Cir.), cert. denied, 522 U.S. 925 (1997). "'It is only where there is no evidence upon which a reasonable mind might fairly conclude guilty beyond a reasonable doubt that the judge may take the case from the jury.'" United States v. Fench, 470 F.2d 1234, 1242 (D.C. Cir. 1972) (citation omitted). In applying this standard, "no legal distinction is made between circumstantial evidence and direct evidence." Id. Finally, the government "need not exclude all reasonable hypothesis of innocence or lead inexorably to the conclusion that the defendant is guilty." United States v.

Teffera, 985 F.2d 1082, 1086 (D.C. Cir. 1993).

III.  Discussion

The evidence at trial established that defendant engaged in a fraudulent scheme to obtain money and property belonging to the Islamic Center which he used for his personal enrichment. Defendant did so by altering 142 checks written on Islamic Center checking accounts after those checks had been endorsed by the Director. In addition, defendant obtained and negotiated an additional 66 checks belonging to the Center that were payable to employees or contractors of the Center. The evidence clearly demonstrated that all 208 of these checks were deposited into bank accounts defendant controlled. The evidence further established that none of these deposits was known or authorized by the Director, or by the lawful payees listed on the checks.

Further evidence of the scheme demonstrated that defendant altered invoices and created fictitious invoices of various vendors of the Center which he used to induce the Director to authorize payments and sign checks on behalf of the Center. Trial evidence included defendant's application for a Post Office box, written in defendant's handwriting, and listed his home address as the mailing address for the Islamic Center special account. Evidence also demonstrated that defendant changed the mailing address of the Islamic Center special account without the knowledge or consent of the Director, or anyone else at the Center. These efforts by defendant caused Bank of America to mail monthly statements and original processed and negotiated checks, including checks defendant altered and deposited in accounts he controlled, to a United States Post Office box that defendant controlled. The Director testified that he was unaware of this change until discovery of the fraud and did not authorize such a change in address. During the trial, the government moved the Post Office box application into evidence,

and published it to the jury.

"There are two elements in mail fraud: (1) having devised or intending to devise a scheme to defraud (or to perform specified fraudulent acts), and (2) use of the mail for the purpose of executing, or attempting to execute, the scheme (or specified fraudulent acts)." Schmuck v. United States, 489 U.S. 705, 721 n. 10 (1989); see also Pereira v. United States, 347 U.S. 1, 8 (1954) ("The elements of the offense of mail fraud under . . . § 1341 are (1) a scheme to defraud, and (2) the mailing of a letter, etc., for the purpose of executing the scheme."); Laura A. Eilers & Harvey B. Silikovitz, Mail and Wire Fraud, 31 Am. Crim. L. Rev. 703, 704 (1994) (cases cited).

According to defendant:

> [N]o person other than Mr. Darui received [t]he Center's mail or had responsibility for reviewing bank statements. Thus, the use of the Post Office Box was not incident to an essential part of the alleged scheme and could not possibly have furthered the alleged scheme.

Def. Mtn. at 2. Essentially, defendant argues that because no one was likely to have intercepted the checks, even had defendant not caused them to be diverted to his Post Office box, his effort to cause them to be mailed somewhere other than to the Center was immaterial to his fraud scheme. This ignores the fact that the defendant's intent in changing the mailing address is not a relevant fact of whether the mailing itself was in furtherance of the scheme to defraud.

The use of the mails or interstate wire transmissions in furtherance of the scheme to defraud is an essential element of the crime of mail/wire fraud. United States v. Maze, 414 U.S. 395, 400 (1974); United States v. Kann, 323 U.S. 88, 95 (1944). The courts have taken a broad view of the nature of mailings or wire transmissions conducted in execution of a scheme to

defraud. United States v. Reid, 533 F.2d 1255, 1265 (D.C. Cir. 1976). Contrary to defendant's erroneous assertion, it is not necessary that the mailing or wire transmission be an essential part of the scheme. Schmuck v. United States, 489 U.S. 705, 710 (1989); United States v. Pereira, 347 U.S. 1, 8 (1954); Reid, 533 F.2d at 1264; United States v. Pollack, 534 F.2d at 971. Nor must the mailing or wire transmission, itself, necessarily contain false or inaccurate assertions. See Reid, 533 F.2d at 1263, 1265. All that is required is that the mailing or wire transmission "bear a sufficient connection to the realization of the scheme." Pollack, 534 F.2d at 971; United States v. Alston, 609 F.2d 531, 538-39 (D.C. Cir. 1979); Kann, 323 U.S. at 95; Schmuck, 489 U.S. at 711. Furthermore, use of the mails and interstate wire transmissions may be shown by either direct or circumstantial proof. United States v. Brackenridge, 590 F.2d 810, 811 (9th Cir.), cert. denied, 440 U.S. 985 (1979); Smith v. United States, 343 F.2d 539, 543-544 (5th Cir.), cert. denied, 382 U.S. 861 (1965).

    It is also a well-established principle of mail fraud law that use of the mails after money is obtained may nevertheless be "for the purpose of executing" the fraud. This proposition was considered by the Supreme Court in United States v. Sampson, 371 U.S. 75 (1962), where salesmen fraudulently obtained applications and advance payments from businessmen and then mailed acceptances to the defrauded victims to lull them into believing the services would be performed. The Court held that such a "lulling" use of the mails was for the purpose of executing the fraudulent scheme. Thus, post-purchase mailings or wire transmissions that are designed to lull the victim into a false sense of security, postpone inquiries or complaints, or make the transaction less suspect can be in furtherance of the scheme. United States v. Rogers, 9 F.3d 1025 (2d Cir. 1993), cert. denied, 513 U.S. 827 (1994). For example, mailings or wire

transmissions occurring after the perpetrator of fraud has obtained the fruits of the fraud that are intended to "lull the victims into a false sense of security" are deemed to be in furtherance of the scheme.  United States v. Maze, 414 U.S. at 403; United States v. Pollack, 534 F.2d 964, 971 (D.C. Cir. 1976); United States v. Perholtz, 842 F.2d 343, 365 (D.C. Cir.), cert. denied, 488 U.S. 821 (1988).

Based on the evidence presented at trial, the jury could have reasonably concluded that (1) defendant altered checks belonging to the Islamic Center; (2) altered invoices and created fictitious invoices which he used to induce the Director to authorize payments and sign checks on behalf of the Center; (3) deposited altered and stolen checks into bank accounts he controlled; and (4) changed the mailing address of the special account to a United States Post Office box.  In addition, the government presented evidence that strongly suggested that defendant fraudulently changed the address of the special account to a Post Office box to avoid the risk of discovery of the fraud by someone at the Center who may open mail containing a monthly bank statement and discover original processed and negotiated checks that had been altered by defendant.  Viewing this evidence in the light most favorable to the government with all reasonable inferences drawn therefrom, the evidence of mail fraud presented at trial was more than sufficient to convict defendant of each of the five counts of mail fraud.  United States v. Wahl, 290 F.3d 370, 374 (D.C. Cir. 2002).  See United States v. Young, 955 F.2d 99, 103 (1st Cir. 1992) (suggesting that jurors may make reasonable inferences based upon the evidence properly admitted at trial).

IV.     The Recent Supreme Court Holding in United States v. Santos Does Not Preclude the Prosecution of Money Laundering

In his motion, defendant argues that the Supreme Court's recent decision in United States v. Santos, __ U.S. __, 128 S.Ct 2020 (June 2, 2008) mandates this Court's dismissal of the money laundering charge here.  But, defendant's misapprehends the holding of Santos and, in any event, Santos provides no shelter for defendant's criminal conduct.

As a starting point, the government presented clear evidence that all of the money obtained by defendant was solely "profit."  Thus, Santos does not apply.

In Santos, four-Justice plurality of the Supreme Court wrote that an illegal lottery operator's payments to his winners and runners, using the *receipts* from his lottery operation, did not constitute financial transactions involving the *proceeds* of a specified unlawful activity. These four Justices agreed that the term "proceeds" as used in the money laundering statue, 18 U.S.C. § 1956(a)(1)(A)(I), means profits and not, as the government had argued, gross receipts.[1]

---

[1] The plurality noted that, absent a "profit" definition, the government could charge promotion money laundering in cases, like Mr. Santos', in which the alleged money laundering transaction was a "normal part" of the underlying SUA.  Id. at 2026-2028.  In such cases, according to the plurality, the money laundering charge may be said to "merge" with the proceeds-generating crime, so that a separate conviction for money laundering would be tantamount to a second conviction for the same offense.  Id. at 2026-2027.  In the plurality's view, a "profits" definition of "proceeds" eliminates this problem, because by definition profits consist of what remains after expenses a repaid.  Id. at 2027.  But, the plurality view may go much farther.  Rarely can a person who engages in a financial transaction with intent to promote an SUA be characterized as having engaged in a financial transaction involving profits of that SUA, because each payment made with the intent to promote the SUA can readily be charactered as an expense payment.  Thus, under the plurality's view, when Congress drafted an intent to promote prohibition into its anti-money laundering statute, Congress must have intended only to prohibit criminals from using proceeds of one SUA crime *to commit new crimes*.  But, what Congress wrote was a prohibition of SUA transactions conducted "with intent to promote the carrying on" of any SUA, not merely SUA transactions conducted "with intent to commit" a new SUA.

Four other Justices dissented from the plurality's view, agreeing that the word "proceeds" in the money laundering statute means "the total amount brought in" *i.e.*, the gross receipts of the underlying (SUA) offense. Id. at 2035-2045 (Alito, J., dissenting).

The plurality and dissenting opinions left the Court evenly divided between the view that "proceeds" means profits in all cases, and the view that "proceeds" means gross receipts in all cases. Justice Stevens' opinion, concurring in the judgment, provided the tie-breaking vote for the Santos decision. Disagreeing with both the plurality and the dissent, however, Justice Stevens took the view that "proceeds" may mean profits as applied to some SUAs and gross receipts as applied to others. 128 S. Ct. at 2031-2032 (Steven, J., concurring). In other words, he rejected both categorical approaches. He concluded that in a case like that involving Mr. Santos, where the SUA involved running a gambling operation, Congress intended SUA proceeds to mean SUA profits.

The general rule for ascertaining the holding of a case in which there is no majority opinion is that "the holding of the Court may be viewed as that position taken by those Members who concurred in the judgment[] on the narrowest grounds." Marks v. United States, 430 U.S. 188, 193 (1977) (quoting Gregg v. Georgia, 428 U.S. 153, 169 n .15 (1976)). In Santos, if there is a narrowest ground (given that Justice Stevens actually rejected the other Justices competing approaches to a consistent definition of proceeds), the "narrowest ground" appears to be that for purposes of an illegal gambling business, money laundering convictions require proof that prohibited financial transactions involved profits of the business. Thus, Santos should reach only those money laundering cases where the predicate specified unlawful activity (SUA) is the operation of an illegal gambling business in violation of 18 U.S.C. § 1955 (and arguably, only

gambling cases involving financial transactions charged under the intent to promote prong of the anti-money laundering statute). This case does not involve the "proceeds" from an illegal gambling business under Section 1955. Thus, there is no basis for defendant's assertion that <u>Santos</u> requires proof that the money laundering charge in this case required proof that the transaction involved profits of his mail fraud scheme. Nor does this case charge a prohibited intent to promote transaction.

In any event, at trial, the government's evidence clearly showed that <u>all</u> of the funds represented by the Islamic Center checks that defendant deposited into the Blue Line and Zaal checking accounts were stolen funds. In other words, the government's proof was that every penny of the funds represented by the 208 Islamic Center checks that defendant stole constituted "profits" to defendant and were indeed the illicit proceeds of the predicate SUA – the mail fraud. Although defendant has tried to maintain that he was only taking money that was owed to him, this ignores the clear standard applicable to motions of judgment of acquittal which requires that the court view the evidence in the light most favorable to the government. It would also improperly accept defendant's characterization of his plunder as repayment of a debt, which requires one to ignore the clear testimony of the Director who denied, unequivocally, that he ever gave defendant permission to deposit any one of the 208 questioned checks into accounts controlled by defendant. Thus, a reasonable juror could easily conclude based on the evidence presented that funds in the amount of $14,353.35 withdrawn and transferred from the Blue Line checking account to American Express via check number 6258 dated May 27, 2004, constituted

profits defendant derived from his mail fraud scheme (as alleged in Counts One through Five).[2]

Therefore, defendant's request that the Court dismiss Count Eight of the Superseding Indictment should be denied.

## CONCLUSION

WHEREFORE, for the reasons discussed herein, the government respectfully requests that defendant's Motion for Judgment of Acquittal be DENIED.

Respectfully submitted,

JEFFREY A. TAYLOR
UNITED STATES ATTORNEY

By:         /s/
Tejpal S. Chawla, D.C. Bar No. 464012
Ronald W. Sharpe, D.C. Bar. No. 434575
Assistant United States Attorneys
555 4th Street, NW, Room 5828
Washington, D.C. 20530
(202) 353-2442 (Chawla)
(202) 353-9460 (Sharpe)

---

[2] Compare United States v. Braxtonbrown-Smith, 278 F.3d 1348, 1353-1355 (D.C. Cir. 2002) (sufficient for government to show that the defendant withdrew funds from commingled account; strict tracing would be impossible given the fungible nature of money, and requiring such tracing would lead to nonsensical results).

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA | ) ) ) | |
| v. | ) ) | Criminal No. 07-CR-0149 (RCL) |
| FARZAD DARUI, | ) ) ) | |
| Defendant. | ) ) | |

## ORDER

After consideration of Defendant Farzad Darui's Motion for a Judgment of Acquittal (Dkt. No. 107), the Government's Opposition to Defendant Farzad Darui's Motion for Judgment of Acquittal, and the entire record herein, it is this _____ day of _____, 2008, hereby,

ORDERED, that Defendant Farzad Darui's Motion for a Judgment of Acquittal (Dkt. No. 107) is hereby DENIED.

_____            _____
DATE                                                                ROYCE C. LAMBERTH
                                                                              U.S. DISTRICT COURT JUDGE