UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES | ) | |
| | ) | |
| v. | ) | Crim. No. 1:07-cr-00149-RCL |
| | ) | |
| FARZAD DARUI, | ) | |
| | ) | |
| Defendant. | ) | |

**DEFENDANT FARZAD DARUI'S MOTION TO DISMISS SUPERSEDING
INDICTMENT AS VIOLATIVE OF THE DOUBLE JEOPARDY CLAUSE**

Defendant Farzad Darui, by counsel, moves this Court to dismiss all Counts of the

superseding indictment as retrial would violate the Double Jeopardy Clause of the Fifth

Amendment.

**STATEMENT OF FACTS**

On February 29, 2008, Mr. Darui was arraigned on nine counts in a superseding

indictment charging mail fraud, interstate transportation of stolen property, money

laundering, and theft in the first degree.  All charges arose from the same course of

conduct.  Jury selection began Monday, May 5, 2008.  Opening arguments began

Wednesday, May 7.  The government presented approximately twenty witnesses[1] and

over 240 exhibits comprising thousands of pages of financial records.  The government

completed its case-in-chief, after eight days, on Friday, May 16, 2008.

---

[1] Counsel had waited to file this motion until four different court reporters provided
transcripts of the jury deliberations.  After numerous telephone calls and emails, counsel
received the Thursday and Friday jury deliberations after close of business on July 2,
2008.  All transcripts were requested on Wednesday, May 28 on an expedited basis.
Counsel has not yet received the full trial transcript so the number of government
witnesses is an estimate.

Over the course of its three-day case, the defense presented four witnesses and over one hundred exhibits.  The defense theory was that the government's main witness, Dr. Abdullah Khouj, had authorized or consented to Mr. Darui's cashing or depositing all the checks at issue for two reasons: (1) they were repayment of a debt for Mr. Darui's housing and feeding Dr. Khouj's mistresses, or (2) they were compensation for various Islamic Center employees or contractors, the latter being mostly security.

## Wednesday, May 21, 2008

Jury deliberations began Wednesday, May 21, 2008, at 2:13 p.m.  At 4:02 p.m., the jury sent a note: [2]

> We received evidence marked Proffered, but not in evidence.  Should we consider/view.  Please advise.  Thank you in advance.

Accompanying the note was an exhibit with a coversheet stating "Proffered, but not in evidence."  After proceedings established that the exhibit had been mistakenly sent to the jury but they had not viewed it, the jury resumed deliberations at 4:35 p.m.

## Thursday, May 22, 2008

Jury deliberations began at 9:30 a.m. the next day, Thursday, May 22.  At 10:50 a.m., the jury sent a note inquiring of the Court:

> If we find the defendant not guilty on count 9 (theft) Must we find him not guilty on all other counts.  Please Advise.

The Court responded with a portion of the originally-issued instructions:

> As I stated on pages 29-30 of my instructions, "[t]he fact that you may find the defendant guilty or not guilty on any one count of the indictment should not influence your verdict with respect to any other count of the indictment."

---

[2] The full text of all the jury notes and Court's written responses are at Appendix A.  The May 22 transcript is Appendix B; the May 23 transcript is Appendix C.

Fifteen minutes later, at 11:05 a.m., the jury sent another note:

> At this juncture we believe that we are hung.  It is impossible for us to agree on any parts of the counts that we have reviewed thus far.  We have been unable to agree on any one count.

Over defendant's objection (App. B, pp. 4-6), the Court issued a charge invoking the language of *United States v. Thomas,* 449 F.2d 1177, 1185 at n.45 (D.C. Cir. 1971). (App. B, pp. 7-9).

The jury resumed its morning deliberations.  After an hour lunch, at 3:22 p.m., the jury sent the first note expressing confusion on the issue of consent, requesting the Court to:

> Please further clarify (outline) consent.   Final sentence of p28, p29 "Final Jury Instructions."

Because neither counsel nor the Court could discern exactly what the jury was requesting, except that it was about "consent," the jury was called into court and asked to "work out a better explanation of what it is that is unclear . . . ."  The jury was then excused for the day at 4:38 p.m.  (App. B, p. 11).

### Friday, May 23, 2008

Because of one juror's medical appointment, deliberations began on May 23 at 10:30 a.m.[3]  Beginning at 11 a.m. four jury notes came within 15 minutes.  The first three specifically asked about consent and its relevance to how the jury should reach a verdict. The fourth was related to the three questions in that it asked whether "common sense should override a lack of evidence."

---

[3] It was the Friday prior to the Memorial Day weekend.

Notwithstanding the jury's asking four specific questions about consent, the Court refused to amplify or provide specific guidance on consent, stating:

> [T]he consent instruction must be considered along with the authorization instruction and the good faith instruction, and all of the Court's other instructions.

(App. A, p.2).

By this time, the confusion and division in the jury room had apparently grown so intense that one juror, at 11:55 a.m., requested to be excused and replaced. She accused her colleagues of misconduct by "not doing anything in accordance with evidence, testimony, instructions or otherwise." (App. A, p. 2).

Recognizing that some jurors were having difficulty with "consent" and were refusing to follow the Court's instructions, defense counsel requested the Court inform the jurors they "may not ignore or refuse to follow any particular instruction and/or it is their duty to accept the law as the Court has instructed you . . . ." (App. C, p. 11). The Court refused, stating he had given that "instruction in the instructions." (App. C, p.11).

At 12:30 p.m., the jury issued its fifth and final specific plea for further instruction on the consent issue:

> If a portion of the jury believes the defendant to be guilty regardless of consent on any/all charges. Are there any further instructions that you could provide us?

The Court responded:

> In response to your note signed at 12:30 p.m., all jurors must fairly and impartially consider all of the evidence in light of all the Court's instructions.

After an hour lunch, at 2:45 p.m., the jury indicated that it was in "complete and total disagreement on all counts" and requested to be excused.

After the fifth and final note from the jury, defense again and again pointed out the need inform the jurors it was "their duty to follow the instructions of law. . . ."  (App. C, pp. 14 and 16).  The Court made clear it would not do so.  Counsel then offered an alternative: question the jury foreman to determine whether the jury was, in fact, hopelessly deadlocked or whether there were jurors who were refusing to follow the Court's instructions.  The Court rejected that proposal.  (App. C, pp. 15-18).

## ISSUE:

**WHETHER THERE WAS MANIFEST NECESSITY TO DECLARE A MISTRIAL WHERE AFTER A TEN AND ONE-HALF DAY TRIAL, WHICH INCLUDED APPROXIMATELY TWO DOZEN WITNESSES AND THOUSANDS OF PAGES OF FINANCIAL DOCUMENTS, THE COURT REFUSED TO PROVIDE CLARIFICATION OR AMPLIFICATION ABOUT THE CONSENT INSTRUCTION DESPITE FIVE REQUESTS BY THE JURY TO DO SO AND ONE JUROR COMPLAINING THAT OTHER JURORS WERE NOT FOLLOWING INSTRUCTIONS, AND WHERE THE COURT REFUSED TO TAKE ANY STEPS TO CONSIDER ALTERNATIVES TO CEASING DELIBERATIONS OR TO DETERMINE WHETHER THE JURY WAS, IN FACT, HOPELESSLY DEADLOCKED.**

## ARGUMENT

The Double Jeopardy Clause prohibits retrial where the decision to declare a mistrial was not compelled by "manifest necessity."  *United States v. Perez*, 22 U.S. (9 Wheat.) 579, 580 (1824).  Among the factors an appellate court will consider in determining the "manifest necessity" of a judge's decision to declare a mistrial are the "length and complexity of the trial," the "amount of time that the jury has deliberated," and "obvious and adequate alternatives" to a mistrial not explored by the Court.  *United States v. Razmilovic*, 507 F.3d 130, 138 (2d Cir. 2007) (internal citations omitted).  *See also United States v. Jorn*, 400 U.S. 470, 487 (1971) (plurality opinion); *United States v.*

*Pierce*, 593 F.2d 415, 417 (1st Cir. 1979); *United States v. McKoy*, 591 F.2d 218, 222 (3d Cir. 1979); *Harris v. Young*, 607 F.2d 1081, 1086 at n. 4 (4th Cir. 1979).

   The trial included ten and one-half days of voluminous evidence and testimony from approximately two dozen fact and expert witnesses. The Court had told the jury the trial would last a couple of weeks, three at most. The Friday of the mistrial completed the third full week the jury had been either in jury selection, hearing argument or testimony, or deliberating. The Memorial Day weekend loomed. A portion of the government's thousands of pages of financial records evidence filled over one dozen large three-ring binders. The jury deliberated for two days[4] (including breaks and waiting for questions to be answered), a time period that could not have possibly permitted perusal let alone thoughtful consideration of and deliberations about the massive documentary and testimonial evidence.

   The Court declared a mistrial after the jury had specifically and repeatedly–five times within four hours of deliberation–requested clarification of the jury instruction regarding consent. Moreover, one juror had complained the jury was not following the Court's instructions or reviewing the evidence. In this context, there were alternatives to declaring a mistrial: (1) provide the jury clarification and elaboration on the issue of consent, at the least, upon learning jurors were not following the law, reinstruct them it was their duty to do so, and/or (2) talk with the jury foreman.

   "In a trial by jury in a federal court, the judge is not a mere moderator, but is the governor of the trial for the purpose of assuring its proper conduct and of determining questions of law." *Quercia v. United States,* 289 U.S. 466, 469 (1933). Although a trial

judge must tread carefully in responding to jury questions so as not to intrude upon the jury's purview as the trier of fact, it is wholly proper and indeed the judge's responsibility to provide guidance to juries on legal questions. *United States v. Ayeni*, 374 F.3d 1313, 1320 (D.C. Cir. 2004) (Tatel, J., concurring). The jury is "not expected to divine the law for themselves. . . ." *Id*. "When a jury makes explicit its difficulties a trial judge should clear them away with concrete accuracy," and should not be "cursory" in its responses to requests for supplemental instructions on legal issues. *Bollenbach v. United States*, 326 U.S. 607, 613 (1946).

Five decades ago the D.C. Circuit reversed a murder conviction, finding error where the trial court refused to provide a supplemental instruction regarding the insanity defense. *Wright v. United States*, 250 F.2d 4, 11-13 (D.C. Cir. 1957) (*en banc*). The appeals court found that "where there is latent ambiguity in the case," *id*. at 13, and where "a juror has indicated by a question that the general instruction, as given, is ambiguous, confusing, or inadequate," *id*. at 12, it was reversible error to refuse a supplemental instruction. *Id*. at 11. "[I]t is the duty of the judge to fill in the sketch, as may be appropriate on the basis of the evidence, to provide the jury with light and guidance in the performance of its difficult task." *Id*.

In *Wright*, <u>one</u> juror asked <u>once</u> for the clarification. In Mr. Darui's trial, the jury asked five times and one juror complained the jury was not following the Court's instructions.

This Circuit again reversed a felony murder conviction where the Court refused to

---

[4] Deliberations began Wednesday at 2:13 p.m. and the jury wrote its final note Friday at 2:45 p.m.

"do anything more than reread the statute and the standard instruction despite cogent requests from the jury and both government and defense counsel." *United States v. Boldon*, 514 F.2d 1301, 1308 (D.C. Cir. 1975).

Here, each time there was a request from the jury about consent, Mr. Darui's counsel requested the Court provide more detail on the consent issue or remind jurors it was their duty to follow the law. After the final note from the jury on Friday afternoon, defense again and again pointed out the need inform the jurors it was "their duty to follow the instructions of law. . . ." (App. C, pp. 14 and 16). The Court made clear it would not do so. Counsel then offered an alternative: question the jury foreman to determine whether the jury was, in fact, hopelessly deadlocked or whether there were jurors who were refusing to follow the Court's instructions. If there were three or fewer, the alternates could replace them. *See* Fed.R. Crim. P. 23(b)(3) (stating that "[a]fter the jury has retired to deliberate, the court may permit a jury of 11 persons to return a verdict, even without a stipulation by the parties, if the court finds good cause to excuse a juror"). "'Just cause exists to dismiss a juror when that juror refuses to apply the law or to follow the court's instructions.'" *United States v. Polar*, 369 F.3d 1248, 1253 (11th Cir. 2004) (citation omitted). *See also United States v. Simmons*, 431 F. Supp. 2d 38, 61 (D.D.C. 2006) (stating that case law is clear that good cause exists to dismiss juror when a juror refuses to participate in deliberations or to follow the law). The Court rejected that proposal. (App. C, pp.15-18).

The jury clearly and repeatedly expressed it was confused and divided about consent, an issue crucial to Mr. Darui's defense. When faced with such clear communication from the jury that the source of disagreement was the legal issue of

8

consent, the Court had an obvious alternative to declaring a mistrial: it could have issued

a supplemental instruction "clear[ing the difficulties] away with concrete accuracy."

*Bollenbach v. United States*, 326 U.S. at 613.  It could have reinstructed the jurors it was

their duty to follow the law as instructed.  The Court had a duty to provide further

guidance.  Had it done so, deliberations could have continued.  The Court's declaration of

a mistrial was premature and not compelled by "manifest necessity."

## <u>CONCLUSION</u>

Because the jury had deliberated only two days after a lengthy trial with

thousands of documents, and five times expressed its need to have the consent issue

clarified, which the Court refused as it similarly rejected defense counsel's

recommendations for continuing deliberations, there was no manifest necessity for a

mistrial.  Mr. Darui's retrial would violate the Double Jeopardy Clause; therefore, the

superseding indictment should be dismissed.

FARZAD DARUI


By: /s/ Victoria Toensing
Victoria Toensing (DC Bar No. 304980)
diGENOVA & TOENSING, LLP
1776 K Street NW, Suite 737
Washington, DC 20006
(202) 289-7701
(202) 289-7706 (fax)
Counsel for Defendant


By: /s/ Aaron S. Book
Aaron S. Book (DC Bar No. 490815)
Steven T. Webster (admitted *pro hac vice*)
1 North King Street
Leesburg, VA 20176
(703) 779-8229
(703) 991-9178 (fax)

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on July 3, 2008, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will then send a notification of such filing (NEF) to the following:

Ronald W. Sharpe,
Tejpal S. Chawla
Assistant United States Attorneys
555 Fourth Street, NW, Room 8232
Washington, D.C. 20530


<u>/s/ Victoria Toensing</u>
Victoria Toensing

# APPENDIX A

## COMMUNICATIONS BETWEEN THE JURY AND THE COURT

### Wednesday, May 21, 2008

**4:02 p.m.** "We received evidence marked 'Proffered, but not in evidence. Should we consider/view. Please advise. Thank you in advance."

**Court's Response, 4:35 p.m.** "The evidence marked 'proffered, but not in evidence' has been retained by the Court. You are not to consider this evidence. The Court understands that you did not view this evidence. If this is incorrect, please advise me."

### Thursday, May 22, 2008

**10:50 a.m.** "If we find the defendant not guilty on count 9 (theft) Must we find him not guilty on all other counts. Please Advise."

**Court's Response, 10:10 a.m.** "This note is in response to your note as to whether you must find the defendant not guilty on all counts if you find him not guilty of Count 9. As I stated on pages 29-30 of my instructions, '[t]he fact that you may find the defendant guilty or not guilty on any one count of the indictment should not influence your verdict with respect to any other count of the indictment.'"

**11:05 a.m.** "At this juncture we believe that we are hung. It is impossible for us to agree on any parts of the counts that we have reviewed thus far. We have been unable to agree on any one count."

The court responded with a charge invoking the language of *United States v. Thomas*, 449 F.2d 1177, 1185 at n.45 (D.C. Cir. 1971)

**3:22 p.m.** "Please further clarify (outline) consent. Final sentence of p 28, p 29 'Final Jury Instructions.'"

### Friday, May 23, 2008

**11:00 a.m.** "If we find that consent was given, must we fine him NOT guilty on all other charges." [The jury then quotes from two pages of the jury instructions as follows:]

"P. 28-29  Evidence has been introduced that the complainant may have consented to the defendants actions. If the complainant voluntarily consented to the actions, or the defendant reasonably believed the complainant was consenting, the crimes charged in the superceding [*sic*] indictment have not been committed. The complainant may express consent in words, or the complainant's actions or inaction may imply consent. The gov. must prove beyond a reasonable doubt that the complainant did not consent to the acts, or the complainant's consent was not voluntary. If the government fails to prove there was no voluntary consent, you must find the defendant not guilty."

**Court's Response, 12:25 p.m.** "As to your 11:00 note, the consent instruction must be considered along with the authorization instruction and the good faith instruction, and all of the Court's other instructions."

**11:05 a.m.**  "Does the language on p 28/29 addressing [*sic*] consent and authorization.  Does it only apply to count (9) or any of the other charges?"

**Court's Response, 12:25 p.m.**  "As to your 11:05 note, the language in the consent and authorization instructions applies to all of the charges."

**11:06 a.m.**  "If we find the funds were indeed stolen; why is consent a factor?"

**Court's Response, 12:25 p.m.**  "As to your 11:06 note, if consent was given, the money was not wrongfully obtained under the theft statute set forth on page 25 of the instructions."

**11:15 a.m.**  "Should common sense override a lack of evidence?"

**Court's Response, 12:25 p.m.**  "As to your 11:15 note, you must consider all of the evidence, or lack thereof, in the light of your experience in life, and in accordance with all of the Court's instructions to decide whether the government has proven that the defendant is guilty beyond a reasonable doubt of each count charged."

**11:55 a.m.**  "Juror 1424.  I would like to call in one of the other alternates to replace me.  We are not doing anything in accordance with evidence, testimony, instructions or otherwise.  We have not begun the process to do the work to determine a unanamous [*sic*] vote.  Thank you."

**Court's Response, 12:25 p.m.**  "Finally, as to your 11:55 note, an alternate juror can only be seated if a medical or other emergency causes a jury to be replaced.  Disagreement with other jurors cannot cause a juror to be replaced."

**12:30 p.m.**  "If a portion of the jury believes the defendant to be guilty regardless of the consent on any/all charges.  Are there further instructions that you could provide us?"

**Court's response, 2:15 p.m.**  "In response to your note signed at 12:30 p.m., all jurors must fairly and impartially consider all of the evidence in light of all of the Court's instructions."

**2:45 p.m.**  "We regret to inform you that in the superseding indictment there is complete and total disagreement on all counts.  All jurors have fairly and impartially considered the direct and circumstantial evidence to the best of each individuals reasoning and experience in life.  We have not been able to see eye to eye in accordance with the court's instructions.  We are unanimous that we are HUNG!  We would like to be excused at this juncture."

# APPENDIX B

5-23-08-01_1 (2)

1

```
 1                    UNITED STATES DISTRICT COURT
                      FOR THE DISTRICT OF COLUMBIA
 2
       UNITED STATES OF AMERICA,      .
 3
                 Plaintiff,           .
 4                                    .  CR No. 07-149
            v.                        .
 5                                    .
       FARZAD DARUI,                  .  Washington, D.C.
 6                                    .  May 23, 2008
                 Defendant.           .  11:40 a.m.
 7                                    .

 8     .  .  .  .  .  .  .  .  .  .  .  .

 9                  TRANSCRIPT OF JURY DELIBERATIONS
                BEFORE THE HONORABLE ROYCE C. LAMBERTH
10               UNITED STATES DISTRICT CHIEF JUDGE

11     APPEARANCES:

12     For the Government:        RONALD W. SHARPE, ESQ.
                                  TEJPAL SINGH CHAWLA, ESQ.
13                                United States Attorney's Office
                                  555 4th Street, N.W.
14                                Washington, D.C.  20530
                                  202-307-3569
15                                202-514-7630

16     For the Defendant:        VICTORA TOENSING, ESQ.
                                  DiGenova & Toensing
17                                1776 K Street, N.W.
                                  Washington, D.C.  20006
18                                202-289-7701

19                                STEVEN T. WEBSTER, ESQ.
                                  AARON S. BOOK, ESQ.
20                                Webster Book, LLP
                                  1 North King Street
21                                Leesburg, Virginia  20176
                                  703-779-8229

22     Court Reporter:           JACQUELINE M. SULLIVAN, RPR
                                  Official Court Reporter
23                                U.S. Courthouse, Room 6720
                                  333 Constitution Avenue, NW
24                                Washington, D.C. 20001
                                  202-354-3187
25     Proceedings reported by machine shorthand, transcript produced
       by computer-aided transcription.
```

Jacqueline Sullivan, RPR
Official Court Reporter

2

5-23-08-01_1 (2)

1                    P R O C E E D I N G S

2           COURTROOM DEPUTY:  Criminal action 07-149, the United

3    States of America vs. Farzad Darui.  Mr. Sharpe and Mr. Chawla

4    for the government.  Ms. Toensing, Mr. Book, and Mr. Webster for

5    the defense.

6           THE COURT:  Let's start with the easy ones and we'll

7    come back.  On the 11:05 note, does the language address and

8    consent authorization, does it only apply to count nine or to

9    any of the other charges?  And I would say it applies to all of

10   the charges.  On the language if we find the funds were indeed

11   stolen, why is consent a factor, which is the 11:06 note, I

12   guess we should use some language in the theft instruction.  Let

13   me look at the language here.  If consent was given the money is

14   not wrongfully obtained.  Under the theft statute set forth on

15   page 25 of the instructions, that's the 11:15 note, you must

16   consider all of the evidence or lack thereof in the light of

17   your experience in life and in accordance with all of the

18   Court's instructions and decide whether the government has

19   proven the defendant is guilty beyond a reasonable doubt of each

20   count charged.  Any problem with that?  Well, I'll go through

21   them all.  Then we'll come back to the eleven o'clock note.  The

22   consent instruction must be considered along with the

23   authorization instruction and the good faith instruction and all

24   of the Court's other instructions.  Okay.  Comments?  We'll do

25   it in one.

                          Jacqueline Sullivan, RPR
                          Official Court Reporter

                                                              3

                              Page 2

5-23-08-01_1 (2)

1      MR. CHAWLA:  Sure.  Good morning, your Honor.  I think

2    with regard to some of the easier ones, that the government has

3    no problem with that.  Well, I think what, and this may be just

4    a combination of all the notes together, what the jury's

5    struggling with is two issues.

6          THE COURT:  Obviously there's a conflict in the jury

7    from the tenor of the notes.

8          MR. CHAWLA:  That's true too, your Honor.

9          THE COURT:  Obviously they're not unanimous at this

10   stage.

11         MR. CHAWLA:  That one of the issues that they're

12   trying to struggle with is the fact that there are multiple

13   complainants, and consent here is on many different levels, and

14   I say that because obviously the director signed consent forms.

15   He says that I didn't give knowledgeable consent, and the other

16   issues that we have multiple complainants who the jury could

17   find as proper victims in this case for all the charges.  I had

18   asked Roy McLeese of our office about the issue and I posed some

19   language in the consent instruction that might be given.  He

20   said it wasn't a problem, there was a recent Circuit decision

21   last week saying the Court can add additional instructions if it

22   feels it's important to answer a jury's question.

23         THE COURT:  I think that's correct.

24         MR. CHAWLA:  I've put on the Elmo, if I could have the

25   Elmo, what Mr. McLeese, what I ran past him this morning, and in

Jacqueline Sullivan, RPR
Official Court Reporter

4

1    black is what's currently in the Court's instruction and what's

2    in the underlying portion is a clause to sort of explain

Page 3

5-23-08-01_1 (2)

3    additional elements.

4            THE COURT:  Can you hand me a copy up?

5            Does the defendant have a copy?

6            MR. CHAWLA:  Yes.  I provided counsel a copy.

7            What I was proposing, and this is for each of the

8    sections of consent, some additional information, and I didn't

9    know what their note was going to be this morning so I prepared

10   on all of it, and I think paragraphs two and three.

11           THE COURT:  Give me a minute to read it, please.

12           MR. CHAWLA:  Okay.

13           THE COURT:  Go ahead now.

14           MR. CHAWLA:  Very well, your Honor.  With regard to

15   the issue multiple complainants, I would suggest that paragraph

16   two be given to the jury.  That's the if you find that all

17   complainants consented to the defendant's actions or the

18   defendant has reason to believe they all consented to the

19   defendant's actions then the crimes charged in the superseding

20   indictment have not been committed.  However, if one or more of

21   the complainants did not consent to the defendant's actions you

22   may still find the defendant's guilty as defendant's actions

23   non-consenting complainant, and then the third paragraph to read

24   complainant may express consent in words for the complainant's

25   actions or inaction may imply consent.  Plaintiff complainant

□

5

1    may not consent for persons or entities who are not within his

2    lawful authority.  If, however, the defendant in good faith

3    believed that the plaintiff could lawfully consent for another

5-23-08-01_1 (2)

4    person or entity you may find the defendant acted with consent

5    for that other person as well.  And the thought here is just to

6    let them know that we are talking about multiple complainants.

7    Consent could be given to a number of them, but you have to find

8    consent specific to that complainant, and I think that tries to

9    address that issue which is that note which asks if the funds

10    are stolen why is consent an issue.  I think, I mean, it is

11    piecing together a number of notes which is a little bit

12    complicated I agree, but we do believe this is an accurate

13    statement of the law which we've run passed Appellate.  We think

14    it would be appropriate given what it appears they're struggling

15    with.

16            THE COURT:  So what would the response to the note be?

17            MR. CHAWLA:  Well, the response to the note would be

18    here's additional instruction or by clarification of what

19    consent means, and then just add those two paragraphs the

20    government is proposing.  We could also provide the last

21    paragraph, paragraph four, which relates to reasonable doubt,

22    which is relating to involuntariness.  If you find

23    involuntariness we think that would be appropriate as well, but

24    I don't know if it's directly called upon by their note yet, but

25    it is a statement in the law and that we would provide it to

Jacqueline Sullivan, RPR
Official Court Reporter

6

1    them for assistance.  Obviously we just got in this morning.  I

2    provided a copy to counsel.  I don't know what their opinion is

3    on it, but from our view and from appellate's review, which they

4    think is appropriate --

5            THE COURT:  11:05, 11:06, and 11:15 notes you agree

5-23-08-01_1 (2)

6      with what I proposed?

7                MR. CHAWLA:  Yes, your Honor.

8                THE COURT:  All right.  Let's start with the easy ones

9      first.  11:05, 11:06, 11:15, do you have any comments on those

10     proposals?

11               MR. WEBSTER:  The proposed answer to 11:05 is that it

12     applies to all charges.

13               THE COURT:  Right.

14               MR. WEBSTER:  We agree with that.

15               The 11:06, the proposed answer is if consent was given

16     the money was not wrongfully obtained, and then, your Honor --

17               THE COURT:  And the theft statute set forth on page 25

18     of the instruction?

19               MR. WEBSTER:  We agree that's an appropriate response.

20               THE COURT:  Okay.

21               MR. WEBSTER:  Should common sense override the lack of

22     evidence, I understood the Court's proposed response to that.

23     You must consider all of the evidence, and it went on from

24     there.  I think that's appropriate.  The.

25               Eleven o'clock note, it's a simple question, and the


                        Jacqueline Sullivan, RPR
                         Official Court Reporter

⬜                                                                    7



1      Court's proposed response is, I understood it was the consent

2      instruction must be considered along with the authorization

3      instruction and the good faith instruction and all of the

4      Court's other instructions.  I think actually, your Honor, the

5      answer to that could be much simpler and it could be simply yes.

6      I mean, if we have told them now that consent instruction

5-23-08-01_1 (2)

7   applies to all counts, then the simple answer to their very

8   simple question is yes, and in fact, you need look no further

9   than the instruction itself to see that that is so because with

10   the instruction itself says, and we may just want to repeat

11   this, if the complainant voluntarily consented to the actions or

12   the defendant reasonably believed the complainant was

13   consenting, the crimes charged in the superseding indictment

14   have not been committed.  I mean, it appears that the answer is

15   right in front of them if only the Court will give them the

16   answer yes or alternatively just repeat that sentence.  The

17   proposed supplemental instructions that the government is

18   talking about, and we haven't really had a chance to take a look

19   at these, but I can tell you the immediate reaction is they are

20   trying to reformulate the charge, and this may be the sixth

21   attempt or the fifth attempt.  I think the Court noted earlier

22   when they tried to reformulate it after the charge was given and

23   after we did closings the Court denied it again for the fifth

24   time.  It needs to be denied for the sixth time because the jury

25   is not asking the questions the government is suggesting that

Jacqueline Sullivan, RPR
Official Court Reporter

8

1   they're asking.

2           Did you want me to continue?

3           THE COURT:  Yes.

4           MR. WEBSTER:  And therefore, your Honor, this series

5   of proposals that the government is offering to the Court for

6   the reasons we stated earlier should be rejected, but also for

7   the main reason now is that they're not asking these questions.

8   This starts to raise --

Page 7

5-23-08-01_1 (2)

9         THE COURT:  Well, the problem I have with your comment

10      is when they repeat that instruction but they're, at least some

11      of them, do not want to interpret it to say that they should

12      find them not guilty.  I don't think the Court should give them

13      the answer.

14         MR. WEBSTER:  Well, perhaps you could give them the

15      following answer, and that is the paragraph -- one of the

16      Court's final charge, and paragraph three of the Court's final

17      charge gives them the answer without saying, you know, without

18      essentially directing a verdict, which I understand the Court

19      cannot do, but it is your duty to accept the law as I instruct

20      you.  You should consider all the instructions as a whole.  You

21      may not ignore or refuse to follow any of them.  I think that's

22      a very concrete answer to whatever issue they are struggling

23      with and I think it's correct, some of them are struggling with

24      the consent instruction and don't want to apply it.  Some of

25      them are reading the instruction as given and they want to apply

Jacqueline Sullivan, RPR
Official Court Reporter

9

1      it, and I think that's probably a more appropriate answer than

2      raising a series of questions that have not been asked as the

3      government proposes.  This is going to create more confusion.

4      If you now try to -- they've been struggling with this

5      instruction for a couple of days.  If you try to reformulate it

6      now, it's going to create havoc.  They will deadlock at that

7      point.  They'll just throw up their hands and say, you know, we

8      asked simple questions and what we got back was more legalistic

9      answers that we now have to go through.  I think repeating the

Page 8

5-23-08-01_1 (2)

10    portion of the charge that talks about it's your sworn duty to

11    base your verdicts upon the law given in these instructions and

12    upon the evidence that has been admitted in this trial, and then

13    that third paragraph is probably sufficient, and it gives, I

14    think it gives both sides an accurate presentation of what their

15    function is and what their duty is.  I mean, their duty is to

16    follow the instructions essentially, and I think that's a fair

17    answer to the question.

18         And I think it's clearly responsive to the 11:55 note.

19    It appears that things are breaking down back there, and if we

20    re-enforce what the obligation is, to follow the instructions,

21    that may break the law jam.

22         THE COURT:  Let me go back to the easy one as to the

23    11:55 note.  I would advise the jurors that an alternate juror

24    can be seated only if a medical or other emergency causes a

25    juror to be replaced.  Disagreement with other jurors cannot

Jacqueline Sullivan, RPR
Official Court Reporter

10

1    cause a juror to be replaced.  Any problem with that one?

2         MR. WEBSTER:  No.

3         MR. CHAWLA:  No, your Honor.

4         THE COURT:  All right.

5         MR. CHAWLA:  For the record, your Honor, do we know

6    which number juror 1424 is?

7         THE COURT:  Juror No. 11, affectionately known as

8    Queen Bee.

9         MR. CHAWLA:  Your Honor, there is one issue related to

10    that one juror.  If you recall, I believe it's the same one --

11         THE COURT:  She couldn't make a judgment.  I know.

Page 9

5-23-08-01_1 (2)

12          MR. CHAWLA:  And that's a concern, so if that is, I
13    mean, I don't want to probe into that, but just for the record
14    for future dealings if that becomes an issue.
15          THE COURT:  Yes, I know who she is.
16          I have to say I don't see how in response to the note
17    I can give the government's proposed additions, but I also don't
18    see how I can go back and give them the simple answer that the
19    defendant demands either, so I think I'll send in a note
20    responding to these rather than trying to call them in open
21    court.  We'll be in recess until we hear from them again, but it
22    probably won't be long at the rate notes are coming.
23          COURTROOM DEPUTY:  This Honorable Court stands in
24    recess until return of Court.
25          (Recess taken.)


                    Jacqueline Sullivan, RPR
                    Official Court Reporter

                                                    11



1          COURTROOM DEPUTY:  All rise.  This Honorable Court is
2     again in session.
3          (Back on the record at about 1:06 p.m.)
4          THE COURT:  In response to the latest note, I have a
5     draft response.  I'll take suggestions.
6          MR. CHAWLA:  No objection from the government, your
7     Honor.
8          MR. WEBSTER:  Your Honor, our reading of this note
9     suggests that at least some of the jurors are not willing to
10    apply the consent instruction.  I think that's probably a fair
11    reading of their question.  What we would suggest is to
12    reiterate that portion of the Court's charge -- I think it's in

Page 10

5-23-08-01_1 (2)

13   paragraph three -- that they may not ignore or refuse to follow

14   any particular instruction and/or it is their duty to accept the

15   law as the Court has instructed you, just to reemphasize that.

16   I think also if you were to add the response that you gave to

17   the 11:05 question, which I think was the consent instruction

18   applies to all the charges, but at the very least I think the

19   jury needs or those jurors need some guidance less as to the

20   issue of the evidence and more as to the issue of the

21   instructions.  Because I think it's a fair reading to say that

22   somebody is or some persons are refusing to apply it.

23        THE COURT:  I think I've already given that

24   instruction in the instruction.  I think it's dangerous to do

25   more than just tell them they've got to follow the instructions

Jacqueline Sullivan, RPR
Official Court Reporter

12

1   in light of the evidence.  I don't think I can do more than

2   that.  So I'll send this in.  Hang around.  I don't think it

3   will be long.

4        COURTROOM DEPUTY:  All rise.  This Honorable Court

5   stands in recess until return of Court.

6        (Recess taken.)

7        THE COURT:  In light of the latest note, I'll

8   entertain any motion from the defendant.

9        MR. WEBSTER:  Your Honor, we have a series of

10   suggested steps and certainly alternatives prior to the grant of

11   a mistrial, which we are not moving for.  Certainly the notes

12   that were sent out, especially the last one, is a clear

13   indication that some of the jurors are refusing, we believe, to

14   apply the consent instruction that was given by the Court.  As

Page 11

5-23-08-01_1 (2)

15    the Court knows, that's our theory of the defense instruction.

16    They took an oath to apply the Court's instructions.  Some of

17    the jurors are disregarding that oath.  Our suggestion initially

18    was to reinstruct them that they must follow the Court's

19    instruction and that it was their duty to do so.  The Court

20    declined obviously that invitation in preference to the note

21    that you sent back.  At this point we believe that if the jurors

22    are refusing to apply the Court's instructions then they are

23    violating their oath; therefore, the first step would be to

24    examine the foreman of the jury to determine whether or not he

25    or other jurors are disregarding the Court's instructions, and I

Jacqueline Sullivan, RPR
Official Court Reporter

13

1    think we also would need to find out how many.  If any are, how

2    many, and then the subsequent action would be to examine those

3    jurors.  If those jurors are refusing to follow the Court's

4    instructions to discharge those jurors and then to replace those

5    jurors with the two alternate jurors who as they left it was my

6    understanding the Court said don't discuss the case with

7    anybody, we may need to bring you back, words to that effect.

8    Once the jurors are replaced, once the jurors who refuse to

9    follow their oath and the Court's instructions are replaced with

10    the alternate jurors, we can proceed.  They would have to

11    restart their deliberations and proceed from there.  With

12    respect to the -- and I think there is certainly support for the

13    proposition that a Court may excuse or discharge jurors who are

14    refusing to follow the Court's instructions of law.  Usually

15    it's in the context I think of jury nullification where some

5-23-08-01_1 (2)

16  jurors just will refuse to convict.  It doesn't matter what
17  anybody tells them.  In this case although, you know, we're
18  reading tea leaves here, it appears that these jurors are
19  refusing to acquit based on their view that they don't like the
20  consent instruction or will not follow it.
21          Secondly, in United States vs. Urs Thomas from the 2nd
22  Circuit, 116F3rd 606, is amongst I think many cases that stand
23  for the proposition that the Court has not only the power but
24  the duty to undertake that examination and to discharge those
25  jurors who will not follow their oath.  With respect to the


                        Jacqueline Sullivan, RPR
                        Official Court Reporter

                                                    14


1   issue of deadlock, Rule 26.3 requires the Court to consider
2   alternatives prior to declaring a mistrial.  With respect to our
3   proposed alternatives, we would suggest to the Court that if you
4   decline the first request, that we examine the foreman and
5   determine whether in fact the jury is hopelessly deadlocked, and
6   also examine the jurors themselves individually to determine
7   whether or not they agree with the foreman's assessment that
8   they are hopelessly deadlocked.  That's the only way to actually
9   make a record.
10          THE COURT:  Well, he says in the note that they are
11  unanimous that they're deadlocked.
12          MR. WEBSTER:  Your Honor, just so the record is clear,
13  we do initially request as a first step that you reinstruct them
14  that it is their duty to follow the instructions of law, just so
15  the record is clear on that.  To respond to the Court's comment,
16  this note is signed by the foreperson.  "We are unanimous that
17  we are hung", exclamation point.  But it is our proposal short

                        Page 13

5-23-08-01_1 (2)

18    of granting a mistrial just to assure that the record is
19    complete and that there are in fact grounds for declaration that
20    manifests necessity exists for the mistrial, that it would be
21    prudent not only examine the foreman but also to get the
22    individual jurors to confirm that they are hopelessly dead-
23    locked.  Those are the alternatives under Rule 26.3 that we
24    propose short of the Court sua sponte declaring a mistrial.
25              THE COURT:  How do you square examining the foreman


                    Jacqueline Sullivan, RPR
                    Official Court Reporter

                                                                15


 1    first if we just take the foreman regarding the internal
 2    deliberations?  What is it you propose that I would ask the
 3    foreman?
 4              MR. WEBSTER:  First, with respect to the failure of
 5    the jurors, your Honor, to follow the instructions of law --
 6              THE COURT:  Well, I don't know that that's what
 7    they're doing, so your first question is are there jurors who
 8    are refusing to follow the Court's instructions?
 9              MR. WEBSTER:  That is correct.
10              THE COURT:  You would ask that of the foreman?
11              MR. WEBSTER:  Yes, sir.
12              THE COURT:  And then if he says yes, then what am I
13    going to say?
14              MR. WEBSTER:  How many?
15              THE COURT:  Okay.  And then what are we going to do?
16              MR. WEBSTER:  Who are they?
17              THE COURT:  And if there are more than two, where are
18    we?

                          Page 14

5-23-08-01_1 (2)

19      MR. WEBSTER:  I think there can be three and replace

20   them with alternates.  You get back up to eleven, and certainly

21   under Rule 23, your Honor, 23(b)(3), the Court has the power to

22   permit a jury of eleven persons to return a verdict even without

23   a stipulation by the parties if the Court finds good cause to

24   excuse a juror.  Good cause would exist, of course, where jurors

25   are refusing to follow the Court's instructions of law in

Jacqueline Sullivan, RPR
Official Court Reporter

16

1    violation of their oath, and again, we point to that 2nd Circuit

2    case, among others.  I'm sure the Court is familiar with that

3    straightforward proposition.  That's our initial proposal.

4       THE COURT:  Your initial proposal is that I ask those

5    questions of the foreman?

6       MR. WEBSTER:  Well, the initial proposal, which I

7    understand the Court has rejected, would be to tell them you

8    have an oath to follow the instructions that the Court has

9    already given you and you must comply with that oath.  That was

10   what we asked the last time.  You said no.  And I understand the

11   Court's ruling, so that was request number one.  Request number

12   two is to examine the foreman and ask those questions that we

13   are talking about.  Request number three is to examine those

14   jurors whom the foreman identifies as not being willing to

15   follow the Court's instruction.  Step number four --

16      THE COURT:  What do you ask the individual jurors?

17      MR. WEBSTER:  Are you refusing to follow any of the

18   Court's instructions?

19      THE COURT:  And they say no and then what do I say?

20      MR. WEBSTER:  The foreman says otherwise, he ratted
                              Page 15

5-23-08-01_1 (2)

21    you out?  I don't know what you say exactly.

22            THE COURT:  See, how can you send them back in to

23    deliberate if they say no and the foreman says yes?

24            MR. WEBSTER:  I think if the foreman says yes and

25    identifies those, that's a sufficient record, your Honor, to --


                    Jacqueline Sullivan, RPR
                    Official Court Reporter

                                                              17


1    I think it is very difficult for an individual juror to come out

2    and say yes, I'm refusing to follow your instructions, and I

3    don't think we're going to see that, but if the foreman

4    identifies jurors who are refusing to follow the Court's

5    instructions, that's a sufficient record for the Court to excuse

6    those jurors and replace them.

7            THE COURT:  Up to three?

8            MR. WEBSTER:  I think up to three.  I mean, unless the

9    parties stipulate that they're willing to go below eleven.

10   Under Rule 121, Rule 23(b) subsection 2, it would appear that

11   the Court cannot proceed with fewer than eleven.  I haven't

12   researched that issue that thoroughly in the last fifteen

13   minutes, but that appears to be what the rule says.

14           THE COURT:  Okay.

15           MR. WEBSTER:  Then of course restart their

16   deliberations when the alternates are brought in.

17           THE COURT:  Right.

18           MR. WEBSTER:  I think that's the first step, and then

19   with respect to the deadlock issue, there does need to be

20   various words in the case law about some searching inquiry by

21   the Court prior to the declaration of a mistrial, and that

                            Page 16

5-23-08-01_1 (2)

22  clearly is a very easy alternative for the Court to perform.  We

23  have them here, we can make a record, and if the Court, you

24  know, thinks at that point there's a manifest necessity for a

25  mistrial you can take that action.  It would be over our

                        Jacqueline Sullivan, RPR
                        Official Court Reporter

                                                            18

1   objection, of course, but that is a reasonable and easily

2   accomplished alternative under 26.3 that I think the Court is

3   obligated to take, or at least that we ask you to take.

4           THE COURT:  All right.

5           MR. CHAWLA:  Your Honor, obviously given the

6   instruction that has already been given, the deadlock

7   instruction, anything now is very coercive, and even if we were

8   to get a conviction I don't know if it would be something that

9   can be sustained in the Court of Appeals.  The jury is crystal

10  clear.  It says that all jurors have fairly and impartially

11  considered the direct and circumstantial evidence to the best of

12  each individuals' reasoning and experience in life.  We have not

13  been able to see eye to eye in accordance with the Court's

14  instruction.  That is what the jury note says.  The note does

15  not say anywhere on there that there is disagreement.  And the

16  note which counsel is referring to, which is the 12:30 note, was

17  a hypothetical question which was not that there are, but the

18  question was if the jury believes defendant to be guilty

19  regardless of consent on all charges then it says are there

20  further instructions that you provide.  It's an if-then

21  question.  It's a hypothetical.  To go searching and asking the

22  foreperson to go into the deliberations and explain different

23  instructions, anyway, this consent instruction and authorization

                              Page 17

5-23-08-01_1 (2)

24    instruction would be fairly intruding into that domain, so we
25    think that voir diring them basically and to find out what

Jacqueline Sullivan, RPR
Official Court Reporter

19

1    they're thinking on this regard at least is not justified and
2    that the law from the jury, that is, they're unanimous that they
3    are hung, it's not a question of anyone thinking that they can
4    make progress or that there are further instructions from the
5    Court that would help them in their deliberations, so under that
6    we would suggest the Court simply grant a mistrial.
7         THE COURT:  Without a motion from the defendant then
8    how would I do it?
9         MR. CHAWLA:  I think, your Honor, we do have to get
10    the defense to eventually get to that point.
11        THE COURT:  Well, he's not there, so what do I do?
12        MR. CHAWLA:  I think the Court has the inherent power
13    to grant a mistrial on its own based on the record.
14        THE COURT:  Do you have a case to support that?
15        MR. CHAWLA:  I do not.  I did not research it.
16        THE COURT:  I think you better if that's what you're
17    going to ask me to do.
18        MR. CHAWLA:  If you give us a few moments, your Honor,
19    we could make a couple of phone calls to find out if the Court
20    would have that power.  Otherwise, I think we're just sitting
21    here waiting for the jury and have them come back Tuesday all
22    because the defendant didn't want them released, but that's
23    their right and we'll doublecheck that, but I think the Court
24    has inherent power to declare a mistrial, but, I mean --

Page 18

5-23-08-01_1 (2)

25          THE COURT:  Without a motion from the defendant?


                    Jacqueline Sullivan, RPR
                    Official Court Reporter

                                                        20


1          MR. CHAWLA:  I believe that is possible, but I'd like

2     to do that.

3          THE COURT:  Having not done it in twenty years, you

4     need a case for me on something like that.

5          MR. CHAWLA:  Very well, your Honor, but I do believe

6     that the steps that they're suggesting are very coercive and no

7     matter what the result be, even as a conviction for the

8     government, it would not be sustainable, given this situation.

9          THE COURT:  Theory if the foreman said three or less

10    it's conceivable his theory would work.

11         MR. CHAWLA:  Well, your Honor, first off, there's no

12    evidence on this record that there are jurors who are in fact

13    not following --

14         THE COURT:  I agree.  I agree, but the 12:30 note

15    suggests it's possible.

16         MR. CHAWLA:  I believe that it is a possibility, your

17    Honor, among many other possibilities as well.  In fact, when I

18    read the 12:30 note, your Honor, I would say that I was looking,

19    reading it the other way, and of course tea leaves can be read

20    either way, but that they believe the defendant to be guilty

21    regardless of consent on any and all charges which means they

22    don't believe consent was voluntarily given which is also part

23    of the instruction, so it actually looked like they were

24    following the instruction not finding consent given by whoever

25    the complainant was, so I think again we're reading very far

                          Page 19

5-23-08-01_1 (2)

Jacqueline Sullivan, RPR
Official Court Reporter

21

1     into it and the result, no matter what it would be, would be

2     unsustainable.

3                THE COURT:  Do you want to say something before he

4     makes his phone call?

5                MR. WEBSTER:  Yes, your Honor.  Only that the series

6     of notes that were sent out by the jury clearly indicate that

7     some of those jurors are having a problem with the consent

8     instruction, and I think it's a reasonable inference that some

9     of them are just simply refusing to apply it, and under those

10    circumstances where there is a suggestion do we have proof?  No,

11    because we can't talk to them, but where there's a suggestion

12    like that, that they are not following their oath, that clearly

13    would violate the defendant's Sixth Amendment right to a trial,

14    violate his Fifth Amendment right to due process, and I think it

15    is incumbent at that point if the situation were reversed I

16    think the government clearly -- jury nullification situation, I

17    think the government clearly would be asking the Court to do

18    what we're asking it to do.  It's just that the shoe is on the

19    other foot.

20               THE COURT:  I don't know, I've never had the

21    government ask me that.  I've never had anybody ask me that.

22    That's why I want to give them that chance to see if there's any

23    case law to support it.

24               MR. WEBSTER:  We are not waiving our position that we

25    are not asking for a mistrial.

Jacqueline Sullivan, RPR
Official Court Reporter
Page 20

5-23-08-01_1 (2)

22

```
 1              THE COURT:  I understand.
 2              MR. WEBSTER:  But I do believe that if there is a
 3      sufficient record such as the one that I have been describing
 4      the Court would have the authority to declare a mistrial,
 5      provided there's manifest necessity, and after a searching and
 6      through inquiry we've suggested.
 7              THE COURT:  And if, I mean, even if he came back with
 8      three, well, I guess we'd have to see if he was one of the
 9      three.  I assume he wouldn't admit he was one of the three, but
10      I don't know.
11              MR. WEBSTER:  If he wants to go on vacation he might
12      just do that.
13              THE COURT:  He might.  See if you can do it in fifteen
14      minutes.
15              MR. CHAWLA:  Yes, your Honor.
16              COURTROOM DEPUTY:  All rise.
17              (Recess taken.)
18              MR. CHAWLA:  I spoke to Appellate and they advised us
19      as follows:  They're aware of no cases which permit the inquiry
20      of a jury when there is no evidence of an issue of someone not
21      following the Court's instructions.  Obviously I know --
22              THE COURT:  Well, initially I did in rereading the
23      note that the foreman said all jurors have fairly and
24      impartially considered the direct and circumstantial evidence to
25      the best of each individuals' reasoning and experience.
```

Jacqueline Sullivan, RPR
Official Court Reporter

23

Page 21

5-23-08-01_1 (2)

1           MR. CHAWLA:  And, your Honor --

2           THE COURT:  That does support not making the inquiry.

3           MR. CHAWLA:  Yes, your Honor, and the other issue is

4    just looking at the case law behind 2.91, this is a D.C. Court

5    of Appeals case, but this is the government's concern, where

6    coercion was probable if not certain prejudice is presumed and

7    reversal is mandatory.  That mandatory language, even though the

8    defense would be suggesting and you could always say invited

9    error, reversal mandatory in nature obviously is very concerning

10   to the government.  I've been instructed that the Court has the

11   inherent power under the rules to grant a mistrial after it

12   reviews the evidence and information available to it to make a

13   manifest necessity finding.  The government is not making any

14   requests of the Court for a mistrial, and for the record, the

15   government -- if I made that suggestion previously, I retract

16   that.  The government is not making such a request for asking

17   the Court to do so but just stating the law as we understand it.

18   I wasn't able to speak to Roy McLeese, but I did speak to Liz

19   Troseman, and that's the advice we've been given.

20           THE COURT:  I did also during the break look at United

21   States vs. Sanford, which is 429 U.S. 14, a 1976 case, in which

22   the Supreme Court in an opinion pro carium with the dissent only

23   from Vernon and Marshall indicated that a Court could properly

24   declare a mistrial sua sponte by reason of a hung jury and

25   double jeopardy would not bar retrial if I make the finding of

                        Jacqueline Sullivan, RPR
                        Official Court Reporter

⊓

                                                                24

                        Page 22

5-23-08-01_1 (2)

1   manifest necessity.  And that is the followed by a 2003 Supreme

2   Court death penalty case which might make it a little different,

3   Sattazahm, S-a-t-t-a-z-a-h-m, versus Pennsylvania, which is 537

4   U.S. 101 in 2003 with the Scalia opinion with the dissent by

5   Ginsburg, Steven Suiter Brier, and I'm not -- the /SKA Lee pan I

6   don't think demands a majority because there's some

7   concurrences, and part of the concurring in judgment and all

8   these other sorts of things, but the language I focused on was

9   Justice Ginsburg in her dissent even she says in talking about

10  Supreme Court juris prudence on the question that weighing these

11  interests we have decided that mistrials declared on motions of

12  prosecution sua sponte by the Court terminate jeopardy.  I'm

13  quoting various cases.  In a hung jury the Court has long

14  recognized meets the manifest necessity criterion and justifies

15  a trial court's declaration of a mistrial.

16          Something additional you want to say then, Mr.

17  Webster?

18          MR. WEBSTER:  Yes, your Honor.  Your Honor, that was

19  consistent with our understanding of what the case law was.

20  It's just that our position obviously is that in this case the

21  defendant has a right to have this jury conclude its

22  determination consistent with the proposed alternatives that we

23  have offered, and would I say to the Court that's not only

24  offered under Rule 26.3, it's also offered under the Fifth and

25  Sixth Amendment because there appears to be case law to support

Jacqueline Sullivan, RPR
Official Court Reporter

25

1   the view that the Court should seek other alternatives prior to

2   the final and irreversible one.  It is our contention that if

Page 23

5-23-08-01_1 (2)

3      there is no manifest necessity for a mistrial then that double

4      jeopardy would preclude a retrial.  If the Court were to grant

5      such a mistrial we would in all likelihood take it up with the

6      Circuit of Appeals.

7              THE COURT:  Okay.  I think that I will declare a mis-

8      trial sua sponte based on the finding of manifest necessity that

9      a mistrial is required because the jury has conscientiously and,

10      according to the foreman, everyone has fairly and impartially

11      considered the evidence and to the best of their ability been

12      unable to reach a verdict and that they are unanimous in the

13      inquiry sought by the defendant into the jury process would make

14      it virtually impossible to resume deliberations with this jury

15      and there is no evidentiary basis in light of the foreman's note

16      to believe that there are any jurors who are refusing to follow

17      the Court's instructions, so I will therefore declare a mis-

18      trial.

19              Bring in the jury.

20              MR. WEBSTER:  Your Honor, does the Court permit

21      counsel to speak to jurors after a trial?

22              THE COURT:  I have in hung juries before, unless

23      there's an objection.

24              MR. CHAWLA:  No.

25              THE COURT:  I think it gives guidance to both sides.


                         Jacqueline Sullivan, RPR
                         Official Court Reporter

                                                              26



1      We would only do it in the jury room and not other places unless

2      you get my advance permission under our local rules, but if you

3      wait a few minutes I'll thank the jurors for their service, get

5-23-08-01_1 (2)

4    the exhibits out and get their notes out so we can seal and

5    shred their notes and then tell them those who want to remain

6    and talk to you that you will come in the jury room, and

7    hopefully a number of them will remain so that you can get a

8    flavor for what happened.

9        MR. WEBSTER:  Okay.  Thank you.

10       THE COURT:  And usually I find in a hung jury, I never

11   do it if the jury isn't hung, but in hung juries I usually find

12   that it's educational for counsel and might have some beneficial

13   effects if there has to be a retrial.

14       MR. CHAWLA:  Your Honor, that's only correct.

15       THE COURT:  Yes.  Somebody I can disbar if they don't

16   follow my rules.  My clerk will sit in to make sure nobody goes

17   crazy.

18       (Jury enters courtroom at about 3:50 p.m.)

19       THE COURT:  All right, ladies and gentlemen.  I have

20   your latest note, and I do hereby declare a mistrial.  I believe

21   that you've unable to do so.  My practice in this kind of a case

22   is after I thank each of you in the jury room and we retrieve

23   your notes so we can shred them those of you who are willing to

24   stay and talk to counsel for both sides in the jury room, I

25   encourage you to do so because sometimes it helps counsel figure

Jacqueline Sullivan, RPR
Official Court Reporter

27

1    out whether there should be a retrial or what should happen if

2    there's a retrial.  Sometimes it can be useful to counsel about

3    what happens as the next stage in the proceedings, so I can't

4    require you to stay, but those of you who are willing to stay

5    and talk to counsel I encourage you to do so, and then in the

Page 25

5-23-08-01_1 (2)

6    meantime on behalf of the Court and the community I thank you

7    very much for your efforts to try to reach a verdict in this

8    case.  We could not fairly and impartially do justice in our

9    community without good citizens like you.  You've endeavored to

10   do the best you can, and I thank you very much for your service.

11   You're discharged.

12        COURTROOM DEPUTY:  All rise.  This Honorable Court

13   stands adjourned.

14        (Recess taken.)

15        COURTROOM DEPUTY:  All rise.  This Honorable Court is

16   again in session.  Please be seated and come to order.

17        THE COURT:  Let's pick a quick status date so we can

18   let the court reporter go.  June 10th at 11:30 look good?

19        MR. CHAWLA:  That's fine, your Honor.

20        MR. WEBSTER:  That's fine, your Honor.

21        THE COURT:  By then you'll know if you're taking an

22   appeal pending retrial or what you're doing.  Hopefully the

23   government will know what they're doing.  I'll see you.

24        (Proceedings concluded at about 4:05 p.m.)

25                        - - -


                          Jacqueline Sullivan, RPR
                          Official Court Reporter

                                                              28



1                         I N D E X

2

3

4

5    WITNESSES:

6

                          Page 26

5-23-08-01_1 (2)

7         None.

8

9

10

11

12

13

14

15                    E X H I B I T S

16

17

18    None.

19

20

21

22

23

24

25


                    Jacqueline Sullivan, RPR
                    Official Court Reporter

                                                29



1                    CERTIFICATE

2          I, JACQUELINE M. SULLIVAN, Official Court Reporter,

3    certify that the foregoing pages are a correct transcript from

4    the record of proceedings in the above-entitled matter.

5                    _____

                    JACQUELINE M. SULLIVAN
6

7

8
                    Page 27

5-23-08-01_1 (2)

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25


                              Jacqueline Sullivan, RPR
                              Official Court Reporter

# APPENDIX C

1

1              UNITED STATES DISTRICT COURT

2                FOR THE DISTRICT OF COLUMBIA
   -------------------------X
3
   UNITED STATES OF AMERICA
4              v.           Criminal Case No.  07-149

5  FARZAD DARUI,

6              Defendant,

7  -------------------------X   Washington, D.C.
                                May 22, 2008
8                               10:10 A.M.

9              TRANSCRIPT OF TRIAL
        BEFORE THE HONORABLE ROYCE C. LAMBERTH
10     CHIEF UNITED STATES DISTRICT JUDGE and a jury

11 APPEARANCES:

12 For the Government: Ronald Wesley Sharpe, Esq.
                       Tejpal Singh Chawla, Esq.
13                     U.S. ATTORNEY'S OFFICE
                       555 Fourth Street, NW
14                     Washington, DC 20530
                       (202) 353-9460
15
   For the Defendant:   Aaron S. Book, Esq.
16                     Steven T. Webster, Esq.
                       WEBSTER BOOK LLP
17                     1 North King Street
                       Leesburg, VA 20176
18                     (703) 779-8767

19

20

21 Court Reporter:      Lisa Walker Griffith, RPR
                       U.S. District Courthouse
22                     Room 6507
                       Washington, D.C.  20001
23                     (202) 354-3247

24 Proceedings recorded by mechanical stenography, transcript
   produced by computer.
25

2

```
 1    APPEARANCES:   (cont'd.)

 2

 3    For the Defendant:Victoria Toensing, Esq.
                        DIGENOVA & TOENSING
 4                      1776 K Street, NW
                        Suite 737
 5                      Washington, DC 20006
                        (202) 289-7701
 6

 7

 8

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

3

P R O C E E D I N G S

1

2       THE DEPUTY CLERK:  United States versus Farzad

3  Darui, criminal case number 07-149.

4       THE COURT:  Did you distribute the note?

5       I have a proposed response to the note.  Any

6  objections to it after you read it?

7       MR. WEBSTER:  Your Honor, for the record, the jury's

8  question that, if they find the defendant not guilty of count

9  nine, must they find him not guilty I think on all other

10  counts.  Preliminarily, as the Court knows, Counts 6 and 7 are

11  interstate transportation of stolen property.  At least as to

12  those two counts, if they do find him not guilty of theft,

13  there is no way, it's impossible for him to be guilty of

14  interstate transportation of stolen property if they find that

15  the property at issue was not stolen.

16       So, as to those two counts, I would suggest that the

17  Court would respond that the answer is yes as to Counts Six

18  and Seven.

19       Additionally, with respect to Counts One through

20  Five, if they believe that he is not guilty of theft, then he

21  could not have harbored an intent to defraud under the mail

22  fraud counts.  So the answer should be yes as to that.  If the

23  answer is yes as to Counts One through Five, then it must be

24  yes as to Count Eight because the specified unlawful activity

25  for the money laundering is in fact mail fraud.  Our proposed

4

1    answer for those reasons is yes.

2        THE COURT:  Okay.  That is rejected.  And I'll send

3    the note as I prepared it.

4        We will be in recess.

5        Juror 7 has a doctor's appointment in the morning.

6    And she and the foreman propose that we convene tomorrow at

7    10:30 if we have not reached a verdict today.  I propose to

8    tell them that's agreeable.

9        MR. CHAWLA:  Yes, Your Honor.

10        (Whereupon, the jury resumed deliberations.)

11        THE COURT:  All right.  Based on the note, I propose

12    to give the jury the 2.91 initial instruction and because of

13    the cautionary language from the Court of Appeals about

14    recharging more than once, then I would read them the 3-A

15    instruction that we use in this court at the same time.  So

16    that you are basically telling them they have not deliberated

17    very long.  Make another effort.  Then that's it.  They come

18    back again and say they're hung, then we're at an end.

19        Do you have the book?  Do you want to look at it.

20        MR. SHARPE:  We have it, Your Honor.

21        THE COURT:  Okay.

22        MR. CHAWLA:  No objection from the government, Your

23    Honor.

24        MR. WEBSTER:  Your Honor, at this point the jury in

25    a case that lasted in terms of the evidence quite some time

1  has only been out for less than a day if you count all the

2  hours.

3            THE COURT:  A few hours, yes.

4            MR. WEBSTER:  To give them an anti deadlock

5  instruction of any kind at this point is coercive.

6            THE COURT:  Okay.  So you would just do one?

7            MR. WEBSTER:  I wouldn't even do one because the

8  case we would rely on U. S. v. Yarborough, among others, I

9  mean, clearly the potential for coercion is present.  The

10  problem with the initial instruction is, for example, this has

11  been a relatively long trial, longer than many trials that we

12  have in this court house.  There were a large number of

13  witnesses who testified and a substantial amount of evidence

14  received.

15            What you are saying to the jury essentially is that,

16  this is a big case compared to other cases that we have here;

17  and therefore, implying that the party and the Court have

18  spent a lot of resources in presenting this case.  And

19  implying that, that is all wasted unless you reach a verdict.

20            For that reason, that part of the instruction is

21  unduly coercive.  I realize it is in the red book but that

22  does not make it non-coercive with respect to the

23  circumstances of this case.  They know that a lot is at stake.

24  They don't need to be told that.  And under the circumstances

25  I would just merely suggest that you say to them that, you

1    have not been out in terms of deliberations quite some time.

2    I would ask that you resume your deliberations period.

3              THE COURT:  All right.  But when they he come back

4    and say they're hung again, are you going to object to reading

5    3 A?

6              MR. WEBSTER:  I can't answer that question.

7              THE COURT:  Okay.

8              MR. WEBSTER:  Because I don't know what the next

9    note is going to say.

10             THE COURT:  You object to my reading 3 A. now?

11             MR. WEBSTER:  I do.

12             THE COURT:  Okay.

13             MR. WEBSTER:  Yes, I object to that.  They have only

14   been out -- once they got the boxes of evidence yesterday

15   afternoon, for us to read the instructions that we know what

16   the Court was going to give took quite some time.  I can't

17   believe that those 12 jurors have had enough time to look at

18   the actual evidence and read through those instructions and

19   then discuss those things in any intelligent manner.

20             So for that reason, under the particular

21   circumstances that we have in this case now, any anti-deadlock

22   instruction at this time is coercive.  So we would object.

23             THE COURT:  All right.

24             The government's position?

25             MR. CHAWLA:  Your Honor, we believe that the Court's

7

1    suggestion is fine.  Obviously, it is the red book.  This is

2    the standard instruction.  Manipulation or changing of that

3    instruction, that particular one is very dangerous, as all

4    those cases point out in the materials.  We always get in

5    trouble when ever we go outside the red book.  We think these

6    are standard instructions.

7            It is clear that the jury is asking something from

8    the Court.  They're not going to do anything until they hear

9    back from the Court.  Telling them a note just continue to

10   deliberate I think would be delaying the inevitable.  And

11   giving what the Court has suggested is entirely fair under the

12   circumstances.

13           THE COURT:  All right, ultimately my conclusion is

14   it is less coercive to give them 3-A along with One than to do

15   it in stages. So the defendant's objection is overruled.

16   We'll bring the jury in and I'll give them both.

17           As to whether this is a long trial, I must say in my

18   experience in this court, most of our criminal trials are two

19   and three days.  This is a longer trial than most criminal

20   trials in this courts.

21           My last capital case here was 13 months with a jury.

22           (Jury Present)

23           THE COURT:  Good morning, ladies and gentlemen.  It

24   indicates you have been unable to reach a unanimous decision

25   at this time.  This has been a relatively long trial, longer

1    than many trials we have in this court house.  There were a

2    large number of witnesses who testified and a substantial

3    amount of evidence received.  I would expect that it would

4    take you some time to reach a resolution of this matter.

5          My best judgment is that you've only been

6    deliberating a few hours which is not unusual in cases such as

7    this.  As a result, I am going to ask that you deliberate

8    further in this case and that you continue to give it your

9    best efforts.

10          The verdict must represent the considered judgment

11    of each juror.  I'm order to return a verdict, it is necessary

12    that each juror agree to the verdict.  In other words, your

13    verdict must be unanimous.  It is your duty as jurors to

14    consult with one another.  And to deliberate with a view to

15    reaching an agreement, if you can do so without violence to

16    individual judgment.

17          Each of you must decide the case for yourself but do

18    so only after an impartial consideration of the evidence with

19    your fellow jurors.  In the course of your deliberations, do

20    not hesitate to reexamine your own views and change your

21    opinion if convinced it's erroneous.  But do not surrender

22    honest conviction as to the weight or effective evidence

23    solely because of the opinion of your fellow jurors or for the

24    mere purpose of returning a verdict.

25          You are not partisans, you are judges, judges of the

1    facts.  Your sole interest should be to reach a just verdict

2    from the evidence in this case.

3              With that, please resume your deliberations at this

4    time.

5         (Jury Out)

6         THE DEPUTY CLERK:  Court will be in recess.

7         (Whereupon, at 11:40 A.M., the jury resumed

8    deliberations.)

9         THE COURT:  I would propose that the defendant give

10   me a proposed response.  The government review it, makes your

11   comments on it.  If you can agree, fine.  If you can't, I'll

12   come back after you get something worked out unless you

13   already have something worked out.

14        MR. WEBSTER:  I have a suggestion.

15        THE COURT:  Okay.  Sew what you all can do, unless

16   you think it is so simple we can -- do you want me to do it

17   right now?

18        MR. WEBSTER:  I thought it was simple.

19        MR. SHARPE:  The government's position --

20        THE COURT:  Why don't you all talk about it and I'll

21   come back.

22        (There was a pause in the proceedings.)

23        MR. WEBSTER:  Your Honor, we discussed it with

24   counsel.  I think the conclusion is nobody can figure out

25   exactly what the jury, what language the jury is asking about.

1    They appear to be asking about that consent instruction.  It

2    starts on page, the final set of page 28 and goes over to page

3    29.  We talked about the last paragraph of it and thought we

4    had a solution to it.  Then we figured out that we didn't

5    really know if the jury was asking about that paragraph or the

6    entire instruction or what.

7            So I think we need to ask the jury to clarify what

8    they are asking us to clarify.  Maybe they can do it by

9    circling the language on the instruction they're talking

10   about, or however the Court wants to accomplish that.

11           MR. CHAWLA:  Your Honor, we have no objection to

12   doing that by note unless the Court wants to bring them in.

13           THE COURT:  No, I'll bring them in.

14           (Jury Present)

15           THE COURT:  Good afternoon, ladies and gentlemen.  I

16   have consulted with counsel.  And it is unclear to us exactly

17   what clarification the jury is seeking.  After talking with

18   counsel, we were trying to figure out if you were talking

19   about the final sentence of the first paragraph on 29 or are

20   you talking about something else exactly.

21           So, I think the most helpful thing for us to do

22   before we respond would be if you all can get together and

23   agree on how you want to explain what you want to clarify,

24   just exactly what it is you want to clarify.

25           You don't have to do it today.  You can do it when

11

1    you come back at 10:30 tomorrow.  But if you can work out a

2    better explanation of what it is that is unclear, what it is

3    you need us to clarify, I'll see if counsel and I can.

4              If you want to circle something in this and say

5    explain this or however you want to do it, it would be

6    helpful, it would be more helpful to us in responding if we

7    knew exactly what you want to do.

8              If you want to take off and come back at 10:30

9    tomorrow, that's okay, too.  If you wants to respond to us

10    today, that's okay too.  Thank you all very much.

11              (Jury Out)

12              THE COURT:  I'll let you know when they go.

13              (Whereupon, at 4:38 P.M., the trial recessed.)

14

15

16

17

18

19

20

21

22

23

24

25

12

## CERTIFICATE OF REPORTER

      I, Lisa Walker Griffith, certify that the foregoing is a correct transcript from the record of proceedings in the above-entitled matter.


_____    _____
Lisa Walker Griffith, RPR    Date

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES | ) |
| | ) |
| v. | ) Crim. No. 1:07-cr-00149-RCL |
| | ) |
| FARZAD DARUI, | ) |
| | ) |
| Defendant. | ) |

**ORDER RE:**
**<u>DEFENDANT FARZAD DARUI'S MOTION TO DISMISS SUPERSEDING</u>**
**<u>INDICTMENT AS VIOLATIVE OF THE DOUBLE JEOPARDY CLAUSE</u>**

**UPON CONSIDERATION** of Defendant's Motion, and good cause having been

shown, it is on this _____ day of July 2008, hereby

**ORDERED** that Defendant Farzad Darui's Motion is granted; and it is further

**ORDERED** that the superseding indictment be dismissed.

_____
Royce C. Lamberth, U.S. District Judge