UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES )<br>)<br>v.           )  Crim. No. 1:07-cr-00149-RCL<br>)<br>FARZAD DARUI,  )<br>)<br>Defendant.  ) | |

**DEFENDANT FARZAD DARUI'S REPLY BRIEF
IN SUPPORT OF MOTION FOR A JUDGMENT OF ACQUITTAL**

Defendant Farzad Darui, by counsel, submits the following authorities in reply to the government's opposition to his motion for a judgment of acquittal:

PRELIMINARY STATEMENT

In its opposition to defendant's motion, the government states the Court must view the evidence in the light most favorable to the government. However, the government ignores the fact that the evidence it presented in its case-in-chief does not support its argument. Put simply, the government proved that the use of the Post Office Box could not have furthered the alleged mail fraud. Further, despite the government's desire to distinguish *United States v. Santos,* 128 S. Ct. 2020 (2008), that case controls the outcome here, requiring dismissal of the money laundering count.

1.   *No reasonable juror could have found that the use of the mails furthered the alleged scheme to defraud.*

The evidence at trial does not support the requirement that the mailings further the alleged scheme. Specifically,

- The Post Office Box was not used for almost half the time period of the alleged scheme (29 of 63 months);

- Mailing bank statements to the Post Office Box could not help conceal the checks because Mr. Darui was the only person at the Islamic Center authorized to open the mail other than Dr. Khouj. (Notably, all of the government witnesses who were asked agreed that Mr. Darui was the only person who actually opened the mail); and

- Dr. Khouj testified he stopped looking at the bank statements and cancelled checks in 2000, two years prior to the Post Office Box being opened (February 2002).

These uncontroverted facts are <u>from the government's case</u>.  Accordingly, there is no evidentiary basis to conclude that the mailing of the bank statements could have concealed from Dr. Khouj the information they contained or furthered the fraud in any other way.

Moreover, the case law cited by the government regarding lulling and the timing of the mailings is entirely beside the point that Mr. Darui makes, namely, that the government's evidence did not prove that the mailings furthered the fraud.  In addition to the facts above, the evidence showed that Mr. Darui began using another account to write checks (the Administrative Account) over one year prior to the time the government claims the scheme ended.  That account's statements were mailed directly to the Islamic Center.  Because Mr. Darui ceased using the mails during the time the government claims the scheme was on-going, his use of the mails was not "incident to an essential part of the scheme."

The government also mischaracterizes Mr. Darui's argument as follows:  "Contrary to defendant's erroneous assertion, it is not necessary that the mailing or wire transmission be an essential part of the scheme."  Gov't Opp'n at 5.  In fact, Mr. Darui's brief states: "[T]he use of the Post Office Box was <u>not incident to</u> an essential part of the alleged scheme . . . ."  Def. Mot. at 2 (emphasis added) (citing *Schmuck v. United States*, 489 U.S. 705, 710-11 (1989); *Parr v. United States*, 363 U.S. 370, 390 (1960); *United States v. Lemire,* 720 F.2d 1327, 1334-35 (D.C. Cir. 1983)).

Again, if no mail fraud exists, the money laundering charge (and the forfeiture allegations) must be dismissed.  *See* Indictment, pp. 13-14, ¶ 34 (referring to "proceeds derived from a specified unlawful activity, that is Mail Fraud, in violation of United States Code Section 1341, as further described in Counts 1 through 5 of this Superseding Indictment"); p. 15, ¶ 2 ("Upon

conviction of one or more of the [mail fraud] offenses contained in Counts 1 through 5 of this Superseding Indictment, defendant . . . shall forfeit . . . any property constituting or derived from proceeds . . . as a result of the said violation(s). . . .").

2.  ***The government's Olympic attempt to run from United States v. Santos should be rejected.***

The government claims that *United States v. Santos,* 128 S. Ct. 2020 (2008), does not apply here because Justice Stevens, concurring in the Court's judgment, cast the deciding vote in favor of affirming the Seventh Circuit's decision (equating "proceeds" with profits) and, in the process, disagreed with the reasoning of the plurality opinion. Essentially, Justice Stevens expressed the view that proceeds may mean different things in different factual contexts depending on the legislative history, a view strongly criticized by Justice Scalia and the plurality:

> JUSTICE STEVENS' position is original with him; neither the United States nor any amicus suggested it; it has no precedent in our cases. JUSTICE STEVENS relies on the proposition that one undefined word, repeated in different statutory provisions, can have different meanings in each provision. *See post*, at 2, and n. 2. But that is worlds apart from giving the same word, in the same statutory provision, different meanings in different factual contexts. Not only have we never engaged in such interpretive contortion; just over three years ago, in an opinion joined by JUSTICE STEVENS, we forcefully rejected it. *Clark v. Martinez*, 543 U.S. 371, 125 S. Ct. 716, 160 L. Ed. 2d 734 (2005), held that the meaning of words in a statute cannot change with the statute's application. *See id.*, at 378, 125 S. Ct. 716, 160 L. Ed. 2d 734. To hold otherwise "would render every statute a chameleon," *id.*, at 382, 125 S. Ct. 716, 160 L. Ed. 2d 734, and "would establish within our jurisprudence . . . the dangerous principle that judges can give the same statutory text different meanings in different cases," *id.*, at 386, 125 S. Ct. 716, 160 L. Ed. 2d 734.

*Santos*, 128 S. Ct. at 2030.

Anticipating the subsequent debate over the precise holding of the Court, the plurality Justices offered their view of the *stare decisis* effect of Justice Stevens' opinion:

> Since [Justice Stevens'] vote is necessary to our judgment, and since his opinion rests upon the narrower ground, the Court's holding is limited accordingly. *See Marks v. United States*, 430 U.S. 188, 193, 97 S. Ct. 990, 51 L. Ed. 2d 260

3

>   (1977). But the narrowness of his ground consists of finding that "proceeds" means "profits" when there is no legislative history to the contrary. That is all that our judgment holds. It does not hold that the outcome is different when contrary legislative history does exist. JUSTICE STEVENS' speculations on that point address a case that is not before him, are the purest of dicta, and form no part of today's holding. Thus, as far as this particular statute is concerned, counsel remain free to argue JUSTICE STEVENS' view (and to explain why it does not overrule *Clark v. Martinez, supra*). They should be warned, however: Not only do the Justices joining this opinion reject that view, but so also (apparently) do the Justices joining the principal dissent. *See post*, at 2, 17.

*Id.* at 2031.

Here, Mr. Darui testified the payments he received from Dr. Khouj's bank account had three purposes: (1) repayment of a debt for housing Dr. Khouj's "wives"; (2) generating cash for the Islamic Center's information program as part of its security function; and (3) generating cash for the payment and reimbursement of employees. As noted in the opening brief, as to the first purpose, the government presented no evidence that Mr. Darui <u>profited</u> from those transactions as opposed to merely <u>receiving</u> money for repayment of a debt. As to the second and third purposes, the government presented no rebuttal whatsoever to Mr. Darui's testimony. Under these facts, no reasonable juror could find that the monetary transaction at issue, i.e., "the withdrawal and transfer of funds by check number 6258 dated May 27, 2004, written on the Blue Line checking account and payable to American Express . . . in the amount of $14,353.35," constituted <u>profits</u> as opposed to receipts. Accordingly, Count Eight must be dismissed.

## CONCLUSION

For the reasons stated above and those that may be stated at any hearing on this motion, the Court should dismiss Counts One through Five and Count Eight of the Indictment, as well as the forfeiture allegation, and enter a judgment of acquittal.

FARZAD DARUI

By: /s/ Victoria Toensing
Victoria Toensing (DC Bar #304980)
Joseph diGenova
Brady Toensing
diGENOVA & TOENSING, LLP
1776 K Street, N.W., Suite 737
Washington, D.C. 20006
(202) 289-7701
(202) 289-7706 (fax)

By: /s/ Aaron S. Book
Aaron S. Book (DC Bar # 490815)
Steven T. Webster (admitted *pro hac vice*)
WEBSTER BOOK LLP
1 North King Street
Leesburg, Virginia 20176
703-779-8229
703-991-9178 (fax)
*Counsel for Defendant*

CERTIFICATE OF SERVICE

I hereby certify that on July 9, 2008, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will then send a notification of such filing (NEF) to the following:

Ronald W. Sharpe, Esquire
Tejpal S. Chawla, Esquire
Assistant United States Attorneys
United States Attorney's Office
555 4th Street, NW
Washington, DC 20530

/s/ Aaron S. Book
Aaron S. Book

5