UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA | ) <br> ) <br> ) |
| v. | ) Criminal No. 07-CR-0149 (RCL) <br> ) |
| FARZAD DARUI, | ) <br> ) |
| Defendant. | ) <br> ) |

**GOVERNMENT'S RESPONSE TO DEFENDANT FARZAD DARUI'S
MOTION TO DISMISS SUPERSEDING INDICTMENT AS
VIOLATIVE OF THE DOUBLE JEOPARDY CLAUSE**

The United States of America, by and through its counsel, the United States Attorney for the District of Columbia, respectfully opposes defendant Farzad Darui's Motion to Dismiss Superseding Indictment as Violative of the Double Jeopardy Clause("Motion to Dismiss"). For the reasons discussed herein, defendant's motion lacks merit and should be denied.

I.   **Background**

Defendant was arraigned before this Court on February 29, 2008, on a nine-count Superseding Indictment. Defendant's jury trial began on May 6, 2008. The jury began its deliberations on May 21, 2008. Following the jury's second note indicating it was deadlocked, the Court dismissed the jury and declared a mistrial on May 23, 2008.

On July 3, 2008 defendant filed this Motion to Dismiss. In this motion defendant requests that the court dismiss the Superseding Indictment on the theory that a retrial would violate the Double Jeopardy Clause of the Fifth Amendment. Defendant argues that the declaration of a mistrial by the Court was done without a "manifest necessity" to do so, and therefore defendant

1

should be precluded from being retried.

On June 2, 2008, defendant filed notice of interlocutory appeal relating to this Court's decision to deny a motion for judgment of acquittal and grant a mistrial. The Government has moved for summary dismissal of that appeal. Unless this Court concludes that the defendant's appeal is frivolous, or the appellate court dismisses that appeal, this Court is without jurisdiction to decide this motion.[1]

## II. **Legal Analysis**

While there is no formulaic test, the hung jury is the classic case where manifest necessity justifies the declaration of a mistrial. Double jeopardy will not attach where the mistrial was properly declared in the sound discretion of the trial court. See Richardson v. United States, 468 U.S. 317, 324 (1984); United States v. Sanford, 429 U.S. 14, 16 (1976); Sattazahn v. Pennsylvania, 537 U.S. 101, 108 (2003); United States v. Glover, 731 F.2d 41, 46 (D.C. Cir. 1984). "[F]or reasons deemed compelling by the trial judge, who is best situated intelligently to make such a decision, the ends of substantial justice cannot be attained without discontinuing the trial, a mistrial may be declared without the defendant's consent and even over his objection, and may be retried consistently with the Fifth Amendment." Gori v. United States, 367 U.S. 364, 368 (1961), (citing Simmons v. United States, 142 U.S. 148 (1891)); Logan v. United States, 144 U.S. 263 (1892).

The degree of discretion exercisable by the judge is dependent on the facts of each case and whether they created a manifest necessity to declare a mistrial. Glover, 731 F.2d at 43-46 (declaration of a mistrial appropriate when jury was unable to come to a consensus after

---

1 The defense has all but conceded that its appeal is frivolous as it has recognized the need to file this motion before the trial court.

deliberations and being read a Thomas charge (United States v. Thomas, 449 F.2d 1177, 1185 at n.45 (D.C. Cir. 1971)); United States v. Klein, 582 F.2d 186, 191 (2nd Cir. 1978).  "[T]he law has invested courts of justice with the authority to discharge a jury from giving any verdict, whenever, in their opinion, taking all the circumstances into consideration, there is a manifest necessity for the act, or the ends of public justice would otherwise be defeated." Sanford, 429 U.S. at 16 (quoting United States v. Perez, 22 U.S. 579 (9 Wheat. 579), 580 (1824)).  This must be determined on a case by case basis, considering all of the factors of each case, there is no "simple application of any formula." Klein, 582 F.2d at 193, (citing United States v. Castellanos, 478 F.2d 749, 752 (2nd Cir. 1973); see also Glover, 731 F.2d at 46; United States v. Gordy, 526 F.2d 631 (5th Cir. 1976); United States ex rel. Webb v. Court of Common Pleas, 516 F.2d 1034 (3rd Cir. 1975).

**III.     Discussion**

**A. The Court's Decision to Grant a Mistrial was Proper and Correct.**

On May 23, 2008, the Court, after previously instructing the jury with a Thomas anti-deadlock instruction on May 22, 2008 and responding to 8 other notes, was confronted with a very clear second deadlock note from the jury:

> We regret to inform you that in the superseding indictment there is complete and total disagreement on all counts.  All jurors have fairly and impartially considered the direct and circumstantial evidence to the best of each individuals reasoning and experience in life.  We have not been able to see eye to eye in accordance with the court's instructions.  We are unanimous that we are HUNG!  We would like to be excused at this juncture.

Note from the Jury, May 23, 2008, 2:45 pm.  This note plainly indicated that the jury was following the Court's instructions, and that it had evaluated all of the evidence in the case

pursuant to those instructions, but to no avail. It is well-established that this Court had significant discretionary power to declare a mistrial, sua sponte, if there is manifest necessity for doing so. See Richardson, 468 U.S. at 324; Sanford, 429 U.S. at 16; Gori, 367 U.S. at 368. Not surprisingly, the defense has cited no case where an appellate court has reversed the declaration of a mistrial under the circumstances here.[2]

Specifically, in this case a Thomas instruction had been read, the jury continued to diligently deliberate, and it sent back several notes after that instruction. In addition, the jury appeared responsive to every supplemental instruction provided by the Court and clearly had no problems asking additional questions. Despite this, and more than an additional day of active deliberations and additional guidance from the court and the parties, the jury was again hung. The second deadlock note was clear and unambiguous, and stated that they were unanimous about being hung and that they had tried to evaluate all the evidence in light of the instructions there were given. As the Supreme Court recognized, "[w]ithout exception, the courts have held that the trial judge may discharge a genuinely deadlocked jury and require the defendant to submit to a second trial." Arizona v. Washington, 434 U.S. 497, 509 (1978). Nor is unanimity

---

[2] Defendant's citation to cases such as Wright v. United States, 250 F.2d 4, 11-13 (D.C. Cir. 1957) and United States v. Razmilovic, 507 F.3d 130 (2nd Cir. 2007) are misguided. Wright is not a Double Jeopardy and has nothing to do with the Court's power and obligation to grant a mistrial. Similarly, the facts of Razmilovic are radically different than this case.

This Court granted a mistrial only after two deadlock notes and a Thomas instruction, whereas in Razmilovic a mistrial was declared after only one note was sent from the jury saying they were hung. Razmilovic, 507 F.3d at 134. In addition, this case only involves one defendant, a nine count indictment and a less than three week trial; Razmilovic involved three defendants, a twenty five count indictment, a six week trial and only three days of jury deliberations. Id. at 133-39. Further, here the jury made an unequivocal statement that they could not reach a decision as to any of the counts, but the jury in Razmilovic failed to state which counts they could not agree upon, and they failed to reference which defendants they were deadlocked on, which was a point of contention for the separate defense counsel who believed

4

among the jurors that there is a deadlock required for the Court to declare a mistrial, disagreement is enough.  Klein, 582 F.2d at 192.  Given the second deadlocked note was unequivocal evidence of an impasse this court had the power, responsibility and discretion to declare a mistrial.

## B. Defendant's Alternative Suggestions to Interview Jurors and Replace Them and Reinstruct the Jury as to Their Duty to Acquit Were Inappropriate.

The defense also claimed that the Court should have adopted the defense's alternative suggestions instead of granting a mistrial.  First, the defendant suggested the Court should have questioned the foreman to determine if particular jurors were not following the consent instructions, and if so, to identify each and every one that he believed were not.  Defense suggested that the next step would be to have the Court question any jurors identified by the foreperson, and question them as to whether or not they were following the Court's instructions. Further, the defense requested that all jurors determined not to be following the Court's instructions (up to the maximum of three) that these jurors be summarily replaced by alternates. May 23, 2008, Transcript of Jury Deliberations, p.14-17. Second, the defense requested that the Court reinstruct the jury on a single issue, and instruct them to acquit the defendant if it found consent. Both of its suggestions were improper and properly denied.

The first "alternative" was inappropriate for several reasons.  As an initial matter, there was no direct evidence that any jurors were refusing to follow the Court's instructions on the law or the facts.  More importantly, the request carried significant risks of coercion and threatened the sanctity of the juror's deliberations.  By engaging in such a questioning process, the jurors would inevitably indicate its split or divulge the substance of their deliberations (including which

---

that the jury may have acquitted their defendant. Id. at 135.

5

instructions were being discussed or at issue).  As the D.C. Circuit has recognized, "a court may not delve deeply into a juror's motivations because it may not intrude on the secrecy of the jury's deliberations."  United States v. Brown, 823 F.2d 591, 596 (D.C. Cir. 1987) (holding that a trial court must deny a request to dismiss a juror if the request "stems from the juror's view of the sufficiency of the evidence"); see also United States v. Hernandez, 862 F.2d 17, 23 (2nd Cir. 1988) ("That a juror may not be removed because he or she disagrees with the other jurors as to the merits of a case requires no citation.").  In fact, the questioning of the foreperson in open court, which the defense requested in this case, about a deadlock is "fraught with the potential for jury coercion."  United States v. Yarborough, 400 F.3d 17, 20 (D.C. Cir. 2005).  Where, as here, there was no evidence that any one juror failed to deliberate or that members of the jury were not following the Court's instructions on the law.  In fact, in their final note the jury was very explicit in mentioning that they had *each*, to the best of their abilities, considered all evidence fairly and impartially.

      This danger in questioning the jurors and creating improper coercion was further exacerbated by the fact that the Court had already given a Thomas anti-deadlock instruction.  Courts have long recognized that any significant interaction between the court and the jury after a deadlock instruction is given is likely to be coercive of a verdict and highly dangerous.  See United States v. Lloyd, 515 F.3d 1297, 1302 (D.C. Cir. 2008) (recognizing reversal of verdict is proper "where the judge, in his communications to the jury, is unduly coercive" and this usually occurs when "the jury, having been unable to agree, is sent back by the judge for further deliberations" and "the judge's instruction in sending the jury back had a 'possibly coercive effect'" (quoting Williams v. United States, 419 F.2d 740, 750 (D.C. Cir. 1969)).

Even if implemented, defendant's plan to replace jurors also would not have worked. After the jury was interviewed, they confirmed that jury was split, at best, 9-3 in favor of conviction, with the foreperson being one of the ones in the minority (one pro-acquittal juror indicated that she was ultimately not sure how she would have voted if her colleagues had changed their mind). This means that even had a maximum of three jurors been replaced as the defense requested, it would not have changed the verdict. In fact, the foreperson was one of the holdout jurors, and given that the defense wanted to question the foreperson as its preliminarily step, it is possible the foreperson was not following the instructions of the court and would not have identified himself. The best case scenario for defense would have been that all nine of the pro-government jurors be removed, thus creating an impermissible jury of five. Whether or not the Court explored this option was therefore of no prejudice to the defense.[3]

The defense's second request following the second deadlock note, to instruct the jury to acquit on the consent instruction, was similarly improper. The Court had, on several previous occasions and in the written instructions, told the jury that the consent instruction applied to all the charges, and instructed them to acquit the defendant if it found proper consent or authorization. While the jury may have had a number of questions about the consent instruction prior to the final deadlock note, the final note did not mention consent or authorization at all. Nor did it identify any problems the jury was having with the instructions. Instructing the jury about consent in this case would have therefore been based purely on guesswork and not supported by a specific jury request. More importantly, given that the Thomas instruction has

---

[3] For appellate purposes, the Government requests that the Court make a factual finding as to the split of the jury being in favor of conviction.

already been given, the risk of coercion was more than substantial. The instruction on consent in this situation would have highlighted consent over all other instructions and could have significantly coerced the jury's deliberations and bypassed the careful balance of the initial Thomas deadlock instruction. See Yarborough, 400 F.3d at 21-22 (recognizing any change or addition to the Thomas instruction is "presumptively coercion"); United States v. Spann, 997 F.2d 1513, 1518 (D.C. Cir. 1993) (additional language added to Thomas instruction was coercive). In addition, the defense request would have also required additional deliberation by the jury after a second deadlock note and the Thomas instruction. As the Comments to Instruction 2.91 of the D.C. Redbook Criminal Jury Instructions (April 2008) indicate, "[a] deadlocked jury cannot be instructed to resume its deliberations if the language or circumstances surrounding the judge's instruction have a coercive effect." Id. at p. 188. In this case, having the Court highlight and identify the consent instruction, even though the jury did not raise it, would have been improper. Coercive action was not required by the Court before it could declare a mistrial.[4]

### C. The Court was Responsive to the Jury's Questions and Properly Instructed the Jury.

While not a direct subject of the defense motion, any suggestion that the Court refused to

---

[4] The one note from a juror who asked to be replaced by an alternate is not evidence that the jury was not following the court's instructions on consent. Note from Juror 1424, May 23, 2008, 11:55 am. The note simply shows what seems to be the frustration of one juror that they were not able to "determine a unanimous vote." While jury deliberations may at times be frustrating to the jurors, it is not grounds for replacement. See United States v. Hernandez, 862 F.2d 17, 23 (2nd Cir. 1988) ("That a juror may not be removed because he or she disagrees with the other jurors as to the merits of a case requires no citation."). In addition, the Circuit has held that the Court must take extreme care in removing deliberating jurors. See Brown, 823 F.2d at 596. When this note was responded to by the Court, the defense specifically agreed with it. Having acceded to this instruction it cannot now claim error.

instruct the jury "to follow the instructions of the law" is baseless. Motion to Dismiss at 8. Throughout the deliberations the Court made it clear that the jurors were to follow all court instructions and that they "must consider all of the evidence, or lack thereof, in light of your experience in life, and in accordance with all of the Court's instructions to decide whether the government has proven that the defendant is guilty beyond a reasonable doubt of each count charged." Note to the Jury, May 23, 2008, 12:25 pm; Note to the Jury, May 23, 2008, 12:25pm; May 23, 2008, 2:15pm. Not surprisingly, the defense did not object to most of the Court's instructions, and consistently blocked the government's efforts to clarify the consent instruction.

### D. Trial Date Should Be Maintained

The government believes that the defense motions and its pending interlocutory appeal are merely attempts to forestall a retrial. The government believes this motion to dismiss on Fifth Amendment grounds is frivolous and that any appeal from this motion will also be frivolous. As such, the government requests that this motion to be denied and that the trial court deem any appeal of this motion as being frivolous so that the August 28 trial date may be maintained.

**III.     Conclusion**

WHEREFORE, for the reasons discussed herein, the Government respectfully requests that Defendant's Motion to Dismiss be DENIED.

                              Respectfully submitted,

                              JEFFREY A. TAYLOR
                              UNITED STATES ATTORNEY

By:              /s/
                              Tejpal S. Chawla, D.C. Bar No. 464012
                              Ronald W. Sharpe, D.C. Bar. No. 434575
                              Assistant United States Attorneys
                              555 4th Street, NW, Room 5828
                              Washington, D.C. 20530
                              (202) 514-7499 (Chawla)
                              (202) 353-9460 (Sharpe)