UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES | ) |
| | ) |
| v. | ) Crim. No. 1:07-cr-00149-RCL |
| | ) |
| FARZAD DARUI, | ) |
| | ) |
| Defendant. | ) |

**DEFENDANT FARZAD DARUI'S REPLY IN SUPPORT OF
MOTION TO DISMISS SUPERSEDING INDICTMENT
<u>AS VIOLATIVE OF THE DOUBLE JEOPARDY CLAUSE</u>**

Defendant Farzad Darui, by counsel, submits the following reply in support of his motion to dismiss and to bar a retrial pursuant to the Double Jeopardy Clause of the Fifth Amendment.

<u>ARGUMENT</u>

1. *Faced with concrete evidence of juror misconduct in failing to follow the law, the Court had a duty to inquire and to take appropriate remedial action. The failure to do so resulted in an untimely termination of the jury's deliberations and a violation of Mr. Darui's Sixth Amendment rights.*

In commenting on the defendant's proposed alternatives to granting a mistrial, the government states, "[a]s an initial matter, there was no direct evidence that any jurors were refusing to follow the Court's instructions on the law or the facts." Gov't Opp. at 5. In truth, there was such direct evidence and it was precise and unequivocal. At 11:55 a.m. on Friday, May 23, Juror 1424 asked to be replaced on the grounds that "[w]e are not doing anything in accordance <u>with evidence, testimony, instructions or otherwise</u>. We have not begun the process to do the work to determine a unanimous vote." (Emphasis added.) Astoundingly, the government states the note "is not evidence that the jury was not following the court's instructions on consent," and chalks it up instead to "the frustration of one juror that they were not able to 'determine a unanimous vote.'" Gov't Opp. at 8, n. 4. The juror's frustrations were

expressed succinctly and cogently and speak for themselves. The government's attempt to mischaracterize that note (and the other that reflected a disregard of the Court's instructions) is, at the least, disappointing.

Other jury questions similarly declared the refusal of some jurors to apply the Court's instruction on the issue of consent. After seeking clarification of the consent instruction, the jury asked, "[i]f we find that consent was given, must we [find] him NOT guilty on all other charges?" Jury Note, 5/23/08, 11:00 a.m. The tenor of other notes also demonstrates a reluctance or refusal on the part of some jurors to apply the consent instruction. Jury Note, 5/23/08, 11:06 a.m. ("If we find the funds were indeed stolen; why is consent a factor?"); Jury Note, 5/23/08, 11:15 a.m. ("Should common sense override a lack of evidence?").

These notes constitute direct evidence that some of the jurors were refusing to apply the Court's instructions. At that point, Darui had a right and the Court had a corresponding duty to inquire further under Rule 23(b):

> Under Federal Rule of Criminal Procedure 23(b), a court may excuse a juror upon a showing of good cause. Whether good cause exists is a case-by-case decision made in the trial court's discretion, *see United States v. Essex*, 236 U.S. App. D.C. 166, 734 F.2d 832, 845 (D.C. Cir. 1984), but case law is clear that good cause exists when a juror refuses to participate in deliberations or to follow the law. *See United States v. Baker*, 262 F.3d 124, 132 (2d Cir. 2001); *United States v. Barone*, 114 F.3d 1284, 1307 (1st Cir. 1997).

*United States v. Simmons*, 431 F. Supp. 2d 38, 61 (D.D.C. 2006) (Lamberth, J.).

In *Simmons*, a juror sent out a note during deliberations asking to be replaced. *See* Crim. No. 00-157-15 (TFH), Government's Omnibus Opposition to Defendant's Motions for a New Trial, Doc. No. 2274, pp. 53-54. As part of the note, the juror (No. 0552) stated she disagreed with the law and instructions that governed her deliberation. *See id.* The Court convened counsel and the parties to discuss the note and approaches to dealing with the issue. *See id.* at

54. Ultimately, the Court, after considering *United States v. Brown*, 823 F.2d 591 (D.C. Cir. 1987), and *United States v. Thomas*, 116 F.3d 606 (2d Cir. 1997), carefully questioned the juror about her views and dismissed her:

> I'm satisfied beyond a reasonable doubt as a judge of her credibility from her statements in the letter and her statements on the record that she will not follow the law, that she strongly disagrees with them and she'll not follow them contrary to her oath of office that I had mentioned. For those reasons under 23(b)(3), I find she is not available for good cause and I'll strike her as a juror in this case.

*Id.* at 60.

In *Simmons*, the government applauded the trial judge for striking "a balance between the jury's need for secrecy in the deliberative process and the Court's need to assess and address any juror misconduct" noting that "the Court opted to ask careful, narrow questions, modeled after those posed to the juror in *Brown*, specifically inquiring of her view of the law." *Id.* at 66. The government continued: "Under any formulation of the standard, this Court's decision to dismiss Juror 0552 was appropriate. Based on the juror's clear and unequivocal statements, this Court was able to make a factual finding that the juror had refused to follow the law." *Id.* at 70. Yet in this case, the government adopts the opposite position not on any principled basis but solely as a matter of convenience.

The analysis in *Simmons* is correct, and other courts examining this issue have come to similar conclusions. For example, in *United States v. Thomas*, 116 F.3d 606 (2d Cir. 1997), the Second Circuit examined at length the duties of a trial court in responding to complaints of a juror's refusal to follow the law and came to the following conclusion: "[A] presiding judge possesses both the responsibility and the authority to dismiss a juror whose refusal or unwillingness to follow the applicable law becomes known to the judge during the course of trial." *Id.* at 617. "This conclusion reinforces the court's inherent authority to conduct inquiries

3

in response to reports of improper juror conduct and to determine whether a juror is unwilling to carry out his duties faithfully and impartially." *Id.* Although the convictions in *Thomas* were reversed, the error of the trial judge was not in undertaking an inquiry, but in concluding that the juror was engaged in nullification.

In support of its argument that the Court should not have questioned any of the jurors about their failure to apply the consent instruction, the government relies on *United States v. Brown*, 823 F.2d 591 (D.C. Cir. 1987), for the proposition that "a court may not delve deeply into a juror's <u>motivations</u> because it may not intrude on the secrecy of the jury's deliberations." *Id.* at 596 (emphasis added). At no time did counsel suggest that the Court inquire into any juror's motivations.

Indeed, a more robust examination of *Brown* supports Darui's position, not the government's. In *Brown*, the D.C. Circuit reversed convictions in a multi-defendant RICO case because the trial court dismissed a juror pursuant to Rule 23(b) based on its conclusion that the juror was refusing to apply the law. *See id.* The problem with the dismissal in *Brown* was <u>not</u> the trial court's colloquy with the juror but that the colloquy did not unequivocally support the court's conclusion. The Court's holding is indeed instructive here, but not for the reasons the government asserts:

> [W]e specifically leave open the question that appellants raise of whether a court may constitutionally apply Rule 23(b) to discharge a juror for refusing to apply the relevant substantive law. We today hold only that Rule 23(b) is not available when the record evidence discloses a possibility that the juror believes that the government has failed to present sufficient evidence to support a conviction. Because the record evidence in this case discloses just such a possibility, we must reverse the convictions.

*Id.* at 597.

But according to the government, even if Darui is right, it is of no moment because of "the split of the jury in favor of conviction," of which it asks the Court to make a "factual finding" for "appellate purposes." Gov't Opp. at 7 and fn. 3. Several responses are in order here. First, there is no record of this. Second, to make one, the Court must summon the jurors and hold an evidentiary hearing. Third, should the Court grant this unusual request, Darui should be entitled to examine the jurors on their nullification of the consent instruction in order to make a record for appellate purposes. Fourth, it is speculation in the extreme to conclude what might have happened had the Court dismissed the nullification juror or jurors. And, because the Court declined to inquire how many there were, the government's "no harm, no foul" argument lacks any basis in the record.

Nullification is no less a threat to trial by jury when the nullifiers violate their oaths by ignoring a defense instruction as when they simply refuse to convict by ignoring the law. Indeed, given the defendant's constitutional rights, the former is more pernicious. Confronted with direct evidence that one or more jurors were violating their oaths, the Court had an obligation to protect Mr. Darui's constitutional right to have <u>this</u> jury decide his case and to have jurors who could not follow their oaths dismissed for good cause. This did not occur. As a result, the Court declared a mistrial without exploring appropriate alternatives. A retrial would thus offend Mr. Darui's constitutional rights.

2.  ***Because the Court failed to take any alternative action prior to declaring a mistrial, double jeopardy precludes a retrial.***

Faced with clear evidence that at least some jurors were disregarding their oath, the Court prematurely terminated the trial and compromised Mr. Darui's constitutional right to have his fate decided by the jury. *See Arizona v. Washington*, 434 U.S. 497, 503 (1978) (stating that the protections afforded by the Double Jeopardy clause include "the defendant's valued right to have

5

his trial be completed by a particular tribunal"). In doing so, the Court declined every alternative to granting a mistrial proposed by the defense, including the simple expedient of asking the jurors what they thought.

> When a jury reports that they are unable to agree the court is faced with the alternative of discharging them or directing them to continue their deliberations. One of the factors that the judge may consider in arriving at this decision is the possibility that the jury may be able to come to an agreement on any of the charges submitted to them for determination. In order to determine the likelihood of an agreement it is obviously necessary in most instances, and proper, for the judge to interrogate the jury.

*United States v. Smoot*, 463 F.2d 1221, 1223 (D.C. Cir. 1972). *See also United States v. Black*, 843 F.2d 1456, 1463 (D.C. Cir. 1988) (stating "[a] trial judge may take reasonable steps to ensure that a jury is in fact deadlocked when informed that this is a possibility.").

The government's citation on this point to *United States v. Yarborough*, 400 F.3d 17 (D.C. Cir. 2005), is highly misleading. The judge's conduct there involved: (1) *ex parte*, off-the-record conversations between the judge and the jurors; (2) probing questions of the jury foreperson regarding the reasons for deadlock; and (3) ultimately, an unapproved anti-deadlock instruction that was "'presumptively coercive.'" *Id.* at 20-21. Despite all of that, the D.C. Circuit found that neither of the first two issues provided an independent ground for reversal. *Id.* at 20. Indeed, the ground for reversal was the departure from the anti-deadlock language approved in *United States v. Thomas*, 449 F.2d 1177, 1187 (D.C. Cir. 1971). *See Yarborough*, 400 F.3d at 22.

Simply giving ultimate weight to a jury note indicating deadlock, without undertaking reasonable alternatives, is insufficient. *See United States v. Razmilovic*, 507 F.3d 130 (2d Cir. 2007) (holding mistrial lacked manifest necessity in case where jury note stated jury was "at a dead lock" and jury had "exhausted all [its] options"). *Cf. Harris v. Young*, 607 F.2d 1081, 1086

(4th Cir. 1979) (stating "[i]f obvious and adequate alternatives to aborting the trial were disregarded, this suggests the trial judge acted unjustifiably.").

In *Razmilovic*, which the government consigns to a footnote in its brief, one of the alternatives suggested by the Second Circuit (short of mistrial) was a discussion with the jury of the chances that further deliberations might produce a verdict. *Razmilovic*, 507 F.3d at 139. That could easily have been accomplished here and provided the Court and counsel with a record demonstrating that the jury was genuinely deadlocked *or* that further deliberations might have been fruitful. Because that simple and non-intrusive alternative was rejected (as were all others), there can be no finding of manifest necessity.

## CONCLUSION

Mr. Darui's retrial would violate the Double Jeopardy Clause. Therefore, the superseding indictment should be dismissed.

FARZAD DARUI


By: /s/
Victoria Toensing (DC Bar No. 304980)
diGENOVA & TOENSING, LLP
1776 K Street NW, Suite 737
Washington, DC 20006
(202) 289-7701
(202) 289-7706 (fax)
Counsel for Defendant


By: /s/ Aaron S. Book
Aaron S. Book (DC Bar No. 490815)
Steven T. Webster (admitted *pro hac vice*)
1 North King Street
Leesburg, VA 20176
(703) 779-8229
(703) 991-9178 (fax)


## CERTIFICATE OF SERVICE

    I hereby certify that on July 25, 2008, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will then send a notification of such filing (NEF) to the following:

Ronald W. Sharpe, Esq.
Tejpal S. Chawla, Esq.
Assistant United States Attorneys
555 Fourth Street, NW, Room 8232
Washington, D.C. 20530


/s/ Aaron S. Book
Aaron S. Book